1  Allen K. Hutkin (SBN 143200)
   ahutkin@hutkinlaw.com
2  Donald L. Mabry (SBN 187750)
   dmabry@hutkinlaw.com
3  HUTKIN LAW FIRM, APC
   1220 Marsh Street
4  San Luis Obispo, CA 93401
   Telephone: (805) 544-1500
5  Facsimile: (805) 544-1532

6  Attorneys for Creditors/Movants
   DARCY VILLERS, WILLIAM E.
7  HOLMES AND KYLE KING

8                UNITED STATES BANKRUPTCY COURT

9        CENTRAL DISTRICT OF CALIFORNIA – NORTHERN DIVISION

10

11 In re                              )    CASE NO: 9:22-BK-10592-RC
                                      )
12 PRCCC, INC., a California corporation, )   REPLY TO OPPOSITION OF
                                      )    CREDITOR DONALD G. EZZELL TO
13                                    )    MOTION FOR RELIEF FROM THE
                                      )    AUTOMATIC STAY; DECLARATION
14                                    )    OF ALLEN K. HUTKIN IN SUPPORT
           Debtor                     )    THEREOF
15                                    )
                                      )    Hearing:
16                                    )    Date: November 8, 2022
                                      )    Time: 10:00 am
17                                    )    Place: Courtroom 201
                                      )    1415 State Street
18                                    )    Santa Barbara, CA 93101
                                      )

19

20     TO THE HONORABLE RONALD A. CLIFFORD III, UNITED STATES

21 BANKRUPTCY JUDGE:

22     Creditors/Movants, Darcy Villers, William E. Holmes, and Kyle King, hereby reply to the

23 reply to the *Opposition of Creditor Donald G. Ezzell to Motion of Darcy Villers, William E.*

24 *Holmes, and Kyle King for Relief from the Automatic Stay to Pursue State Court Action; and*

25 *Declarations of Donald G. Ezzell and Benjamin A. Nix* (the "Opposition"), and respectfully state

26 as follows.

27 ///

28 ///

# I. **Introduction**

By his Opposition, Mr. Ezzell transparently seeks to avoid potential personal liability in Movants' pending State Court action against him by repeatedly mischaracterizing the relief sought by Movants and by attempting to extend the protections afforded to the Debtor by the automatic stay to himself.

As an initial matter, Mr. Ezzell, a creditor of the Debtor, lacks standing to oppose Movants' request for stay relief. Neither the Trustee nor the Debtor oppose this motion.

Second, Movants do not seek an advisory opinion concerning the scope and applicability of the automatic stay, as Mr. Ezzell incorrectly claims. Movants request that the Court enter an order modifying the stay for the limited purpose of allowing Movants to pursue their claims against Mr. Ezzell in State Court.

Third, Mr. Ezzell misstates the relief requested by Movants by asserting that they are not entitled to reconsideration of the Court's prior order denying stay relief under Civil Rule 60(b). However, as Mr. Ezzell and his counsel must surely be aware, that order denied stay relief without prejudice and the relief sought in the two motions is different.

Fourth, Mr. Ezzell's claim that allowing Movants to proceed against him in the State Court would somehow frustrate the fundamental purpose of the automatic stay by imposing a burden upon the Debtor's estate is without basis in fact or law.

Finally, Mr. Ezzell's assertions that he is automatically entitled to the protections of the automatic stay given (a) the interrelatedness of the State Court claims against himself and the Debtor, (b) that his potential liability in the State Court action rests in part on an *alter ego* theory of liability, and (c) that the Debtor would be required to indemnify him in the event he incurred personal liability, are each incorrect. It is well established that absent unusual circumstance, the automatic stay does not extend to non-debtors. Even then, the non-debtor seeking the protections of the automatic must commence an adversary proceeding and obtain an injunction pursuant to Bankruptcy Code section 105(b).

///

///

1    For these reasons, Movants request that the Court overrule the Opposition and

2    grant their request for relief from the automatic stay.

3    **II.    Mr. Ezzell Lacks Standing to Oppose the Motion**

4    It is well settled that a creditor, such as Mr. Ezzell, has no standing to be heard on

5    matters related to the annulment, modification, or violation of the automatic stay. *See In*

6    *re Pecan Groves*, 951 F.2d 242, 245 (9th Cir. 1991) ("a creditor has no independent

7    standing to appeal an adverse decision regarding a violation of the automatic stay"); *Bank*

8    *of N.Y. Mellon v. 2298 Driftwood Tide Tr. (In re Barrett)*, 833 F. App'x 668, 670 (9th Cir.

9    2020) ("the automatic-stay provisions of the Bankruptcy Code are intended 'solely' for

10   the benefit of the debtor and the debtor's estate); *In re Layfield & Barrett, APC*, No. 2:17-

11   bk-19548-NB, 2018 Bankr. LEXIS 1213, at *2 (Bankr. C.D. Cal. Apr. 23, 2018) ("the

12   Ninth Circuit has broadly expressed the concept that creditors lack standing to seek relief

13   under 11 U.S.C. § 362"); *In re Hunyady*, No. BK-12-17610-MKN, 2015 Bankr. LEXIS

14   4444, at *6 (Bankr. D. Nev. Nov. 12, 2015) ("a creditor, does not have standing to object

15   to the retroactive annulment of the automatic stay"). n this basis alone, the Opposition

16   must be overruled.

17   **III.    Movants Do Not Seek an Advisory Opinion from the Court**

18   Mr. Ezzell mischaracterizes the instant Motion as an impermissible request for an

19   advisory opinion or so-called "comfort order" from this Court. Movants, however, do not

20   ask the Court to determine that the Movants' contemplated motion to bifurcate in the

21   State Court wuld not violate the automatic stay.[1] Rather, as explicitly stated in the

22   Motion, Movant's seek affirmative relief from the automatic stay:

23   Movants seek limited relief from the automatic stay so that Movants can file a

24   motion to bifurcate the State Court action so Movants can proceed solely against,

25

26   _____

27   [1] In any event, motions that alternatively seek stay relief or a determination that the automatic stay does not
apply are routinely filed and adjudicated. *See, e.g., California v. Man Soo Yun (In re Man Soo Yun)*, 476
B.R. 243, 249 (B.A.P. 9th Cir. 2012) (appeal from bankruptcy order on motion for a determination that the

28   automatic stay did not apply, or in the alternative, relief from the automatic stay).

1    liable for violations of the stay for serving notice on Debtor in furtherance of that

2    motion.

3    (Motion at p.5.)

4    **IV.    Movants' Prior Motion for Stay Relief Was Denied Without Prejudice**

5    Again, Mr. Ezzell intentionally mischaracterizes the nature of the relief requested

6    by Movants. Movants do not ask the Court to revisit its order denying their first request

7    for stay relief and are therefore not bound by the requirements of Fed. R. Civ. P. 60(b).

8    As Mr. Ezzell surely knows, the Court's prior denial of stay relief was without prejudice.

9    Thus, his discussion of Rule 60(b) is nothing more than surplusage.

10   **V.    State Court Litigation Will Not Impose an Undue Burden on the Debtor's**

11   **Estate**

12   Mr. Ezzell asserts that allowing Movants to pursue their State Court action against

13   him will frustrate the general purpose of the automatic stay by somehow imposing an

14   undue burden on the estate. However, Mr. Ezzell's conclusory statement fails to consider

15   several important factors. Most notably, Mr. Ezzell ignores the fact that immediately prior

16   to the petition date, the State Court action had progressed to the point where the parties

17   were prepared for trial. *See In re Korean W. Presbyterian Church of L.A.*, 618 B.R. 282,

18   288 (Bankr. C.D. Cal. 2020) (identifying "the interest of judicial economy and the

19   expeditious and economical determination of litigation for the parties" and "whether the

20   foreign proceedings have progressed to the point where the parties are prepared for trial"

21   as among the various *Curtis* factors to be considered in granting or denying stay relief). If

22   this Court grants stay relief, the State Court parties could proceed expeditiously to trial.

23   By contrast, if relief is denied, there would likely be at least some delay due to the change

24   in forum.[2] Mr. Ezzell also fails to consider that the Motion is unopposed by the chapter 7

25   Trustee, a fiduciary who can objectively determine what it is in the best interest of the

26   _____

[2] It is not immediately clear whether this Court would have "arising in" or even related to jurisdiction to
27   adjudicate Movants' State Court claims under 28 U.S.C. 157(a).

28

REPLY TO OPPOSITION OF CREDITOR DONALD G. EZZELL TO MOTION FOR RELIEF FROM THE
AUTOMATIC STAY; DECLARATION OF ALLEN K. HUTKIN IN SUPPORT THEREOF

VI.   **The Automatic Stay Cannot Be Extended to Non-Debtors Without an**

**Injunction**

The Opposition asks this Court to extend the automatic stay to cover Mr. Ezzell, a non-debtor because (a) of the purported interrelatedness of the State Court claims against himself and the Debtor, (b) his potential liability in State Court is premised, in part, on *alter ego* theory of liability, and (c) the Debtor would be required to indemnify him in the event he incurred personal liability. In the Ninth Circuit, however, the automatic stay cannot be extended to non-debtors absent unusual circumstances. *Boucher v. Shaw*, 572 F.3d 1087, 1093 n.3 (9th Cir. 2009). If such circumstances exist, the non-party must commence an adversary proceeding seeking an injunction from the Bankruptcy Court under section 105(b) of the Bankruptcy Code to stay the non-bankruptcy proceeding. *Ripon Self Storage, LLC v. Exch. Bank (In re Ripon Self Storage, LLC)*, Nos. EC-10-1325-HKiD, EC-10-1326-HKiD, 2011 Bankr. LEXIS 1785, at *18 (B.A.P. 9th Cir. Apr. 1, 2011) (even when the interests of a debtor and a non-debtor are interwoven, non-debtor is not entitled to stay protection absent an injunction from the bankruptcy court); *Klinkenborg Aerial Spraying & Seeding Inc. v. Rotorcraft Dev. Corp.*, No. CV 12-202-M-DLC-JCL, 2014 U.S. Dist. LEXIS 198856, at *12 (D. Mont. Aug. 18, 2014) (absent an injunction, the automatic stay does not protect non-debtors when plaintiff has alleged an *alter ego* theory of liability); *In re Hamilton*, No. 14-03142-CL11, 2018 Bankr. LEXIS 4170, at *7 (Bankr. S.D. Cal. Sep. 26, 2018) ("litigation involving a non-debtor may be stayed in limited circumstances, such as when the debtor will be forced to indemnify the non-debtor" but any injunction requires the commencement of an adversary proceeding). Here, Mr. Ezzell has not obtained an injunction and has not even initiated an adversary proceeding.

///

///

///

1  **CONCLUSION**

2      Movants request that the Court overrule the Opposition, grant their Motion for

3  limited relief from the automatic stay, and grant such different and further relief as the

4  Court deems just.

5

6  Dated: October 31, 2022                    HUTKIN LAW FIRM, APC

7

8                                             _____
                                             Allen K. Hutkin
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REPLY TO OPPOSITION OF CREDITOR DONALD G. EZZELL TO MOTION FOR RELIEF FROM THE
AUTOMATIC STAY; DECLARATION OF ALLEN K. HUTKIN IN SUPPORT THEREOF

## DECLARATION OF ALLEN K. HUTKIN

1.      I am an attorney duly licensed and admitted to practice law before the courts of the State of California and before the United States District Court for the Central District of California. I am one of the attorneys of record Darcy Villers, Kyle King, and William E. Holmes, creditors of the Debtor, PRCCC, Inc., and Movants in the pending Motion for Relief from the Automatic Stay. I have personal knowledge of the information set forth herein and if culled to do so, I could and would testify competently to the facts set forth below.

2.      On May 29, 2018, Movants, former employees of the Debtor, filed an action an in the San Luis Obispo County Superior Court (the "State Court") against the Debtor and Donald G. Ezzell in which Movants asserted various wage and hour violations under the California Labor Code (the "State Court Action"). As Movants seeks relief against Mr. Ezzell under California law, the State Court is well-versed in the legal issues raised in the State Court Action.

3.      Shortly before the commencement of trial, the Debtor filed its voluntary petition for relief under the United States Bankruptcy Code on August 3, 2022.

4.      The State Court Action remains ready for an expeditious trial tried quickly. Discovery has been cut off since January 26, 2020. Given the age of the case, it will have trial priority over virtually all cases set for trial and a trial date will likely be set before the end of this calendar year if the automatic stay is lifted.

5.      Attached hereto as Exhibit "A" is a true and correct copy of *In re Layfield & Barrett, APC*, No. 2:17-bk-19548-NB, 2018 Bankr. LEXIS 1213 (Bankr. C.D. Cal. Apr. 23, 2018).

6.      Attached hereto as Exhibit "B" is a true and correct copy of *In re Hunyady*, No. BK-12-17610-MKN, 2015 Bankr. LEXIS 4444 (Bankr. D. Nev. Nov. 12, 2015).

7.      Attached hereto as Exhibit "C" is a true and correct copy of *Ripon Self Storage*,

7

1   *LLC v. Exch. Bank (In re Ripon Self Storage, LLC)*, Nos. EC-10-1325-HKiD, EC-

2   10-1326-HKiD, 2011 Bankr. LEXIS 1785 (B.A.P. 9th Cir. Apr. 1, 2011).

3          8.    Attached hereto as Exhibit "D" is a true and correct copy of *Klinkenborg*

4   *Aerial Spraying & Seeding Inc. v. Rotorcraft Dev. Corp.*, No. CV 12-202-M-DLC-JCL,

5   2014 U.S. Dist. LEXIS 198856, (D. Mont. Aug. 18, 2014).

6          9.    Attached hereto as Exhibit "E" is a true and correct copy of *In re*

7   *Hamilton*, No. 14-03142-CL11, 2018 Bankr. LEXIS 4170 (Bankr. S.D. Cal. Sep. 26,

8   2018).

9          I declare under penalty of perjury under the laws of the State of California and the

10  United States that the foregoing is true and correct. Executed this 31st day of October at

11  San Luis Obispo, California.

12

13                            HUTKIN LAW FIRM, APC

14

15                            Allen K. Hutkin

16

17

18

19

20

21

22

23

24

25

26

27

28

REPLY TO OPPOSITION OF CREDITOR DONALD G. EZZELL TO MOTION FOR RELIEF FROM THE
AUTOMATIC STAY; DECLARATION OF ALLEN K. HUTKIN IN SUPPORT THEREOF

# EXHIBIT A

Ⓐ  Neutral
As of: October 29, 2022 3:23 PM Z

*In re Layfield & Barrett, APC*

United States Bankruptcy Court for the Central District of California, Los Angeles Division

April 23, 2018, Decided; April 23, 2018, Filed & Entered

Case No.: 2:17-bk-19548-NB, CHAPTER 11

**Reporter**
2018 Bankr. LEXIS 1213 *

In re: Layfield & Barrett, APC, Debtor.

# Core Terms

automatic stay, damages, injunctive, circumstances

# Case Summary

## Overview

HOLDINGS: [1]-Creditor lacked standing to seek generalized relief from the automatic stay where he did not allege that he was injured by a willful violation of the stay and did not seek damages under *11 U.S.C.S. § 362(k)*; [2]-Creditor did not establish that the Ninth Circuit would extend the automatic stay to non-debtors under the so-called "exceptional circumstances" doctrine; [3]-Creditor's request for a preliminary injunction was not properly presented as an adversary proceeding as required by *Fed. R. Bankr. P. 7001(7)*.

## Outcome
The court denied the motion for determination of violation of the automatic stay, or, in the alternative, to enjoin related proceedings.

# LexisNexis® Headnotes

Bankruptcy Law > Administrative Powers > Automatic Stay > Scope of Stay

Civil Procedure > Preliminary Considerations > Justiciability > Standing

*HN1*[⚓]  **Automatic Stay, Scope of Stay**

In Pecan Groves, the Ninth Circuit broadly expressed the concept that creditors lack standing to seek relief under *11 U.S.C.S. § 362*. The trustee is charged with the administration of the estate for the debtor's and creditor's benefit. Allowing unsecured creditors to pursue claims the trustee abandons could subvert the trustee's powers.

Bankruptcy Law > ... > Automatic Stay > Violations of Stay > Damages

*HN2*[⚓]  **Violations of Stay, Damages**

*11 U.S.C.S. § 362(k)* states that an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

Bankruptcy Law > ... > Automatic Stay > Violations of Stay > Damages

Civil Procedure > Preliminary Considerations > Justiciability > Standing

*HN3*[⚓]  **Violations of Stay, Damages**

Under the Ninth Circuit's decision in Pecan Groves, a creditor would only have standing to seek relief for violation of the automatic stay if he were proceeding under *11 U.S.C.S. § 362(k)*.

Bankruptcy Law > ... > Discharge & Dischargeability > Effect of Discharge > Effect on Third Parties

Civil Procedure > Preliminary
Considerations > Justiciability > Standing

Bankruptcy Law > Administrative
Powers > Automatic Stay > Violations of Stay

*HN4*[⬚]  **Effect of Discharge, Effect on Third Parties**

The Ninth Circuit has rejected protection of non-debtors
even in confirmed Chapter 11 plans under the discharge
injunction, so it seems highly unlikely that the Ninth
Circuit would interpret the automatic stay to protect third
parties under the so-called "exceptional circumstances"
doctrine when the plain words of the statute do not do
so.

Bankruptcy Law > Procedural Matters > Adversary
Proceedings > Causes of Action

Civil Procedure > Remedies > Injunctions

*HN5*[⬚]  **Adversary Proceedings, Causes of Action**

A request for injunctive relief requires an adversary
proceeding per *Fed. R. Bankr. P. 7001(7)*.

**Counsel:** [*1] Layfield & Barrett, APC, fka Layfield &
Wallace, APC, fka The Layfield Law Firm, APC, Debtor,
Pro se.

For The Dominguez Firm, Petitioning Creditor: Alan J
Watson, Holland & Knight LLP, Los Angeles, CA.

For Mario Lara, Nayazi Reyes, Maria A Rios, Petitioning
Creditors: Patricia Salcedo, The Dominguez Firm, Los
Angeles, CA; Alan J Watson, Holland & Knight LLP, Los
Angeles, CA.

For Evanston Insurance Company, Plaintiff: Michael F
Perlis, Locke Lord LLP, Los Angeles, CA.

For Richard Pachulski (TR), Trustee: James KT Hunter,
Malhar S Pagay, Pachulski Stang Ziehl & Jones LLP,
Los Angeles, CA.

For United States Trustee (LA), U.S. Trustee: Dare Law,
Office of the United States Trustee, Los Angeles, CA.

**Judges:** Neil W. Bason, United States Bankruptcy
Judge.

**Opinion by:** Neil W. Bason

# Opinion

**ORDER DENYING STAY MOTION**

For the following reasons, and the reasons stated at the
hearing, this Court denies the "Motion For Determination
Of Violation Of The Automatic Stay, Or, In The
Alternative, To Enjoin Related Proceeding" (dkt. 253,
the "Stay Motion") filed by Joseph M. Barrett, Esq.

(1) Overview

Mr. Barrett is a former named member of the debtor
who also asserts claims against the debtor. The Stay
Motion concerns an action by secured [*2] creditor
Wellgen Standard, LLC (successor in interest to
Advocate Capital, Inc.) ("Wellgen") against Mr. Barrett
and others in Tennessee - initially that action was
pending in State court, but Mr. Barrett has removed it to
Federal court (the "TN Action"). The Stay Motion is
opposed both by Wellgen (dkt. 268) and by the Chapter
11 Trustee, Richard M. Pachulski (the "Trustee") (dkt.
269).

(2) Mr. Barrett lacks standing to seek relief under
*section 362*

As pointed out by Wellgen and the Trustee, *HN1*[⬚] the
Ninth Circuit has broadly expressed the concept that
creditors lack standing to seek relief under *11 U.S.C. §
362*:

> In previous cases, we have reserved the question
> of whether a creditor can attack violations of the
> automatic stay. While there is no precedent on
> point in the Ninth Circuit, the majority of jurisdictions
> which have considered standing under the
> automatic stay provision, *11 U.S.C. § 362*, have
> concluded that *section 362* is intended solely to
> benefit the debtor estate. Language from many
> cases indicates that, if the trustee does not seek to
> enforce the protections of the automatic stay, no
> other party may challenge acts purportedly in
> violation of the automatic stay.

The trustee is charged with the administration of the
estate for the [*3] debtor's and creditor's benefit.
Allowing unsecured creditors to pursue claims the
trustee abandons could subvert the trustee's
powers. Granting claimants like Tilley and B & C
standing will overburden the bankruptcy courts with
litigation. [*In re Pecan Groves of Ariz., 951 F.2d 242
(9th Cir.1991)*. See also *In re Yan, 2015 Bankr.*

*LEXIS 600, 2015 WL 845570, *3 (9th Cir. BAP Feb. 26, 2015).*]

Mr. Barrett cites several cases that at first seem contrary. *See In re Goodman, 991 F.2d 613, 618 (9th Cir. 1993)* ("Normally [certain] creditors ... shall recover damages . . . for willful violations of the automatic stay.") (emphasis added); *In re Dawson, 390 F.3d 1139, 1146 (9th Cir. 2004)* (*Section 362* "allows any 'individual,' including a creditor, to recover damages") (emphasis added) *abrogation recognized on other grounds in In re Gugliuzza, 852 F.3d 884 (9th Cir. 2017); In re Int'l Forex of Calif., Inc., 247 B.R. 284, 291 (Bankr. S.D. Cal. 2000)* ("*In re Pecan Groves*' holding has been overstated for the proposition that the automatic stay is solely for the benefit of the debtor, and a creditor cannot have standing under *§ 362(h)*.").

But on closer inspection all of those cases arise under a portion of the statute that expressly grants standing for a particular type of enforcement of the automatic stay:

> HN2[⬆] [A]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages. ... [*11 U.S.C. 362(k)* (formerly *362(h)*) (emphasis added).]

No such[*4] specific authorization applies to Mr. Barrett's more generalized request for relief in the Stay Motion. He does not allege that he was "injured" by a willful violation of the stay, and his motion does not seek damages.

It is true that *Pecan Groves* has been distinguished on various grounds. *See, e.g., Int'l Forex, 247 B.R. 284, 291.* But this Bankruptcy Court is not persuaded that it can disregard the pronouncements in *Pecan Groves*, especially when there is some logic to distinguishing between a creditor who has personally been damaged by a violation of the automatic stay (and has statutory standing under *section 362(k)*) and another creditor who seeks to enforce the stay more generally. In the latter situation there is no statutory standing and, as *Pecan Groves* points out, permitting a creditor to seek remedies for violation of the automatic stay on behalf of the bankruptcy estate could interfere with the decision of the trustee (or debtor in possession) not to pursue such remedies for tactical or strategic reasons (*e.g.*, as part of a compromise with the person who violated the automatic stay). Therefore, *Pecan Groves* is binding. *See generally United States v. Johnson, 256 F.3d 895,*

*914 (9th Cir. 2001)* (a reasoned and published ruling on any issue germane to the appeal becomes law of the [*5] circuit, regardless whether that ruling is strictly necessary to the decision).

In sum, HN3[⬆] under *Pecan Groves* Mr. Barrett would only have standing to seek relief for violation of the automatic stay if he were proceeding under *section 362(k)*. But his Stay Motion does not seek damages under *section 362(k)*, so he lacks standing to seek any remedy for any violation of the automatic stay by Wellgen.

**(3) Alternatively, the automatic stay does not apply**

Mr. Barrett has not established that the automatic stay presently applies to any aspect of the TN Action, for the reasons stated on the record at the hearing. Even if it did, the Chapter 11 Trustee has stated his willingness to stipulate to relief from the automatic stay. *See* Trustee's Response (dkt. 269) at p.3 n.3.

**(4) Mr. Barrett's alternative arguments are not persuasive.**

**(a) Mr. Barrett has not established that the Ninth Circuit would recognize the "exceptional circumstances" doctrine.**

This Court is not persuaded that the Ninth Circuit would extend the automatic stay to non-debtors under the so-called "exceptional circumstances" doctrine, as argued by Mr. Barrett. *See* Stay Motion (dkt. 253), at pp.9:25-11:25. HN4[⬆] The Ninth Circuit has rejected protection of non-debtors even [*6] in confirmed chapter 11 plans under the analogous provisions of the discharge injunction (*see, e.g., In re American Hardwoods, Inc., 885 F.2d 621, 623-24 (9th Cir. 1989)*) so it seems highly unlikely that the Ninth Circuit would interpret the automatic stay to protect third parties when then plain words of the statute do not do so.

The remedy is for the third party to file its own bankruptcy petition if it needs the protections of the automatic stay. Alternatively, if protection of a third party is sufficiently important to the bankruptcy estate, then the estate can seek injunctive relief under *In re Excel Innovations, Inc., 502 F.3d 1086 (9th Cir. 2007)*.

Alternatively, supposing for the sake of discussion that the exceptional circumstances doctrine were recognized by the Ninth Circuit, Mr. Barrett has not established that it would apply in this case. The present circumstances are not truly "exceptional" within the meaning of that doctrine.

(b) Mr. Barrett's request for a preliminary injunction is
not properly presented.

_HN5_[⬆] A request for injunctive relief requires an
adversary proceeding per _Rule 7001(7)_ (Fed. R. Bankr.
P.). The Stay Motion was not brought in an adversary
proceeding, so it is insufficient to request injunctive relief
beyond enforcement of the automatic stay. Alternatively,
supposing for the sake of discussion that [*7] his
request were properly before this Court, Mr. Barrett has
not established that injunctive relief is appropriate.

(5) Conclusion.

For the foregoing reasons Mr. Barrett's Stay Motion is
DENIED.

Date: April 23, 2018

/s/ Neil W. Bason

Neil W. Bason

United States Bankruptcy Judge

End of Document

# EXHIBIT B

Caution
As of: October 29, 2022 3:24 PM Z

## In re Hunyady

United States Bankruptcy Court for the District of Nevada

November 12, 2015, Entered on Docket

Case No. BK-12-17610-MKN, Chapter 7

**Reporter**

2015 Bankr. LEXIS 4444 *

In re: JAMES J. HUNYADY MARLEEN HUNYADY,
Debtors.

## Core Terms

automatic stay, annulment, retroactive, bankruptcy
case, recorded, factors, foreclosure, protections

## Case Summary

### Overview

HOLDINGS: [1]-Notice of sale (NOS) that was recorded
three days before debtors' bankruptcy case was closed
violated the automatic stay, but was void only as to
protected parties -- debtors and the Chapter 7 trustee --
neither of whom asserted a stay violation; [2]-Secured
creditor was not a protected party and did not have
standing to object to the retroactive annulment of the
stay; [3]-Purchaser at a foreclosure sale was entitled to
retroactive relief because, inter alia,  the bankruptcy
case closed only days after the NOS was recorded, the
foreclosure sale happened months after the case
closed, the secured creditor had obtained stay relief,
neither debtors nor trustee sought to prevent annulment
of the stay, and no real benefit would be served with
respect to the intended beneficiaries of the stay.

### Outcome

The court granted the motion to reopen the case to
retroactively annul the automatic stay.

## LexisNexis® Headnotes

Bankruptcy Law > Administrative
Powers > Automatic Stay > Relief From Stay

**HN1**[🔖]  **Automatic Stay, Relief From Stay**

In deciding whether to grant retroactive relief from the
automatic stay, the U.S. Bankruptcy Appellate Panel for
the Ninth Circuit has indicated that a court should
consider not only the original factors identified by the
Ninth Circuit in the National Environmental Waste case -
- which are (1) whether the creditor was aware of the
bankruptcy petition, and (2) whether the debtor engaged
in unreasonable or inequitable conduct, or prejudice that
would result to the creditor -- but also a number of other
factors, including the extent of any prejudice, including
to a bona fide purchaser, the debtor's overall good faith,
the debtor's compliance with the Bankruptcy Code, how
quickly the creditor moved for annulment, and how
quickly the debtor moved to set aside the sale. But
because a mechanistic application of "factors" is
inappropriate in making the determination of whether to
annul the stay, mindful that such lists are capable of
being misconstrued as inviting arithmetic reasoning,
these items are merely a framework for analysis and not
a scorecard. In any given case, one factor may so
outweigh the others so as to be dispositive.

Bankruptcy Law > ... > Automatic Stay > Violations
of Stay > Void & Voidable Actions

**HN2**[🔖]  **Violations of Stay, Void & Voidable Actions**

While the Ninth Circuit has held that an action taken in
violation of the automatic stay may be void, it is void
only as to those protected parties and a secured creditor
is not a protected party.

Bankruptcy Law > ... > Automatic Stay > Violations
of Stay > Void & Voidable Actions

**HN3**[🔖]  **Violations of Stay, Void & Voidable Actions**

The Bankruptcy Code is not intended to be used by creditors as an offensive shield in a state court action. Creditors do not get to offensively use the protections of the automatic stay and the voidness of actions taken without relief from the automatic stay.

**Counsel:** [*1] For SFR Investments Pool 1, LLC: Howard C. Kim, Esq., Nevada Bar No. 10386, Jacqueline A. Gilbert, Esq., Nevada Bar No. 10593, Katherine C.S. Carstensen, Esq., Nevada Bar No. 10656, HOWARD KIM & ASSOCIATES, Henderson, Nevada.

**Judges:** Honorable Gary A. Spraker, United States Bankruptcy Judge.

**Opinion by:** Gary A. Spraker

# Opinion

## ORDER GRANTING SFR INVESTMENTS POOL 1, LLC'S MOTION TO REOPEN CASE TO RETROACTIVELY ANNUL THE AUTOMATIC STAY

On the above-referenced date and time, this Court issued an oral ruling on SFR Investments Pool 1, LLC's ("SFR") Motion to Reopen the Case to Retroactively Annul the Automatic Stay ("Motion") [Dkt. No. 26]. PennyMac Holdings, LLC ("PennyMac") filed an opposition to the Motion on September 30, 2015 [Dkt. No. 32], to which SFR filed its reply on October 7, 2015 [Dkt. No. 33]. Howard C. Kim Esq. and Katherine C.S. Carstensen, Esq. appeared on behalf of SFR. Matthew L. Knepper, Esq. appeared on behalf of PennyMac. After notice was given to creditors and interested parties, no other party appeared at the hearing or filed an opposition or response to the Motion.

The Court, having considered the papers and pleadings on file herein and the arguments of counsel, makes the following findings of [*2] fact and conclusions of law.

## FINDINGS OF FACT[1]

1. On June 27, 2015, James J. Hunyady and Marleen Hunyady ("Debtors") filed their voluntary petition for Chapter 7 bankruptcy protection in the United States

Bankruptcy Court, District of Nevada [Dkt. No. 1]

2. On September 26, 2012, the Court entered an Order Discharging the Debtors [Dkt. No. 21]

3. On October 25, 2012, Green Valley South ("Association") authorized the publication of the non-judicial foreclosure sale of real property located at 2818 Painted Rose Lane, Henderson, Nevada 89074; Parcel No. 177-13-413-005 (the "Property").

4. On November 30, 2012, Nevada Association Services, Inc. ("NAS"), on behalf of the Association, recorded the Notice of Sale in the Official Records of the Clark County Recorder as Instrument No. 201211300002367 ("NOS").

5. On December 3, 2012, a final decree was entered and the Court closed the Debtors' bankruptcy case [Dkt. No. 25].

6. The NOS was recorded three days before the bankruptcy case was closed. Thus, the case was in its closing days when the stay violation took place.

7. On March 1, 2013, the Property was sold to SFR [*3] at a public auction. The Foreclosure Deed was recorded on March 6, 2013 in the Official Records of the Clark County Recorder as Instrument No. 201303060000410.

8. The act taken in violation of the automatic stay was the recordation of the NOS on November 30, 2012.

9. The Association foreclosure sale of the Property, in and of itself, did not violate the automatic stay, as the sale took place months after the bankruptcy case was closed.

## CONCLUSIONS OF LAW[2]

A. *HN1* [⌖] The Ninth Circuit B.A.P., in *In re Williams, 323 B.R. 691, 700 (9th Cir. B.A.P. 2005)*, aff'd, *204 Fed. App'x 582 (9th Cir. 2006)*, reviewed its prior decision in the *Fieldsted* case[3] and the Ninth Circuit's decision in the National Environmental Waste Corporation case[4]

---

[1] Any finding of fact that should be a conclusion of law is deemed a conclusion of law.

[2] Any conclusion of law that should be a finding of fact is deemed a finding of fact.

[3] *In re Fieldsted, 293 B.R. 12, 24 (B.A.P. 9th Cir. 2003)*.

[4] *In re Nat'l Envtl. Waste Corp., 129 F.3d 1052, 1054 (9th Cir. 1997)*.

and surmised that the Court should consider not only the original factors identified in the <u>National Environmental Waste</u> case—which are (1) whether the creditor was aware of the bankruptcy petition, and (2) whether the debtor engaged in unreasonable or inequitable conduct, or prejudice that would result to the creditor[5]—but also a number of other factors, including the extent of any prejudice, including to a bona fide purchaser, the debtor's overall good faith, the debtor's compliance [*4] with the Code, how quickly the creditor moved for annulment, and how quickly the debtor moved to set aside the sale.[6]

B. The Ninth Circuit B.A.P. in <u>Williams</u> further wrote that:

> But because a mechanistic application of "factors" is inappropriate in making the determination of whether to annul the stay, in <u>Fjeldsted</u>, we observed that: Mindful that such lists [of factors] are capable of being misconstrued as inviting arithmetic reasoning, we emphasize that these items are merely a framework for analysis and not a scorecard. **In any given case, one factor may so outweigh the others so as to be dispositive**.

<u>In re Williams, 323 B.R. at 700</u>.

C. The Ninth Circuit has held that actions taken in violation of the automatic stay are void. <u>In re Schwartz, 954 F.2d 569, 571 (9th Cir. 1992)</u>.

D. However, the Ninth Circuit has also concluded, in <u>In re Pecan Groves of Arizona, 951 F.2d 242, 246 (9th Cir. 1991)</u>, that:

> Likewise, Tilley's standing as a lienholder, and thus as a property owner with interests adverse to the estate, requires us to hold that he does not have standing in a bankruptcy proceeding to challenge actions as violative of the stay.

<u>Id. at 246</u>.

E. In reconciling these cases,[7] it seems clear that the protections of the automatic stay, as strong and

fundamental as they are, devolve to the protection of the debtor and the bankruptcy estate, [*5] and specifically, its representative, being either the trustee or the debtor-in-possession in a Chapter 11 case.

F. Thus, <u>HN2</u>[⬆] while the Ninth Circuit has held that an action taken in violation of the automatic stay may be void, it is void only as to those protected parties and a secured creditor is not a protected party.

G. This point was recently reaffirmed in <u>In re Demas Wai Yan, BAP No. NC-14-1266-JuTaPa, 2015 Bankr. LEXIS 600, 2015 WL 845570, at *2 (B.A.P. 9th Cir. Feb. 26, 2015)</u>, in which the Court, citing <u>Pecan Groves</u>, held:

> The Ninth Circuit has held that creditors do not have standing to enforce the protections of the automatic stay and the power to do so in a Chapter 7 belongs to the trustee.

<u>Id.</u>

H. Thus, the protections of the automatic stay were afforded to only the Debtors and the trustee in this case, neither of which asserted a stay violation.

I. There is no party—either the Debtors or the trustee—seeking to enforce the automatic stay because, in large part, PennyMac had acquired relief from the stay to do exactly what the Association did, foreclose on the Property.

J. Moreover, the Debtors and the trustee recognized that the Property was of no benefit to the estate and therefore let the Property go.

K. Here, PennyMac is not arguing [*6] over bankruptcy rights and protections, but rather, is seeking to use the automatic stay as an offensive shield in the state court action. <u>HN3</u>[⬆] The Bankruptcy Code is not intended to be used for such a purpose. Creditors do not get to offensively use the protections of the automatic stay and the voidness of actions taken without relief from the automatic stay. See <u>In re Pecan Groves of Arizona, 951 F.2d 242 (9th Cir. 1991)</u>; see also <u>In re Globe Investments and Loan Company, 867 F.2d 556 (9th Cir. 1989)</u>; see also <u>In re Demas Wai Yan, BAP No. NC-14-1266-JuTaPa, 2015 Bankr. LEXIS 600, 2015 WL 845570 (B.A.P. 9th Cir. Feb. 26, 2015)</u>.

L. Given this, PennyMac, as a creditor, does not have standing to object to the retroactive annulment of the automatic stay in this case.

---

[5] See <u>In re Williams, 323 B.R. at 700</u>.

[6] <u>Id.</u>

[7] See <u>In re Schwartz, 954 F.2d 569 (9th Cir. 1992)</u>; see also <u>In re Pecan Groves of Arizona, 951 F.2d 242 (9th Cir. 1991)</u>; see also <u>In re Globe Investments and Loan Company, 867 F.2d 556 (9th Cir. 1989)</u>.

M. Even if PennyMac did have such standing, which it does not, the facts in this case tip sharply in favor of granting SFR's request for retroactive relief. Those facts include, but are not necessarily limited to: (1) the bankruptcy case closed only days after the NOS was recorded; (2) the Association foreclosure sale happened months after the bankruptcy case closed; (3) PennyMac had obtained relief from the automatic stay, indicating that a secured creditor was not adequately protected so that the stay could be lifted to allow a foreclosure sale to take place; and (4) neither the Debtors nor the trustee are complaining or seeking [*7] to prevent the annulment of the automatic stay. As such, the formulaic and slavish enforcement of the stay in this case, where no real benefit would be served with regards to the intended beneficiaries of that stay—that being the Debtors and the estate—tip sharply in favor of granting retroactive annulment in this case.

N. The other factors to be considered in determining whether to grant retroactive annulment do not tip the analysis significantly one way or the other.

O. In consideration of the Fieldsted factors,[8] exercising its discretion, this Court finds retroactive annulment of the automatic stay is appropriate in this case.

P. Additionally, this Court notes that SFR's lack of direct involvement in the bankruptcy case also favors granting retroactive annulment. SFR is a bona fide purchaser for value here, where it had no knowledge of the bankruptcy case or the application of the automatic stay.

### ORDER

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that SFR Investments Pool 1, LLC's Motion to Reopen the Case to Retroactively Annul the Automatic Stay [Dkt. No. 26] is GRANTED.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the automatic stay with respect to real property located at 2818 [*8] Painted Rose Lane, Henderson, Nevada 89074; Parcel No. 177-13-413-005 is ANNULLED as of November 1, 2012.

IT IS SO ORDERED.

/s/ Gary Spraker

Honorable Gary Spraker

United States Bankruptcy Judge

Entered on Docket

November 12, 2015

_____

End of Document

---

[8] In re Fieldsted, 293 B.R. at 25 (B.A.P. 9th Cir. 2003).

# EXHIBIT C

✦ Positive
As of: October 29, 2022 3:24 PM Z

## Ripon Self Storage, LLC v. Exchange Bank (In re Ripon Self Storage, LLC)

United States Bankruptcy Appellate Panel for the Ninth Circuit

February 17, 2011, Argued and Submitted at Sacramento, California; April 1, 2011, Filed

BAP Nos. EC-10-1325-HKiD, EC-10-1326-HKiD (Related Appeals)

**Reporter**
2011 Bankr. LEXIS 1785 *

In re: RIPON SELF STORAGE, LLC, Debtor.RIPON SELF STORAGE, LLC, Appellant, v. EXCHANGE BANK; UNITED STATES TRUSTEE, Appellees.

**Notice:** NOT FOR PUBLICATION

**Prior History:** [*1] Appeal from the United States Bankruptcy Court for the Eastern District of California. Bk. No. 10-27215.Honorable Robert S. Bardwil, Bankruptcy Judge, Presiding.

## Core Terms

bankruptcy court, automatic stay, reorganization, effective, moot, collateral, adequately protect, motion to enforce, damages, no equity, appeals, grant relief, Modification, injunction, non-debtor, orders

## Case Summary

### Procedural Posture

Appellant debtor challenged two orders entered by the U.S. Bankruptcy Court for the Eastern District of California: (1) granting a motion for relief from stay filed by appellee bank, and (2) denying debtor's motion to enforce the automatic stay against property of debtor's principal and for damages as a result of the bank's foreclosure on that property. A second appellee was the U.S. Trustee.

### Overview

The two issues were: (1) Did the bankruptcy court (BC) err when it granted the bank relief from the automatic stay? and (2) Did the BC err when it refused to extend the automatic stay to the principal's property and to award damages to debtor under _11 U.S.C.S. § 362(k)_? As to the first issue, the court concluded that debtor did not provide evidence demonstrating its ability to effectively reorganize within a reasonable time and

therefore, did not satisfy its burden under _§ 362(d)(2)_. When the bank moved for stay relief under _§ 362(d)(2)_, debtor was obligated to demonstrate that there was equity in the business property or that the business property was necessary for an effective reorganization. Failing to demonstrate either, the BC was required to lift the automatic stay. The BC did not abuse its discretion. Next, the court stated that extension of the stay to nondebtors did not occur automatically but required the filing of an adversary proceeding requesting the BC to act under _11 U.S.C.S. § 105(a)_. Debtor failed to seek an injunction. The principal's property was not protected by the stay. Accordingly, the BC did not err in denying the motion to enforce.

### Outcome

The court affirmed the orders.

## LexisNexis® Headnotes

Bankruptcy Law > Procedural Matters > Judicial Review > Jurisdiction

_HN1_[ ] **Judicial Review, Jurisdiction**

A bankruptcy appellate panel has jurisdiction to review final orders under _28 U.S.C.S. § 158_. However, it lacks jurisdiction to hear moot appeals. An appeal is moot if it cannot fashion effective relief in the event of reversal.

Bankruptcy Law > Procedural Matters > Judicial Review > Jurisdiction

Civil
Procedure > ... > Justiciability > Mootness > General Overview

Civil Procedure > Judgments > Entry of
Judgments > General Overview

*HN2*[⬇] **Judicial Review, Jurisdiction**

Where real property is sold to a creditor who is a party
to the appeal, there exists an exception to the mootness
rule. (context: rule that where an automatic stay is lifted,
the debtor's failure to obtain a stay pending appeal
renders an appeal moot after assets in which the
creditor had an interest are sold).

Bankruptcy Law > ... > Judicial Review > Standards
of Review > Abuse of Discretion

Bankruptcy Law > ... > Administrative
Powers > Automatic Stay > Judicial Review

Bankruptcy Law > ... > Judicial Review > Standards
of Review > Clear Error Review

*HN3*[⬇] **Standards of Review, Abuse of Discretion**

An appellate panel reviews a bankruptcy court's order
granting relief from the automatic stay for an abuse of
discretion. In determining whether a bankruptcy court
abused its discretion, it first determines de novo whether
the bankruptcy court identified the correct legal rule to
apply to the relief requested. If the bankruptcy court
identified the correct legal rule, the appellate panel then
determines under the clearly erroneous standard
whether its factual findings and its application of the
facts to the relevant law were (1) illogical, (2)
implausible, or (3) without support in inferences that
may be drawn from the facts in the record.

Bankruptcy Law > ... > Judicial Review > Standards
of Review > De Novo Standard of Review

Bankruptcy Law > Administrative
Powers > Automatic Stay > General Overview

*HN4*[⬇] **Standards of Review, De Novo Standard of
Review**

An appellate panel reviews de novo whether the
automatic stay provision of *11 U.S.C.S. § 362(a)* has
been violated. De novo means that review is
independent, with no deference given to the trial court's
conclusion.

Bankruptcy Law > ... > Automatic Stay > Relief
From Stay > Debtor's Lack of Equity

Bankruptcy Law > ... > Automatic Stay > Relief
From Stay > Relief for Cause

*HN5*[⬇] **Relief From Stay, Debtor's Lack of Equity**

*11 U.S.C.S. § 362(d)* requires the bankruptcy court, on
request of a party in interest, to grant relief from the
automatic stay when there is cause, including a lack of
adequate protection (*§ 362(d)(1)*); or, when there is no
equity in a property and the property is not necessary
for an effective reorganization (*§ 362(d)(2)*). What
constitutes "cause" to terminate the stay is determined
on a case-by-case basis.

Bankruptcy Law > ... > Automatic Stay > Relief
From Stay > Debtor's Lack of Equity

*HN6*[⬇] **Relief From Stay, Debtor's Lack of Equity**

*11 U.S.C.S. § 362(d)(2)* provides that the court shall
grant relief from the stay if--(A) the debtor does not have
any equity in such property; and (B) such property is not
necessary to an effective reorganization. *11 U.S.C.S. §
362(d)(2)*.

Bankruptcy Law > ... > Automatic Stay > Relief
From Stay > Debtor's Lack of Equity

Evidence > Burdens of Proof > Allocation

Bankruptcy Law > ... > Automatic Stay > Relief
From Stay > General Overview

*HN7*[⬇] **Relief From Stay, Debtor's Lack of Equity**

*11 U.S.C.S. § 362(g)* provides that the party opposing
relief from the stay has the burden of proof on all issues
other than the debtor's equity in a property. Thus, once
a movant establishes that a debtor has no equity in a
property, it is the burden of the debtor to establish that
the collateral at issue is necessary to an effective
reorganization. Equity, for purposes of *§ 362(d)(2)(A)*, is
the difference between the value of the property and all
the encumbrances on it.

Bankruptcy Law > ... > Automatic Stay > Relief From Stay > Debtor's Lack of Equity

### HN8[⤓]  Relief From Stay, Debtor's Lack of Equity

Under the standard set by the U.S. Supreme Court in Timbers, to establish that property is necessary for an effective reorganization under *11 U.S.C.S. § 362(d)(2)(B)*, a debtor is required to show that the property is essential for an effective reorganization that is in prospect. This means a reasonable possibility of a successful reorganization within a reasonable time.

Bankruptcy Law > ... > Automatic Stay > Relief From Stay > Debtor's Lack of Equity

### HN9[⤓]  Relief From Stay, Debtor's Lack of Equity

In the context of *11 U.S.C.S. § 362(d)(2)(B)*, a debtor must do more than merely assert that it can reorganize if only given the opportunity to do so.

Bankruptcy Law > ... > Automatic Stay > Relief From Stay > Debtor's Lack of Equity

Bankruptcy Law > ... > Automatic Stay > Relief From Stay > Relief for Cause

### HN10[⤓]  Relief From Stay, Debtor's Lack of Equity

The standards for stay relief under *11 U.S.C.S. § 362(d)(1)*, *(d)(2)* are independent and alternative.

Bankruptcy Law > ... > Automatic Stay > Scope of Stay > Claims Against Debtors

Bankruptcy Law > Reorganizations > General Overview

### HN11[⤓]  Scope of Stay, Claims Against Debtors

No automatic co-debtor stay exists in chapter 11. Under *11 U.S.C.S. § 362(a)(6)*, the automatic stay enjoins any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case.

Bankruptcy Law > ... > Automatic Stay > Scope of

Stay > Claims Against Estate Property

Bankruptcy Law > ... > Automatic Stay > Scope of Stay > General Overview

### HN12[⤓]  Scope of Stay, Claims Against Estate Property

*11 U.S.C.S. § 362(a)* protects only the debtor, property of the debtor, or property of the estate. It does not protect non-debtor parties or their property. Furthermore, it does not stay actions against guarantors, sureties, corporate affiliates, or other non-debtor parties liable on the debts of the debtor.

Bankruptcy Law > ... > Bankruptcy > Case Administration > Bankruptcy Court Powers

Bankruptcy Law > ... > Automatic Stay > Scope of Stay > General Overview

Bankruptcy Law > Procedural Matters > Adversary Proceedings > Causes of Action

### HN13[⤓]  Case Administration, Bankruptcy Court Powers

The automatic stay may protect nondebtors only under "unusual circumstances" where the interests of the debtor and the nondebtor are inextricably interwoven. However, although referred to as extensions of the automatic stay, it is in fact an injunction issued by the bankruptcy court after a hearing where it is established that unusual circumstances are needed to protect the administration of the bankruptcy estate. Thus, any extension of the automatic stay to nondebtors does not occur automatically but requires the filing of an adversary proceeding requesting the bankruptcy court to act under *11 U.S.C.S. § 105(a)*.

**Counsel:** Arthur L. Barnes, Attorney at Law, argued for the Appellant.

Rachel K. Stevenson of Abbey, Weitzenberg, Warren & Emery argued for the Appellee.

**Judges:** Before: HOLLOWELL, KIRSCHER and DUNN, Bankruptcy Judges.

## Opinion

Bankruptcy Law > ... > Automatic Stay > Scope of

# MEMORANDUM[1]

Ripon Self Storage, LLC (Ripon) appeals two orders entered by the bankruptcy court: (1) granting a motion for relief from stay filed by Exchange Bank (Bank); and (2) denying Ripon's motion to enforce the automatic stay against property of Ripon's principal and for damages as a result of the Bank's foreclosure on that property. We AFFIRM.

## I. FACTS

In July 2005, Ripon obtained a construction loan from the Bank to develop 3.1 acres of land in Ripon, California (the Business Property) into a 352-unit storage facility. Ripon executed a promissory note in favor of the Bank in the principal amount of $3,470,000 (the Note). [*2] The Note is secured by a deed of trust on the Business Property and an assignment of rents derived from that property (Rent Assignment).

Ripon failed to pay the balance due when the Note matured on August 1, 2008. On June 18, 2009, the Bank and Ripon entered into a modification of the Note and a forebearance agreement (the Modification Agreement). The Modification Agreement reduced the Note's principal to $2,175,000 and extended its maturity date to June 30, 2010. Additionally, the Modification Agreement provided for the execution by Ripon of a second note in the amount of $1,142,719 (the Second Note). The Second Note is secured by deeds of trust on real property personally owned by Ripon's principal, Ted Madzey (Madzey) (the Madzey Property).

Ripon breached the Modification Agreement by not forwarding rents to the Bank as required by the Rent Assignment. As a result of Ripon's default, the Bank noticed a trustee's sale on the Business Property for March 2010. On March 23, 2010, Ripon filed a chapter 11 [2] bankruptcy petition.

On [*3] its bankruptcy Schedule A, Ripon valued the Business Property at $2,175,000 with secured claims against it in the amount of $2,294,425. [3]

On April 1, 2010, Ripon sought the use of cash collateral from the Bank. [4] It predicated its request on its contention that the Bank would be adequately protected by an equity cushion in the Business Property, alleging the Business Property had a value of $2,900,000, and later amended its Schedule A to reflect the higher valuation. The Bank opposed Ripon's use of cash collateral, in part, because according to the Bank's appraisal and the Schedule A on file, there was no equity in the Business Property. The Bank sought adequate protection payments. On June 6, 2010, the bankruptcy court granted Ripon the limited right to use cash collateral but conditioned its use on a $9,000 monthly payment, an amount equal to the Note's monthly interest payment.

On July 9, 2010, the Bank filed a motion for stay relief (MRS). The Bank sought relief under _§ 362(d)(1)_ for "cause." The Bank alleged it was not adequately protected because Ripon had failed to make the adequate protection payments and was also delinquent in paying property taxes on the Business Property. Alternatively, the Bank sought relief under _§ 362(d)(2)_, contending that Ripon lacked equity in the Business Property and that the Business Property was not necessary for an effective reorganization. In the MRS, the Bank contended that Ripon owed $2,341,822 on the Note. It submitted an appraisal with its MRS, which set the "as is" value of the Business Property at $1,600,000.

On July 13, 2010, the Bank foreclosed on the Madzey Property, which was pledged to secure the Second Note.

On July 27, 2010, Ripon filed a response to the MRS. It asserted that the Bank [*5] was adequately protected

---

[1] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (_see_ **Fed. R. App. P. 32.1**), it has no precedential value. _See_ 9th Cir. BAP Rule 8013-1.

[2] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, **11 U.S.C. § 101-1532**. All Rule references are to the _Federal Rules of Bankruptcy Procedure, Rules 1001-9037_.

---

[3] Ripon's Schedule D lists two claims secured by the Business Property: (1) the Bank's claim in the amount of $2,175,000 and (2) a mechanic's lien in the amount of $119,425. The Bank filed a proof of claim asserting a secured claim in the amount of $2,276,605.

[4] We have taken judicial notice of the cash collateral [*4] motions filed on the bankruptcy court's electronic docket because they were referred to by Ripon in its brief on appeal but not submitted with the record. _See_ _O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.), 887 F.2d 955, 957-58 (9th Cir. 1989)_ (noting that the appellate court may take judicial notice of items of record).

by Ripon's cash collateral payments. [5] Ripon contended it had met its burden in opposing the MRS because it "demonstrated [the] Bank's unwarranted basis for seeking relief." As far as the "unwarranted basis" for the MRS, Ripon stated that the Bank was "disguis[ing] its request for relief from the stay as a pretext to gain forgiveness from violating the automatic stay" when it foreclosed on the Madzey Property before Ripon was allowed to cure any defaults on its obligation to the Bank under the Note and the Second Note.

On August 3, 2010, Ripon filed a separate motion to enforce the automatic stay, seeking damages under _§ 362(k)_ and an order enjoining the Bank from taking any further action to obtain ownership of the Madzey Property (the Motion to Enforce).

On August 18, 2010, the bankruptcy court held a hearing on the MRS and the Motion to Enforce. During the hearing, the bankruptcy court explained that separate and apart from whether the Bank was adequately protected for purposes of _§ 362(d)(1)_, [*6] it was required to grant stay relief if there was no equity in the Business Property and the Business Property was not necessary for an effective reorganization. Ripon argued that it had filed a motion to extend the exclusivity period for 90 days and would be able to "cure whatever problems that [the bankruptcy court had] with the affective [sic] reorganization of the matter." Hr'g Tr. (August 18, 2010) at 6:1-6. As to the Motion to Enforce, the bankruptcy court determined there was no violation of the automatic stay because the automatic stay only applied to property of the estate, a debtor, or a debtor's property, and absent special circumstances, did not extend to the property of the debtor's principals.

The bankruptcy court entered Civil Minutes, which memorialized its oral ruling and comprised its findings of fact and conclusions of law. It entered a Civil Minute Order granting the MRS, and a Civil Minute Order denying the Motion to Enforce on August 23, 2010. Ripon timely appealed both orders.

On September 3, 2010, Ripon filed a motion for stay pending appeal with the Bankruptcy Appellate Panel (BAP). [6] The BAP denied the request on September 7,

2010, because Ripon did not demonstrate [*7] its entitlement to a stay under the factors enunciated in _Wymer v. Wymer (In re Wymer), 5 B.R. 802 (9th Cir. BAP 1980)_. The Bank subsequently foreclosed on the Business Property. As with the Madzey Property, the Bank was the successful bidder at the trustee's sale.

On November 1, 2010, the Bank filed a supplemental brief requesting dismissal of the appeals. The Bank asserted that the appeals became moot when the Business Property and the Madzey Property were sold at trustee's sales. Ripon responded on November 9, 2010. The BAP entered an order on December 1, 2010, denying the motion to dismiss and taking the matter of our jurisdiction under advisement with the merits of the appeals.

## II. JURISDICTION

The bankruptcy court had jurisdiction pursuant to _28 U.S.C. §§ 1334_ and _157(b)(2)(G)_. HN1[⬆] We have jurisdiction to review final orders under _28 U.S.C. § 158_. However, we lack jurisdiction to hear moot appeals. _I.R.S. v. Pattullo (In re Pattullo), 271 F.3d 898, 900 (9th Cir. 2001)_. An appeal is moot if we cannot fashion effective relief in the event of reversal. _Church of Scientology of Calif. v. United States, 506 U.S. 9, 12, 113 S. Ct. 447, 121 L. Ed. 2d 313 (1992)_; [*8] _United States v. Tanoue, 94 F.3d 1342, 1344 (9th Cir. 1996)_ (Appeal is moot when events occur that make it impossible for the appellate court to grant "any effectual relief whatever.").

The Bank argues that because both the Business Property and the Madzey Property have been sold, reversing the orders on appeal would provide no relief for Ripon. See _In re Onouli-Kona Land Co., 846 F.2d 1170, 1171 (9th Cir. 1988)_ ("Whether an order directly approves the sale or simply lifts the automatic stay, the mootness rule dictates that the appellant's failure to obtain a stay moots the appeal."). However, HN2[⬆] "where real property is sold to a creditor who is a party to the appeal," there exists an exception to the mootness rule. _Id. at 1172_ (quoting _Sun Valley Ranches, Inc. v. Equitable Life Assurance Soc'y of the U.S. (In re Sun Valley Ranches), 823 F.2d 1373, 1375 (9th Cir. 1987)_). Because the parties have indicated that the Bank continues to hold title to the Madzey Property and the Business Property, and neither property has been sold to a third party, the exception to mootness applies.

---

[5] The Bank, in its Reply to the MRS, acknowledged that while it had not received a cash collateral payment at the time it filed the MRS, it had thereafter received payments.

[6] Ripon first filed a motion for stay pending appeal in the bankruptcy court, but it was denied.

Furthermore, the BAP could provide Ripon effective relief if it reversed the bankruptcy court's denial of the [*9] Motion to Enforce, since the Motion to Enforce sought damages under *§ 362(k)* for violation of the automatic stay. As a result, the appeals are not moot and we have jurisdiction to address the merits.

## III. ISSUES

(1) Did the bankruptcy court err when it granted the Bank relief from the automatic stay?

(2) Did the bankruptcy court err when it refused to extend the automatic stay to the Madzey Property and to award damages to Ripon under *§ 362(k)*?

## IV. STANDARDS OF REVIEW

*HN3*[↑] We review a bankruptcy court's order granting relief from the automatic stay for an abuse of discretion. *Arneson v. Farmers Ins. Exch. (In re Arneson), 282 B.R. 883, 887 (9th Cir. BAP 2002).* In determining whether the bankruptcy court abused its discretion, we first "determine de novo whether the [bankruptcy] court identified the correct legal rule to apply to the relief requested." *United States v. Hinkson, 585 F.3d 1247, 1262 (9th Cir. 2009).* If the bankruptcy court identified the correct legal rule, we then determine under the clearly erroneous standard whether its factual findings and its application of the facts to the relevant law were "(1) illogical, (2) implausible, or (3) without support in inferences that may be [*10] drawn from the facts in the record." *Id.* (internal quotation marks omitted).

*HN4*[↑] We review de novo whether the automatic stay provision of *§ 362(a)* has been violated. *Mwangi v. Wells Fargo Bank (In re Mwangi), 432 B.R. 812, 818 (9th Cir. BAP 2010);* *Chugach Timber Corp. v. N. Stevedoring & Handling Corp. (In re Chugach Timber Corp.), 23 F.3d 241, 244 (9th Cir. 1994).* De novo means that our review is independent, with no deference given to the trial court's conclusion. *In re Mwangi, 432 B.R. at 818.*

## V. DISCUSSION

## A. Relief From The Automatic Stay

*HN5*[↑] *Section 362(d)* requires the bankruptcy court,

on request of a party in interest, to grant relief from the automatic stay when there is cause, including a lack of adequate protection (*§ 362(d)(1)*); or, when there is no equity in a property and the property is not necessary for an effective reorganization (*§ 362(d)(2)*). What constitutes "cause" to terminate the stay is determined on a case-by-case basis. *Delaney-Morin v. Day (In re Delaney-Morin), 304 B.R. 365, 369 (9th Cir. BAP 2003)* (citing *Mac Donald v. Mac Donald (In re Mac Donald), 755 F.2d 715, 717 (9th Cir. 1985)).*

The bankruptcy court's stay relief order focused on granting relief under *§ 362(d)(2)* [*11] and Ripon concedes that the bankruptcy court granted relief under *§ 362(d)(2).* Nevertheless, Ripon argues that because the Bank was receiving payments pursuant to the cash collateral order, the Bank was adequately protected and stay relief was unwarranted. Ripon's argument ignores the language of *§ 362(d)(2).* *HN6*[↑] *Section 362(d)(2)* provides that "the court shall grant relief from the stay . . . if - (A) the debtor does not have any equity in such property; and (B) such property is not necessary to an effective reorganization." *11 U.S.C. § 362(d)(2)* (emphasis added).

*HN7*[↑] *Section 362(g)* provides that the party opposing relief from the stay has the burden of proof on all issues other than the debtor's equity in a property. Thus, once a movant establishes that a debtor has no equity in a property, "it is the burden of the debtor to establish that the collateral at issue is necessary to an effective reorganization." *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd., 484 U.S. 365, 375, 108 S. Ct. 626, 98 L. Ed. 2d 740 (1988).*

Equity, for purposes of *§ 362(d)(2)(A),* is the difference between the value of the property and all the encumbrances on it. *Sun Valley Newspapers, Inc. v. Sun World Corp. (In re Sun Valley Newspapers, Inc.), 171 B.R. 71, 75 (9th Cir. BAP 1994)* [*12] (citing *Stewart v. Gurley, 745 F.2d 1194, 1196 (9th Cir. 1984)).* On its Schedule A, Ripon listed the Business Property as having a value of $2,175,000 with secured claims against it in the amount of $2,294,425. Ripon amended Schedule A to increase its valuation of the Business Property to $2,950,000, but did not submit an appraisal or other documentation to support the increased value.

With its MRS, the Bank submitted an appraisal report that determined the Business Property had an "as is" value of $1,600,000. Ripon did not contest the Bank's appraisal or argue that there was equity in the Business Property. The bankruptcy court acknowledged Ripon's

amended Schedule A, but gave the higher valuation little weight, as it was "convinced that the debtor simply . . . [increased] the value of the real property to accommodate its best interest, without regard as to accuracy of the value given." [7] The bankruptcy court therefore, used the $2,175,000 figure listed by Ripon on its initial Schedule A to establish the value of the Business Property. Because the Bank's MRS asserted a claim in the amount of $2,341,822, the bankruptcy court found there was no equity. Ripon does not challenge this finding [*13] on appeal.

Conceding there was no equity in the Business Property, Ripon had the burden to demonstrate that the Business Property was necessary for an effective reorganization. HN8[↑] Under the standard set by the Supreme Court in Timbers, to establish that property is necessary for an effective reorganization under § 362(d)(2)(B), a debtor is required to show that "the property is essential for an effective reorganization that is in prospect . . . . This means a reasonable possibility of a successful reorganization within a reasonable time." 484 U.S. at 376 (internal quotations omitted); In re Dev., Inc., 36 B.R. 998, 1005 (Bankr. D. Haw. 1984) (cited with approval by Timbers).

Ripon never contended that it had a reorganization plan in prospect and does not do so on appeal. As the bankruptcy court noted, Ripon submitted virtually no evidence that the Business Property was necessary for an effective reorganization. The only evidence relating to the issue of reorganization was contained in Madzey's declaration, which stated in a conclusory fashion that Ripon had increased its tenants from [*14] 175 to 205 and that "given this positive result, [Madzey] intend[ed] to continue to fund and support marketing for Ripon in anticipation of a successful business reorganization." There is no other information, documentation, or even argument that addresses how Ripon intended to restructure its debts or otherwise formulate a feasible plan of reorganization. Furthermore, at the time of the MRS hearing, the exclusivity period had run. [8]

HN9[↑] A debtor must do more than merely assert that it can reorganize if only given the opportunity to do so. See, e.g., Am. State Bank v. Grand Sports, Inc. (In re Grand Sports, Inc.), 86 B.R. 971, 975 (Bankr. N.D. Ill. 1988). After reviewing the record, we agree that Ripon did not provide evidence demonstrating its ability to effectively reorganize within a reasonable time and therefore, did not satisfy its burden under § 362(d)(2). Ripon fails, on appeal, to articulate any error that [*15] the bankruptcy court made with respect to that finding.

Instead, Ripon argues that it did not have to demonstrate the Business Property was necessary for reorganization "if the [Bank] did not have grounds to seek relief from the Automatic Stay in the first place." Ripon takes the position that since the Bank was receiving cash collateral payments, it was adequately protected and, therefore, had no basis to seek stay relief. [9]

HN10[↑] The standards for stay relief under § 362(d)(1) and (d)(2) are independent and alternative. Can-Alta Props., Ltd. v. States Sav. Mortg. Co. (In re Can-Alta Props., Ltd.), 87 B.R. 89, 90 (9th Cir. BAP 1988). [*16] Therefore, the cash collateral payments that Ripon asserted adequately protected the Bank are irrelevant to whether stay relief should have been granted under § 362(d)(2).

When the Bank moved for stay relief under § 362(d)(2), Ripon was obligated to demonstrate that there was equity in the Business Property or that the Business Property was necessary for an effective reorganization. Failing to demonstrate either, the bankruptcy court was required to lift the automatic stay. The bankruptcy court did not abuse its discretion when it granted stay relief under § 362(d)(2).

## B. Enforcement Of The Automatic Stay

---

[7] The bankruptcy court's findings regarding credibility are entitled to particular deference under Rule 8013.

[8] The MRS was filed 10 days before the exclusivity period expired, and the exclusivity period had run at the time the MRS hearing was held. Ripon did file a motion to extend the exclusivity period on July 23, 2010; however the bankruptcy court denied the motion on August 18, 2010.

[9] Ripon relies on Timbers to support its position that the Bank (as an undersecured creditor who was receiving adequate protection) was not entitled to stay relief. Timbers held that under § 362(d)(1), undersecured creditors are not entitled to compensation for the delay caused by the automatic stay in foreclosing on their collateral. The passage in Timbers that Ripon asserts settles the issue is actually a recitation by the Court of the appellant's arguments, which it found illogical and dismissed. Thus, Ripon's reliance on Timbers is misplaced and unpersuasive.

Ripon asserted that the Bank was inappropriately seeking stay relief as a "pretext to gain forgiveness for its violation of the stay." Ripon argued that the Bank's foreclosure of the Madzey Property violated *§ 362(a)(6)*. It sought actual and punitive damages for the willful violation of the automatic stay pursuant to *§ 362(k)* in the amount of $15,000, and an injunction against the Bank from recording the trustee's deed or taking any other action to sell the Madzey Property.

In its Motion to Enforce, Ripon alleged that the Bank violated the stay by foreclosing on the Madzey Property before [*17] Ripon had an opportunity to determine whether its plan could cure Ripon's defaults under the Second Note. But it offered no reasoned legal argument as to why Madzey (who is not a debtor) or the Madzey Property (which Ripon concedes is not Ripon's property) would be protected by the automatic stay of *§ 362(a)*.

Ripon referred to Madzey as a "co-debtor" in its communications with the Bank regarding the foreclosure of the Madzey Property. However, the bankruptcy court correctly determined that *HN11*[⬆] no automatic co-debtor stay exists in chapter 11. Under *§ 362(a)(6)*, the automatic stay enjoins "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case."

*HN12*[⬆] *Section 362(a)* protects only the debtor, property of the debtor, or property of the estate. *Boucher v. Shaw, 572 F.3d 1087, 1092 (9th Cir. 2009)*. It does not protect non-debtor parties or their property. *Id.* Furthermore, it "does not stay actions against guarantors, sureties, corporate affiliates, or other non-debtor parties liable on the debts of the debtor." *Id.* (citations omitted); *Advanced Ribbons & Office Prods. v. U.S., 125 B.R. 259, 263 (9th Cir. BAP 1991)*. Madzey is not a debtor but [*18] an officer of Ripon. The Madzey Property was pledged as additional security for Ripon's liability on the Second Note, but that does not bring the Madzey Property into the Ripon estate. [10]

The bankruptcy court found that only if Ripon had sought a § 105 injunction based on the bankruptcy court's equitable powers could it have extended the stay to Madzey and the Madzey Property under appropriate circumstances. No § 105 injunction was sought and no stay existed. Therefore, the bankruptcy court concluded that the Bank did not violate the automatic stay and no damages could be awarded. There is no error in that

conclusion.

*HN13*[⬆] The automatic stay may protect nondebtors only under "unusual circumstances" where the interests of the debtor and the nondebtor are inextricably interwoven. See *A.H. Robins v. Piccinin, 788 F.2d 994, 999 (4th Cir. 1986)*, cert. denied, *479 U.S. 876, 107 S. Ct. 251, 93 L. Ed. 2d 177 (1986)*. However, the Ninth Circuit has held that "although referred to as extensions of the automatic stay," it is in fact an injunction issued by the bankruptcy court after a hearing where it is established that unusual circumstances are needed to protect the [*19] administration of the bankruptcy estate. *Boucher v. Shaw, 572 F.3d at 1093 n.3* (citing *In re Chugach Forest Prods., Inc.*, 23 F.3d at 247); *In re Spaulding Composites Co., Inc., 207 B.R. 899 (9th Cir. BAP 1997)*. Thus, any extension of the automatic stay to nondebtors does not occur automatically but requires the filing of an adversary proceeding requesting the bankruptcy court to act under *§ 105(a)*. Ripon failed to seek an injunction. Ripon was not entitled to damages as a result of the Bank's foreclosure on the Madzey Property since the Madzey Property was not protected by the automatic stay. Accordingly, the bankruptcy court did not err in denying the Motion to Enforce.

## VI. CONCLUSION

For the foregoing reasons, we AFFIRM the bankruptcy court's orders granting the Bank's MRS and denying Ripon's Motion to Enforce.

---

End of Document

---

[10] The Madzey Property is not listed on Ripon's bankruptcy schedules.

# EXHIBIT D

⬦ Positive
As of: October 29, 2022 3:25 PM Z

## Klinkenborg Aerial Spraying & Seeding Inc. v. Rotorcraft Dev. Corp.

United States District Court for the District of Montana, Missoula Division

August 18, 2014, Decided; August 18, 2014, Filed

CV 12-202-M-DLC-JCL

**Reporter**
2014 U.S. Dist. LEXIS 198856 *

KLINKENBORG AERIAL SPRAYING AND SEEDING INC., Plaintiff, vs. ROTORCRAFT DEVELOPMENT CORPORATION, ROTORCRAFT HOLDINGS, LLC, ROTORCRAFT SPARES, LLC, SELECT AVIATION SERVICES, INC., SELECT AVIATION HOLDINGS, LLC, SELECT TURBINE COMPONENTS, INC. and GARY FOX, INDIVIDUALLY, Defendants.

**Subsequent History:** Adopted by, Motion granted by, Motion denied by, Dismissed without prejudice by, in part *Klinkenborg Aerial Spraying & Seeding Inc. v. Rotorcraft Dev. Corp., 2014 U.S. Dist. LEXIS 198855 (D. Mont., Dec. 8, 2014)*

**Prior History:** *Klinkenborg Aerial Spraying & Seeding, Inc. v. Rotorcraft Dev. Corp., 2013 U.S. Dist. LEXIS 202682 (D. Mont., Jan. 18, 2013)*

## Core Terms

helicopters, blades, damages, default judgment, contracts, default, entry of default, punitive damages, alleges, promised, deliver, automatic stay, expenses, consequential damages, breach of warranty, delivery, engine, breach of contract, direct damage, warranty, incidental damages, aircraft, install, attorney's fees, fraud claim, repairable, bankruptcy court, representations, inspection, non-debtor

**Counsel:** [*1] For Klinkenborg Aerial Spraying And Seeding Inc., Plaintiff, Counter Defendant: G. Trenton Hooper, LEAD ATTORNEY, CROWLEY FLECK, Billings, MT USA; Matthew A. Baldassin, CROWLEY FLECK PLLP - MISSOULA, Missoula, MT USA.

For Rotorcraft Development Corporation, Rotorcraft Holdings, Llc, Select Aviation Services, Inc., Select Aviation Holdings, Llc, Gary Fox, individually, Defendants, Counter Claimants: Nicole L. Siefert, Quentin M. Rhoades, RHOADES, SIEFERT & ERICKSON, P.L.L.C., Missoula, MT USA.

For Select Turbine Components, Inc., Defendant, Counter Claimant: Quentin M. Rhoades, RHOADES, SIEFERT & ERICKSON, P.L.L.C., Missoula, MT USA.

**Judges:** Jeremiah C. Lynch, United States Magistrate Judge.

**Opinion by:** Jeremiah C. Lynch

# Opinion

FINDINGS & RECOMMENDATION

Defendants Rotorcraft Development Corporation, Rotorcraft Holdings LLC, Select Aviation Services Inc., Select Aviation Holdings LLC and Gary Fox ("Defendants") move under *Federal Rule of Civil Procedure 55(c)* to set aside the default entered against them by the Clerk of Court on November 19, 2013. Plaintiff Klinkenborg Aerial Spraying and Seeding, Inc. ("Klinkenborg") argues the entry of default should stand, and has filed a motion asking the Court to enter a default judgment of more than $8 million against [*2] Defendants. For the reasons set forth below, Defendants' motion to set aside the entry of default should be denied, and a default judgment in the amount of $449,954.16 should be entered against the Defendants.

## I. Background

Klinkenborg is an aerial spraying and seeding business that provides services to individual growers, government entities, and farmer cooperatives. In early 2012, Klinkenborg contracted to purchase two refurbished helicopters from Defendant Rotorcraft Development Corporation ("Rotorcraft Development") for use in its business. (Doc. 1-1, 1-2). Klinkenborg claims that Rotorcraft Development failed to timely deliver the helicopters, and that when it finally did deliver the

helicopters they were not in the condition promised. Klinkenborg alleges it incurred significant financial damages as a result.

Klinkenborg filed its complaint against Gary Fox individually, Rotorcraft Development, and the other corporate defendants on December 11, 2012, alleging several causes of action arising out of the purchase and sale of the two helicopters. Klinkenborg's complaint asserts claims against all named Defendants for: (1) breach of contract; (2) declaratory judgment; (3) breach of the [*3] implied covenant of good faith and fair dealing; (4) specific performance; (5) cover; (6) breach of warranty; (7) interpleader; (8) conversion; (9) unjust enrichment/constructive trust; (10) fraud/misrepresentation; (11) personal liability for corporate action; (12) attorneys fees, and; (13) punitive damages. (Doc. 1). Although Rotorcraft Development is the only defendant that was a party to the contracts, Klinkenborg seeks to hold Defendants jointly and severally liable for all claims under an alter ego theory of piercing the corporate veil. (Doc. 1, ¶¶ 103-11).

Klinkenborg served Defendants on December 27, 2012. (Doc. 6 through 11). When the deadline for answering passed without any appearance by Defendants, Klinkenborg sought and obtained entry of default pursuant to _Fed. R. Civ. P. 55(a)_. (Doc. 16, 17). On January 24, 2013, the day after default was entered, Defendants appeared in the case through counsel and moved to set aside the default. (Doc. 19, 20, 28). The Court granted the motion, finding that Defendants had established good cause for setting aside the default. (Doc. 39, 52).

A number of things worth noting happened over the course of the next several months. On March 28, 2013, the Court granted [*4] a joint motion to dismiss Defendant Rotorcraft Spares, LLC without prejudice. (Doc. 49). On August 16, 2013, Defendant Select Turbine Components, Inc. filed a bankruptcy petition with the United States Bankruptcy Court for the District of Montana. (Doc. 54). And on October 11, 2013, the Court issued an order granting a motion by defense counsel for leave to withdraw from the case. (Doc. 69). The order stated that by November 15, 2013, Defendant Gary Fox was to either advise the Court that he intended to thereafter represent himself in the matter or have new counsel enter an appearance on his behalf. The order further directed the corporate Defendants to have an attorney enter an appearance on their behalf by the November 15, 2013, deadline. The Court specifically advised Defendants that failure to comply with the order

would result in the entry of default. (Doc. 69, at 2).

Notwithstanding this cautionary language, Defendants did not comply with the Court's order. On November 18, 2013, Klinkenborg moved for entry of default against Defendants pursuant to _Fed. R. Civ. P. Rule 55(a)_. (Doc. 70). Klinkenborg did not request entry of default against Defendant Select Turbine Components ("Select Turbine") because by [*5] that time the entity had filed for bankruptcy. On November 19, 2013, the Clerk of Court entered default against Defendants pursuant to _Rule 55(a)_. (Doc. 71). Approximately four months later, on March 10, 2014, the Court entered an order staying these proceedings as to Select Turbine pursuant to the Bankruptcy Code's automatic stay provision, _11 U.S.C. § 362_.[1]

On April 9, 2014, Klinkenborg filed the pending _Rule 55(b)_ motion for entry of default judgment against Defendants in the amount of $8,740,685.26. Klinkenborg does not seek a default judgment against Select Turbine, and has moved instead to dismiss the entity from the case without prejudice on the ground that information has come to light indicating that Select Turbine was likely not an alter ego of the other Defendants. (Doc. 94). On May 2, 2014, Defendants in turn moved under _Rule 55(c)_ to set aside the default entered against them on November 19, 2013, and to vacate all pending proceedings pursuant to _§ 362_'s automatic stay provisions. It is important to emphasize that from the entry of default on November 19, 2013, until May 2, 2014, Defendants did not seek to have the default set aside.

## II. **Motion to Set Aside Entry of Default**

_Rule 55(c)_ provides that "[t]he court may set aside an entry of [*6] default for good cause...." _Fed. R. Civ. P. 55(c)_. Whether to set aside the entry of default is within the court's discretion. _See O'Connor v. State of Nev., 27 F.3d 357, 364 (9th Cir. 1994)_. In determining whether "good cause" is present, the court typically considers three factors: "'(1) whether the plaintiff will be prejudiced, (2) whether the defendant has a meritorious defense, and (3) whether culpable conduct of the

---

[1] It is the act of filing for bankruptcy that triggers _§ 362_'s automatic stay provisions. Thus, although the Court did not enter its order staying these proceedings as to Select Turbine until March 2014, the automatic stay provisions of _§ 362_ had already been triggered by then.

defendant led to the default." *Brandt v. American Bankers Ins. Co. of Florida. 653 F.3d 1108, 1111 (9th Cir. 2011)* (quoting *Falk v. Allen, 739 F.2d 461, 463 (9th Cir. 1984))*.

Klinkenborg argues that Defendants have not established good cause for setting aside the entry of default as required by *Rule 55(c)*. But because Defendants do not even attempt to establish good cause for setting aside the entry of default based on the traditional *Falk* factors, the Court need not consider them. Defendants instead argue that the default entered against them is void, and must be set aside on that basis.

Defendants premise their argument on the Bankruptcy Code's automatic stay provision, which states in relevant part that a bankruptcy petition:

operates as a stay, applicable to all entities, of —

(1) the commencement or continuation...of a judicial...action or proceeding against the debtor that was or could have been commenced before the commencement of the [bankruptcy] case, or to recover a claim against [*7] the debtor that arose before the commencement of the [bankruptcy] case;...

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate.

*11 U.S.C. § 362(a)*.

This automatic stay provision "plays a vital role in bankruptcy" and "is designed to protect debtors from all collection efforts while they attempt to regain their financial footing." *In re Schwartz, 954 F.2d 569, 571 (9th Cir. 1992)*. Any actions taken in violation of the automatic stay are void. *In re Schwartz, 954 F.2d at 569*.

Klinkenborg argues that Defendants' motion to set aside the entry of default should be denied because it has moved to dismiss Select Turbine from the case, thereby alleviating any question as to whether the automatic bankruptcy stay applies to its claims against the other Defendants. But because Defendants argue the default entered in November 2013 is void because it was entered while all claims against them were automatically stayed pursuant to *§ 362(a)(3)*, dismissing Select Turbine at this juncture does not resolve Defendants' motion. While the motion to dismiss Select Turbine is

properly granted,[2] the Court must still consider whether there was an automatic stay in place as to the nondebtor Defendants thereby making the subsequent entry [*8] of default against them void.

"As a general rule, the automatic stay of *section 362(a)* protects only the debtor, property of the debtor or property of the estate." *In re Chugach Forest Products, Inc., 23 F.3d 241, 247 (9th Cir. 1994)*. Defendants argue that Klinkenborg's corporate veil piercing claims are property of the bankruptcy estate, which means this entire case is subject to the automatic stay provisions of *§ 362(a)(3)*. Assuming the automatic stay applies, Defendants maintain that the default entered on November 19, 2013, is void and take the position that these proceedings should be vacated pending resolution of the underlying bankruptcy action.

For support, Defendants rely on the Fifth Circuit's decision in *S.I. Acquisition, Inc. v. Eastway Delivery Service, Inc., 817 F.2d 1142 (5th Cir. 1987)*, which considered whether the automatic stay provisions of *§ 362* applied to bar further proceedings against non-bankrupt defendants in litigation premised on piercing the corporate veil of the debtor. *S.I. Acquisition, 817 F.2d at 1145*. The court recognized that a *§ 362(a)(1)* stay does not apply to non-bankrupt co-defendants absent "unusual circumstances." *S.I. Acquisition, 817 F.2d at 1147*. "Unusual circumstances" arise "when there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding [*9] against the debtor." *S.I. Acquisition, 817 F.2d at 1148*. Ultimately, however, the court found it unnecessary to address the issue of whether *§ 362(a)(1)* could be interpreted to stay litigation against nonbankrupt defendants. *S.I. Acquisition, 817 F.2d at 1151 n. 10*.

Turning instead to *§ 362(a)(3)*, the court found that an alter-ego claim belongs to the debtor, and concluded that a lawsuit premised solely on the theory that the defendants are alter egos of the debtor "is automatically stayed as to all parties." *S.I. Acquisition, 817 F.2d at 1150-51*. Defendants ask the Court to follow *S.I. Acquisition* and hold that this litigation is automatically stayed as to all parties under *§ 362(a)(3)* because

---

[2] Defendants have not filed a brief in opposition to Klinkenborg's motion to dismiss Select Turbine, which this Court takes as an admission that the motion is well-taken. Local Rule 7.1(d)(1)(B)(ii).

Klinkenborg's alter ego claims are property of Select Turbine's bankruptcy estate.

According to Klinkenborg, however, the Ninth Circuit has refused to follow *S.I. Acquisition* and has rejected the "unusual circumstances" exception to the general rule that an automatic stay protects only the debtor. Klinkenborg relies on *Chugach*, wherein the Ninth Circuit stated that an automatic stay "does not protect non-debtor parties or their property. Thus, *§ 362(a)* does not stay actions against guarantors, sureties, *corporate affiliates*, or other non-debtor parties liable on the debts of the debtor." *In re Chugach, 23 F.3d at 247* (emphasis added).

While *Chugach*'s reference to "corporate [*10] affiliates" supports Klinkenborg's argument that an automatic stay under *§ 362(a)* does not extend to alter ego corporate affiliates, the Ninth Circuit also noted that "the vitality of the 'unusual circumstances' exception" to the general rule that an automatic stay applies only to the debtor "is not clear." *In re Chugach, 23 F.3d at 247*. The court specifically "postpone[d] resolution of the issue until another day." *Chugach, 23 F.3d at 247. Chugach* did not, as Klinkenborg suggests, definitively reject the "unusual circumstances" exception.

*Chugach* is nonetheless helpful because the court went on to say that even if the "unusual circumstances" rationale was applicable, the debtor "would have an additional, insurmountable problem." *Chugach, 23 F.3d at 247 n.6*. The Ninth Circuit made clear that "although referred to as extensions of the automatic stay," such extensions are "in fact injunctions issued by the bankruptcy court after hearing and the establishment of unusual need to take this action to protect the administration of the bankruptcy estate." *Chugach, 23 F.3d at 247 n.6*. The court thus noted that even if it "were to adopt the unusual circumstances test, the bankruptcy court would first need to extend the automatic stay under its equity jurisdiction." *Chugach, 23 F.3d at 247 n.6*.

Consistent with *Chugach*, the Ninth Circuit has since [*11] held that any extension of an automatic stay to non-debtors is actually an injunction that can be issued by the bankruptcy court only after a hearing where it is established that unusual circumstances exist. *See e.g. Boucher v. Shaw, 572 F.3d 1087, 1093 n.3 (9th Cir. 2009)* (citing *Chugach* for the proposition that any extension of an automatic stay to non-debtors is actually an injunction that can only be issued by the bankruptcy court following hearing where it is

established that unusual circumstances exist); *In re Excel Innovations, Inc., 502 F.3d 1086, 1096 (9th Cir. 2007)* (explaining that "the 'unusual circumstances' doctrine does not negate the traditional preliminary injunction standard," and any extensions of an automatic stay are in fact injunctions that must be issued by the bankruptcy court in the exercise of its general equitable powers under *11 U.S.C. § 105*). Here, there has been no motion for an injunction in the bankruptcy court, and no finding by the bankruptcy court that an extension of the automatic stay is warranted under the usual preliminary injunction standard.

Defendants nonetheless claim they are not actually asking the Court to extend the automatic stay. Defendants maintain they are simply taking the position that Klinkenborg's alter-ego claims became part of the bankruptcy estate with the filing [*12] of Select Turbine's bankruptcy petition, which means these proceedings are subject to the automatic bankruptcy stay under *§ 362(a)(3)*. But the practical effect of reaching such a conclusion under the circumstances would be to extend the protection afforded by the bankruptcy stay applicable to Select Turbine to the non-debtor Defendants based solely on the allegations in Klinkenborg's complaint. Semantics aside, the non-debtor Defendants are in effect asking for an extension of the automatic stay under *§ 362(a)(3)* to protect their assets.

It is true, as Defendants point out, that a bankruptcy trustee has standing to bring a claim for relief based on Montana's alter ego doctrine in an attempt to recover assets for the bankruptcy estate. *In re Towe, 173 B.R. 197, 201 (Bkrtcy. D. Mont. 1994)*. But *Towe* does not stand for the proposition that an automatic bankruptcy stay under *§ 362(a)(3)* necessarily extends to protect non-debtor defendants in civil litigation simply by virtue of the fact that the plaintiff has alleged an alter ego theory of liability. Even where a plaintiff alleges liability based on identity of interest between a debtor and non-debtor, whether to extend the bankruptcy stay to protect the non-debtor is for the bankruptcy court to decide. *Chugach, 23 F.3d at 246-47* and n. 6. If Defendants [*13] wanted to enjoy the protection of the stay automatically applicable to Select Turbine under *§ 362(a)*, their remedy was with the bankruptcy court. Defendants did not pursue that remedy, however, and instead allowed the deadline for answering Klinkenborg's complaint to pass without answering or otherwise appearing in this case.

Because the *§ 362(a)* bankruptcy stay in place as to

Select Turbine did not extend to Defendants when default was entered against them on November 13, 2013, the default is not void. Defendants' motion to set aside the entry of default should be denied accordingly

## III. Motion for Entry of Default Judgment

### A. Liability

Klinkenborg moves for a default judgment against Defendants pursuant to *Fed. R. Civ. P. 55(b)*. Where, as here, default has been entered pursuant to *Fed. R. Civ. P. 55(a)*, the factual allegations of the complaint are taken as true for purposes of entering a default judgment under *Rule 55(b)*. *See, e.g., Geddes v. United Financial Group, 559 F.2d 557, 560 (9th Cir. 1977)*. A default judgment may not "differ in kind from, or exceed in amount, what is demanded in the pleadings." *Fed. R. Civ. P. 54(c)*.

Whether to grant default judgment is left to the court's sound discretion. *See Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980)*. In determining whether default judgment is appropriate, the court should consider the following factors: "(1) the possibility of prejudice [*14] to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986)*.

On balance, these factors weigh in favor of entering default judgment in Klinkenborg's favor. As to the first factor, Klinkenborg will be prejudiced if default judgment is not entered. Defendants have been extremely dilatory and uncooperative from the outset. They failed to answer Klinkenborg's complaint, necessitating entry of a *Rule 55(a)* default. Although Defendants thereafter appeared and succeeded in having the default set aside, their counsel subsequently withdrew from the case and Defendants failed to comply with the Court's order giving them a deadline by which to secure new counsel. Defendants' conduct resulted in entry of a second *Rule 55(a)* default. Klinkenborg filed its complaint in December 2012, which means this case has been languishing for more than a year and a half because of Defendants' unwillingness to participate [*15] in the proceedings. It is also worth noting that when Klinkenborg initiated this litigation, there were several lawsuits pending against Defendants in Montana and Idaho, and creditors were actively pursuing Defendants' assets. (Doc. 15, at 3). Klinkenborg has undoubtedly been prejudiced by the one and half year delay in having its claims against Defendants resolved, and will continue to suffer prejudice if default judgment is not entered in its favor. This factor thus weighs in favor of entering default judgment.

The second and third factors also weigh in favor of default judgment. These two factors are considered together, and essentially require that "a plaintiff state a claim on which [it] may recover." *Pepsico, Inc. v. California Security Cans, 238 F.Supp.2d 1172, 1175 (CD. Cal. 2002)*. Taking the allegations in the Complaint as true, Klingenborg has stated several claims for relief, including claims for breach of contract, piercing the corporate veil, and breach of warranty.

For example, Klinkenborg's breach of contract claim alleges that Rotorcraft Development entered into valid contracts with Klinkenborg, breached the contracts by failing to deliver the helicopters and critical parts by the agreed deadline, and that Klinkenborg suffered damages as a result. (Doc. [*16] 1, ¶¶ 60-63; 65-68). Klinkenborg further alleges that "all of the defendants are liable for the damages either by direct involvement in the wrongful conduct or by way of disregard of the corporate entity." (Doc. 1, ¶¶ 64, 69). Klinkenborg's breach of warranty claim alleges that "[i]n both contracts and in communications between the buyer and seller numerous express and implied warranties were made about the specifications of the goods that would be delivered," that the helicopters did not conform to those warranties, and that Klinkenborg was damaged as a result. (Doc. 1, ¶¶85-88). The second and third *Eitel* factors thus weigh in favor of entering default judgment in Klinkenborg's favor.

Under the fourth *Eitel* factor, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *PepsiCo, Inc.. 238 F.Supp.2d at 1176-77*. The amount of money at stake here is undoubtedly large, as Klinkenborg seeks a default judgment in the amount of $8,470,685.26. Of that amount, $7,700,786.90 represents a request for punitive damages. As discussed below, however, Klinkenborg is not entitled to recover the punitive damages sought by way of a default judgment Moreover, the remaining $769,898.36 in contractual [*17] damages, warranty damages, and

attorney fees sought is properly reduced to $449,954.16. The Court thus finds that this factor does not ultimately weigh against the entry of a default judgment. *See Back Shop Tiefkuhl GMBH v. GN Trade, Inc., 2014 U.S. Dist. LEXIS 82500, 2014 WL 2745331 *5 (E.D. Cal. June 17, 2014).*

The fifth factor, which requires the Court to consider the possibility of a dispute concerning material facts, also weighs in Klinkenborg's favor. "Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default... there is no likelihood that any genuine issue of material facts exists." *Back Shop Tiefkuhl GMBH, 2014 U.S. Dist. LEXIS 82500, 2014 WL 2745331 *5 (quoting Elektra Entertainment Group Inc. v. Crawford, 226 F.R.D. 388, 393 (C.D. Cal. 2005)).* Because Klinkenborg's complaint states a claim for relief and the facts alleged therein are accepted as true, there is no likelihood of a material factual dispute.

Under the sixth factor, the Court considers whether the default was due to excusable neglect. The record reflects that Defendants were all served but for whatever reason chose not to timely answer or participate in the suit. Although Defendants eventually appeared and succeeded in having the initial default set aside, their counsel subsequently withdrew and Defendants inexplicably failed to comply with the Court's order giving them a deadline by which to appear with new counsel. Defendants' [*18] conduct thus necessitated entry of a second default. There is no indication that Defendants' conduct in failing to timely appear and failing to comply with the Court's order was due to excusable neglect.

Under the seventh factor, the Court is to consider the policy favoring decisions on the merits. As general rule, "[c]ases should be decided upon their merits whenever reasonably possible." *Eitel, 782 F.2d at 1472.* While the Court certainly agrees, this general principal is not dispositive and does not outweigh the other *Eitel* factors which weigh decidedly in Klinkenborg's favor. This is so particularly because Defendants' own conduct has thus far made resolving this case on the merits impracticable.

The *Eitel* factors thus weight in favor of entering a default judgment against Defendants.

## B. Damages

Once liability has been established, the court's next task is to calculate the amount of damages to be awarded.

Although "factual allegations relating to liability are taken as true upon entry of default, allegations as to amount of damages are not automatically accepted." *Trinidade v. Reach Media Group, LLC, 2014 U.S. Dist. LEXIS 98180, 2014 WL 3572132 *5 (N.D. Cal. July 18, 2014). See also Pope v. U.S., 323 U.S. 1, 12, 65 S. Ct. 16, 89 L. Ed. 3, 1944 U.S. LEXIS 1208, 102 Ct. Cl. 846, 12 (1944).* The Ninth Circuit has made clear that "a default judgment for money may not be entered without a hearing unless [*19] the amount claimed is a liquidated sum or capable of mathematical calculation." *Trinidade, 2014 U.S. Dist. LEXIS 98180, 2014 WL 3572132 *5* (citation omitted). "When the damages claimed are not readily ascertainable from the pleadings and the record, the court may hold a hearing to value damages." *Trinidade, 2014 U.S. Dist. LEXIS 98180, 2014 WL 3572132 *5.*

On June 12, 2014, the Court held a hearing to address, among other things, the issue of damages. Klinkenborg categorizes the damages it seeks as follows: (1) breach of contract direct damages in the amount of $287,033.90; (2) breach of contract consequential damages in the amount of $216,006.00; (3) breach of contract incidental damages in the amount of $123,220.13; (4) breach of warranty damages in the amount of $11,746.50; (5) attorneys fees in the amount of $132,071.83, and; (6) punitive damages in the amount of $7,700,786.90.

Brian Berst ("Berst"), who is Klinkenborg's operations manager and one of its pilots, testified at the hearing and presented documentary evidence concerning the amount of Klinkenborg's damages. Klinkenborg relies on Berst's testimony and the other evidence introduced at the hearing as the evidentiary basis for the damages sought.

Two types of contract damages are available under Montana law —

*Montana Code Annotated § 27-1-311* describes the damages available [*20] for breach of contract as follows:

> For the breach of an obligation arising from contract, the measure of damages, except when otherwise expressly provided by this code, is the amount which will compensate the party aggrieved for all the detriment which was proximately caused thereby or in the ordinary course of things would be likely to result therefrom. Damages which are not clearly ascertainable in both their nature and origin cannot be recovered for a breach of contract.

Case 9:22-bk-10592-RC    Doc 41    Filed 10/31/22    Entered 10/31/22 14:17:22    Desc
Main Document    Page 35 of 51

Page 7 of 15
2014 U.S. Dist. LEXIS 198856, *20

The Montana Supreme Court has interpreted this statute as permitting "recovery of two types of damages: proximate and consequential." *Montana Petroleum Tank Release Compensation Board v. Crumleys, Inc., 2008 MT 2, 341 Mont. 33, 174 P.3d 948, 960 (Mont. 2008).* Proximate damages "represent the direct and natural result of the contract breach."[3] *McEwen v. MCR, LLC, 2012 MT 319, 368 Mont. 38, 291 P.3d 1253, 1265 (Mont. 2012).* "Consequential damages are those damages 'within the contemplation of the parties when they entered into the contract, and such as might naturally be expected to result from its violation.'" *State Farm Mut. Auto. Ins. v. Freyer, 2013 MT 301, 372 Mont. 191, 312 P.3d 403, 412 (Mont. 2013)* (quoting *Mont. Petroleum Tank Release Comp. Bd. v. Crumleys, 2008 MT 2, 341 Mont. 33, 174 P.3d 948, (Mont. 2008)).*

Lost profits are recoverable in a breach of contract action "only if the loss is proven with a reasonable degree of certainty." *Riverview Homes II, Ltd. v. Canton, 2001 MT 309, 307 Mont. 517, 38 P.3d 848, 854 (Mont. 2001).* Under this standard, "[l]ost profits may be awarded if the loss is shown to be the 'natural and direct result of the act of the defendant' and if the loss is not speculative." [*21] *Riverview Homes, 38 P.3d at 854.*

Where, as here, a contract is for the purchase and sale of "goods" as defined by *Mont. Code Ann. § 30-2-105(1),* "the buyer may recover as damages for any nonconformity of tender the loss resulting in the ordinary course of events from the seller's breach as determined in any manner which is reasonable." *Mont. Code Ann. § 30-2-714(1).* In such a case, "[t]he measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted...." *Mont. Code Ann. § 30-2-714(2).*

Consequential and incidental damages may also be available. *Mont. Code Ann. § 30-2-714(3).* Consequential damages include "any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise." *Mont. Code Ann. § 30-2-715(2)(a).* Incidental damages "include expenses reasonably incurred in inspection, receipt, transportation and care and custody of goods rightfully rejected, any commercially reasonable charges, expenses or commissions in connection with effecting cover and any other reasonable expenses incident to the delay or other breach." *Mont. Code Ann. §30-2-715(1).*

## 1. Contract Damages

### a. Direct Damages

Klinkenborg claims it had to spend $287,033.90 [*22] to bring the two helicopters it purchased into the condition promised, and seeks that amount in direct damages under *Mont. Code Ann. § 30-2-714(2).* Berst testified that Klinkenborg had to do engine work on both aircraft, repair and replace several parts, including the main rotor blades, and buy additional parts that were supposed to come with the aircraft. Klinkenborg has presented an itemized list of its direct damages, consisting of 17 entries totaling $287,033.90 in actual costs, along with 16 supporting exhibits. (Doc. 78-1, at 3-4, 10-72).

At the hearing, Klinkenborg agreed that the first item on the list — $35,134.00 for the purchase of a spray system — was not covered by the contract and so withdrew that particular request. (Doc. 104, at 28). Defendants did not challenge Klinkenborg's right to recover many of the remaining items as direct damages, namely, numbers 2, 6-7, 9, 13, and 16. Those uncontested items total $23,585.19 in direct damages. (Doc. 78-1, at 3-4).

Defendants did, however, contest Klinkenborg's right to recover certain expenses on the ground that they were beyond the scope of the contracts. Klinkenborg presented evidence establishing that it paid a total of $10,500.00 to install a Simplex [*23] wiring system on the two helicopters and $2,400.00 for a starter generator, set of generator brushes and a 100 hour kit. (Doc. 78-1, at 3 and 16-21). Fred Hodgdon ("Hodgdon"), the vice president and half owner of Defendant Select Aviation Services, testified for Defendants at the hearing and explained that Klinkenborg was charged for that work because it "was above and beyond what was called for in the contract." (Doc. 104, at 126).

The aircraft purchase agreements for the two helicopters are substantively identical, and specify that the aircraft were to "be refurbished from military surplus condition to the civilian standard" and were to have several features, options, and accessories, including a "RDC Cargo Hook Provisions Kit to accommodate attachment of Simplex spray tank and system." (Doc. 78-1, at 99-100). The contracts also stated that

---

[3] Because Klinkenborg refers to this category of damages as "direct damages," the Court will do so also.

Defendant Rotorcraft Development Corporation would "install customer-supplied Sat-Loc system and fit customer-supplied Simplex Spray System at delivery." (Doc. 78-1, at 100).

Klinkenborg argues that Defendants' promise to fit the Simplex Spray System at delivery encompassed installation of the Simplex wiring because Hodgdon agreed that the Simplex [*24] Spray System would not work if it was not wired. (Doc. 104, at 152). While that may be, the fact remains that the contracts promised only to "fit" the Simplex Spray System and say nothing about "installing" the system. Hodgdon testified that those are two different things, and that "fitting" meant doing "the structural work that was necessary to install the tank on the aircraft. (Doc. 104, at 152). Hodgon also testified that Defendants "fit" the system as promised and did not charge Klinkenborg for the work, as reflected in the two work invoices. (Doc. 78-1, at 17-19). Because the record thus reflects that the contract did not require Defendants to install the Simplex wiring system, Klinkenborg has not established that is entitled to recover the $10,500.00 it paid to have that work done, and the $2,400.00 it paid for related parts as direct damages and the amount of the default judgment it requests should be reduced accordingly.

Klinkenborg also seeks to recover $46,493.80 it spent to fix damage to one helicopter's engine due to "oil overheating" and $49,958.86 for engine repair on the second helicopter "due to metal chips chipping off gears." (Doc. 78-1, at 4; Doc. 104, at 85-86). [*25] Although Klinkenborg included these two items in its itemized list of direct damages, it claims they could also be classified as warranty damages.

According to Defendants, however, the engine itself is excepted from warranty under the following contractual provision:

> 6. The aircraft is being sold and delivered with the following warranties:
> * All installed components will be guaranteed against defects in workmanship or suitability for service, excluding damage caused by negligence or misuse by the Purchaser for a period of 600 operating hours, or one year, whichever comes first.
> * Installation of the components modifications listed in Appendix A will be guaranteed for a period of one year of installation workmanship only. The Seller assumes no liability for the components or modifications themselves...

(Doc. 78-1, at 96; Doc. 101-3, at 2).

Berst agreed that the expenses Klinkenborg incurred were because of problems with the helicopter engines themselves, and not as a result of Defendants' installation workmanship. (Doc. 104, at 85). Defendants thus argue they cannot be held liable for those expenses because the contract specifies that they assumed "no liability for the components" themselves. [*26] The Court agrees. Defendants warranted that installed components like the engines would be free from defects in workmanship and so suitable for service, but expressly stated that Defendants assumed no liability for the components themselves. Because Berst agreed the problems at issue were with the helicopter engines themselves rather than faulty installation workmanship, and Klinkenborg has not presented any evidence to the contrary, these two items are not recoverable and Klinkenborg's direct damages should be reduced by an additional $96,452.66.

The final item of contention on Klinkenborg's list of direct damages is the $105,230.00 it spent for replacement main rotor blades on one of the helicopters, referred to by the parties as "the 992YC".[4] (Doc. 104, at 51). Defendants warranted that the helicopter's main rotor blades would "have minimum of 1200 Hrs remaining with High Visibility Paint Scheme." (Doc. 78-1, at 100). Berst testified that Klinkenborg's mechanic grounded the 992YC after noticing what looked like corrosion on one of the blades. (Doc. 104, at 51-52). Klinkenborg sent the main rotor blades to a company in Arkansas for inspection. (Doc. 104, at 52). The Arkansas company [*27] found that one of the blades was repairable, but rejected the other blade and found it unrepairable "due to internal corrosion." (Doc. 101-2). The inspection report noted that the blade had been "refinished without addressing corrosion-repair by dressing out corrosion." (Doc. 101-2). In other words, Berst testified, someone had likely painted over the top of the corrosion. (Doc. 104, at 55). Although Defendants had promised to deliver a helicopter with blades that could fly for a minimum of 1200 hours, Klinkenborg had flown the 992YC for only 87.3 hours by the time it was grounded. (Doc. 104, at 65).

Because one of the blades could not be repaired,

---

[4] Although it was not entirely clear from the testimony at the hearing which of the two helicopters, required these replacement blades (compare Doc. 104, at 51-53 & 119 with Doc. 104, at 88), a report prepared by one of Klinkenborg's expert witnesses makes clear that the blades were purchased for the 992YC helicopter. (Doc. 78-1, at 156).

Klinkenborg had to buy a replacement pair to keep the helicopter flying. Even though one blade was repairable, Berst explained that Klinkenborg had to buy two replacement blades because "it's very important that the blades track together and are true, work together, and [are] matching blades." (Doc. 104, at 88). Klinkenborg spent $105,230 for a replacement pair of blades with 3095 hour hours remaining on each blade. (Doc. 78-1, at 27). As Defendants point out, the contract had promised a pair of blades with 1200 hours of flying time remaining [*28] in each of them, for a total of 2400 hours. But the replacement blades Klinkenborg purchased had far more flying time remaining in them - 3095 hours in each blade, for a total of 6,190 hours.

Defendants argue Klinkenborg is not entitled to the full $105,230.00 it paid for the replacement blades, and should only be able recover the value of what it was promised under the contract but did not receive. Klinkenborg was promised blades with 1200 hours of flight time left on each of them, for a total of 2400 hours. But the 992YC's blades did not last for 1200 hours each as warranted and failed after only 87.3 hours of flight time each. This means that Klinkenborg did not receive the value of the remaining 1,112.7 hours of flight time that should have been left on each blade.

Defendants do not appear to dispute that a price of $17.00 per hour per blade on the remaining life of the blades is reasonable for purposes of calculating damages. (Doc. 104, at 91-92). Defendants promised Klinkenborg blades with 1200 hours of flight time left on each of them. At $17.00 per hour per blade, the promised blades were thus worth $20,400 each, for a total of $40,800. Because the blades failed after only 87.3 [*29] hours, however, Klinkenborg did not receive the full value of what it was promised. At $17.00 per hour per blade, and with 87.3 hours of flight time, each blade Klinkenborg received was worth $1,484.10 per blade, for a total of $2,968.2. In other words, Klinkenborg was promised blades worth $40,800 but received blades worth only $2,968.20. Klinkenborg is entitled to recover the difference between what it was promised and what was delivered — $37,831.80.

To the extent Defendants suggest Klinkenborg's recovery should be reduced further because the one blade that was repairable still had some value, the Court disagrees. Hodgdon testified that the repairable blade was worth $18,915.90 — a number he reached by subtracting the 87.3 hours of actual flying time from the 1200 hours of promised flying time, and multiplying that amount by $17.00. (Doc. 104, at 123-24). As noted above, however, Berst testified that helicopter blades must be purchased in pairs to ensure that the blades track together and work properly. The Court finds Berst's testimony credible, which means that the single, repairable blade Klinkenborg was left with would not have been worth $18,915.90. The Court rejects Hodgdon's [*30] testimony, and finds that Klinkenborg is entitled to $37,831.80 in damages for the cost of replacing the helicopter's blades. This means that the $105,230.00 requested by Klinkenborg must be reduced by $67,398.20.

For the first time in their post-hearing default judgment brief, Defendants argue that Klinkenborg should not be able to recover for items 11 and 12 on its list of direct damages because those "rotor blades...are not warranty items because they are not included in the contract under Appendix A." (Doc. 106, at 15). Hodgdon did not challenge these items during his testimony and Defendants do not elaborate on this argument or explain why these costs, which were apparently associated with inspecting and repairing the rotor blades on the 993 YC helicopter, would not be covered by the same warranty language that applied to the rotor blades on the 992YC helicopter. (Doc. 78-1 at 4). The Court finds that Klinkenborg is entitled to recover the amounts set forth in items 11 and 12.

Taking all of the above into account, Klinkenborg is entitled to a total of $71,559.04 in direct damages. This amount represents sum total of the $37,831.80 for the replacement blades on the 992YC, and items [*31] 2, 6-7, 9, 11-13, and 16. (Doc. 78-1)

b. Consequential Damages

Klinkenborg is seeking $216,006.00 in consequential damages for breach of contract and breach of warranty. Defendants were contractually obligated to deliver the first helicopter to Klinkenborg by May 1, 2012, and deliver the second one by May 31, 2012. (Doc. 78-1, at 2; Doc. 101-3, at 2). As it turns out, however, Defendants did not deliver the first helicopter until June 13, 2012. They delivered the second helicopter's airframe on August 22, 2012, but did not deliver the engine until after January 29, 2013 — more than a month after this lawsuit had begun. (Doc. 104, at 29-30).

Klinkenborg had anticipated receiving the helicopters as promised, in time for use during the 2012 spraying season. Due to the late delivery and subsequent mechanical problems, however, Klinkenborg claims it lost contracts, had higher expenses, and was forced to complete other jobs with inferior aircraft, all resulting in

2014 U.S. Dist. LEXIS 198856, *31

reduced revenue. In particular, Klinkenborg asks for the following consequential damages: (1) $33,528.00 in profits lost on a contract with Weston County Weed and Pest because Klinkenborg had to hire an independent contractor to perform [*32] the job; (2) $36,075.00 in profits lost because the helicopters were grounded and it lost a contract opportunity with Oligrow Flying Service; (3) $38,400.00 in profits lost because it could not use the helicopters to perform a recurring annual contract with Crop Production Services, and (4) $108,003.00 in revenue lost because of other lost contracts. (Doc. 78-1, at 5).

These damages are properly categorized as special or consequential damages. Under Montana law,[5] consequential damages for breach of contract are "those damages 'within the contemplation of the parties when they entered into the contract, and such as might naturally be expected to result from its violation.'" *Freyer*, 312 P.3d at 412 (*quoting Mont. Petroleum Tank Release Comp. Bd., 174 P.3d at 960-61*). Consequential damages for breach of warranty are statutorily defined to include "any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reasons to know and which could not reasonably be prevented by cover or otherwise." *Mont. Code Ann. § 30-2-715(2)(a)*. It would have been within the contemplation of the parties when they entered into the contract that Klinkenborg would lose profits and business opportunities if Defendants breached the contracts by failing to timely deliver [*33] the helicopters in the condition promised. While lost profits may be recovered as direct damages when profits are the object of and inducement to the contract, *Green v. Wolff, 140 Mont. 413, 372 P.2d 427, 431 (Mont. 1967)*, that is not the case here. The lost profits at issue here are, as Klinkenborg itself has categorized them, consequential damages.

With that said, Defendants argue Klinkenborg should be precluded from recovering special or consequential damages, because it did not plead them with specificity as required by *Federal Rule of Civil Procedure 9(g)*. *Rule 9(g)* states that "[i]f an item of special damage is claimed, it must be specifically stated." Defendants contend that Klinkenborg's complaint does not satisfy this heightened pleading standard because it does not

identify the specific contracts Klinkenborg claims to have lost and fails to itemize the lost profits alleged.

The Court finds that Klinkenborg's complaint is adequate under the circumstances, albeit barely, to satisfy *Rule 9(g)*'s heightened pleading standard with respect to the Weston Weed, Oligrow Flying Service, and Crop Production Services contracts. Klinkenborg had been expecting to receive the first helicopter on May 1, 2012, and was going to use that helicopter to perform the Weston Weed contract later that month. But [*34] because Defendants did not deliver the aircraft on time, Klinkenborg was forced to hire an independent contractor to do the work. When Klinkenborg filed its complaint in this case in December 2012, it referred to the Weston Weed contract and claimed to have suffered damages as a result of having to hire an independent contractor. In particular, Klinkenborg alleged that "[a]s a result of the late delivery, [it] was forced to scramble for an independent contractor to cover a contract for spraying in Wyoming. The contractor cost Klinkenborg more money than if they had been able to do the work themselves with the 993 YC helicopter that was supposed to have been delivered." (Doc. 1, ¶ 20). This was sufficient to put Defendants on notice that Klinkenborg was seeking special damages relating to this particular contract, thereby satisfying the purpose of *Rule 9(g)*'s specificity requirement. Berst's testimony and the spreadsheet he prepared establish with sufficient certainty that Klinkenborg lost profits amounting to $33,528.00 as a result of having to hire an independent contractor to perform the Weston County Weed contract.

Although Klinkenborg does not specifically mention the Crop Production Services [*35] and Oligrow contracts in the complaint, it alleges it suffered additional "business losses including but not limited to lost contracts, higher expenses, and reduced revenue." (Doc. 1, ¶ 32). Klinkenborg also claims more specifically that it "was forced to use inferior helicopters and independent contractors which cost it more money to perform its contracted for work than if it had received the 992YC helicopter on the contracted date." (Doc. 1, ¶ 33). That Klinkenborg did not specifically mention the Oligrow contract in its December 2012 complaint is not surprising, because it was not until February 2013 that Klinkenborg was forced to turn down the contract because the helicopters were grounded. (Doc 78-1, at 77). Defendants reasonably should have known that if they breached the contract and did not timely deliver the helicopters in the condition promised that Klinkenborg would lose profits and business opportunities.

---

[5] Because this is a diversity case, the substantive law of Montana applies. *See Medical Laboratory Mgmt. Consultants v. American Broadcasting Companies, Inc., 306 F.3d 806, 812 (9th Cir. 2002)*.

Under the circumstances, the Court finds that Klinkenborg adequately alleged special damages in the form of lost contracts, higher expenses, and reduced revenue arising out of the loss of the Oligrow and Crop Production Services contracts. Berst's testimony and Klinkenborg's [*36] supporting exhibits establish with sufficient certainty that Klinkenborg suffered $36,075.00 in lost profits on the Oligrow contract, and $38,400.00 in lost profits on the Crop Production Services contract.

To the extent Klinkenborg asks for special damages in the amount of $108,003.00 for other lost contracts, however, its request is speculative and lacking in adequate evidentiary support. Klinkenborg has not presented any documentation of additional lost contracts, and relies solely on Berst's testimony at the hearing. Berst testified that he arrived at $108,003.00 by estimating the value of the work Klinkenborg could have done, had the helicopters been timely delivered in the condition promised. (Doc. 104, at 38). Berst explained it as follows: "[W]e typically get calls every month for work. But if you average out through the year, I stayed on the conservative side of saying we're only going to work half the year. And that's where I came up with my estimate saying that, you know, if we had a slow year. And by slowest year, we're only going to be working half a year maybe. That's the slowest. So that's the numbers how I came up with that." (Doc. 104, at 38). Using that method, Berst estimated [*37] that Klinkenborg had lost $108,003.00 on work it did not solicit but could have performed, had Defendants not breached the contracts. The Court finds that Berst's testimony is both speculative and lacking a sufficient evidentiary basis to support an award of $108,003.00 in consequential damages for other lost contracts.

As set forth above, however, Klinkenborg is entitled to recover consequential damages in the amount of $33,528.00 on the Weston Weed contract, $36,075.00 on the Oligrow Flying Service contract, and $38,400.00 on the Crop Production Services contract — for a total of $108,003.00.

c. Incidental Damages

Klinkenborg has requested $123,220.13 in incidental damages, itemized as follows: (1) $62,100 in lost profits and wages suffered as a result of Klinkenborg's employees traveling to Montana to procure delivery or assist in tasks that Defendants were contractually obligated to perform; (2) $19,284.70 for Berst's travel expenses; (3) $912 for Berst's travel expenses; (4) $610.93 for car rental; (5) $3,720 for delivery of a cover aircraft; (6) $36,592.50 for the cost of a loaner engine

during repair of the 992 YC engine.

Defendants do not challenge the evidentiary basis of Klinkenborg's [*38] incidental damages. As they did with the consequential damages discussed above, Defendants argue Klinkenborg should be precluded from recovering incidental damages because it did not plead them with specificity as required by *Rule 9(g)*.

Incidental damages for breach of warranty are statutorily defined to "include expenses reasonably incurred in inspection, receipt, transportation and care and custody of goods rightfully rejected, any commercially reasonable charges, expenses or commissions in connection with effecting cover and any other reasonable expenses incident to the delay or other breach." *Mont. Code Ann. § 30-2-715(1)*. The incidental damages delineated above all fall within the scope of this definition.

The complaint alleges that Klinkenborg "incurred substantial expenses in traveling in an effort to inspect and facilitate delivery of the 993 YC and 992YC helicopters, the 992YC engine, and other outstanding parts." (Doc. 1, ¶35). Klinkenborg's breach of contract claims specifically allege damages in the form of expenses incurred "to travel and inspect the aircraft in an effort to have [them] delivered." (Doc. 1, ¶¶ 63, 68). These allegations were sufficient to put Defendants on notice that Klinkenborg was seeking [*39] the incidental damages that are the subject of its current motion for default judgment, thereby satisfying the purpose of *Rule 9(g)*'s specificity requirement. Klinkenborg is thus entitled to $123,220.13 in incidental damages.

**2. Warranty Damages**

Klinkenborg is requesting $11,746.50 in breach of warranty damages for repair work it paid to have done on the helicopters. Defendants do not challenge the evidentiary basis for these damages, but argue Klinkenborg cannot recover breach of warranty damages at all because it did not plead that it gave Defendants reasonable notice of its warranty claims.

Under Montana law, if tender has been accepted "the buyer must within a reasonable time after the buyer discovers or should have discovered any breach notify the seller of the breach or be barred from any remedy." *Mont. Code Ann. § 30-2-607(3)(a)*. As a matter of state substantive law, and if a default judgment on liability was not appropriate, Klinkenborg would have to

establish that it notified Defendants of the breach in order to prevail on its breach of warranty claims.

But the issue here is a procedural one, namely, whether Klinkenborg adequately pled its breach of warranty claims pursuant to *Rule 9(c)*, which states that "in pleading conditions [*40] precedent, it suffices to allege generally that all conditions precedent have occurred or been performed." *Fed. R. Civ. P. 9(c)*. Klinkenborg alleges in its breach of warranty claim that Defendants made several express and implied warranties about the specifications of the helicopters, that the helicopters did not conform to those warranties, and that Klinkenborg suffered damages as a result. (Doc. 1, ¶¶ 86-88). This is sufficient meet the general pleading requirements of *Rule 9(c)*. Klinkenborg is entitled to $11,746.50 in breach of warranty damages.

### 3. Punitive Damages

Klinkenborg is asking for $7,700,786.90 in punitive damages. Klinkenborg alleges that Defendants acted with actual malice by deliberately delivering the helicopters weeks after the contracted delivery dates, and without critical parts. (Doc. 1, ¶ 114). Klinkenborg also claims that Defendants acted with actual fraud by (1) representing that they would deliver the helicopters in a fully completed condition on specific dates, knowing that those representations were false; (2) inducing Klinkenborg to sign an amended agreement under duress and with the intention of extorting additional uncontracted for consideration, and; (3) concealing material facts [*41] regarding the status of the work being done on the helicopters, the location of the helicopters, and foreseeable conditions that would delay deliver of the helicopters. (Doc. 1, ¶ 115).

As a general rule, punitive damages are not available for breach of contract claims. *Textana, Inc. v. Klabzuba Oil & Gas, 2009 MT 401, 353 Mont. 442, 222 P.3d 580, 590 (Mont. 2009)* (citing *Mont. Code Ann. § 27-1-221*). But punitive damages are recoverable "where the claimant 'proves by clear and convincing evidence that the defendant is guilty of actual fraud or actual malice outside the contract context.'" *Textana, Inc. v. Klabzuba Oil & Gas, 222 P.3d at 590*. Punitive damages may also be available "for traditional contract related torts such as fraud." *Textana, 222 P.3d at 590*.

While Klinkenborg cannot recover punitive damages for breach of contract, it has also pled claims for fraud and conversion — both of which may provide a basis for

punitive damages. A fraud claim has nine essential elements: (1) a representation; (2) the falsity of that representation; (3) the materiality of the representation; (4) the speaker's knowledge of the representation's falsity or ignorance of its truth; (5) the speaker's intent that the representation should be acted upon by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of the representation's falsity; (7) the hearer's reliance [*42] upon the truth of the representation; (8) the hearer's right to rely upon the representation; and (9) the hearer's consequent and proximate injury or damages caused by their reliance on the representation. *Morrow v. Bank of America, N.A., 2014 MT 117, 375 Mont. 38, 324 P.3d 1167, 1182 (Mont. 2014)*.

Klinkenborg's fraud claim alleges that Defendants made several representations regarding the condition and price of the helicopters and their anticipated delivery dates, knowing or having reason to know that those representations were false. (Doc. 1, ¶¶ 47-50; 99). Klinkenborg claims it did not know the Defendants' representations were false, and that it relied on those false representations to its detriment. (Doc. 1, ¶¶ 100-102).

At the hearing, Defendants moved for a judgment on partial findings under *Fed. R. Civ. P. 53(d)*, on the ground that Klinkenborg failed to allege one of the elements necessary to state a claim for fraud, namely, that it had a "right to rely" on Defendants' representations. (Doc. 104, at 112).

*Fed. R. Civ. P. 9(b)* requires that a party alleging fraud "state with particularity the circumstances constituting the fraud..." As put by the Ninth Circuit, "*Rule 9(b)* demands that the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct...so that they [*43] can defend against the charge and not just deny that they have done anything wrong." *Reams v. Ford Motor co., 567 F.3d 1120, 1124 (9th Cir. 2009)*. Klinkenborg's pleading certainly meets this standard.

But the court must also look to Montana law for purposes of determining whether Klinkenborg has pled the elements of fraud sufficiently to state a cause of action. *See Vess v. Ciba-Geigy Corp., 317 F.3d 1097, 1103 (9th Cir. 2003)*. *Rule 9(b)* of the Montana Rules of Civil Procedure states that "[i]n all averments of fraud or mistake the circumstances constituting fraud or mistake shall be stated with particularity."

*Rule 9(b)* must be read in conjunction with *Rule 8(a)*, however, which simply requires "a short and plain statement of claim for relief." *Fraunhofer v. Price, 182 Mont. 7, 594 P.2d 324, 328 (Mont. 1979)*. "The most basic consideration in making a judgment as to the sufficiency of a pleading [under *Rule 9(b)*] is the determination of how much detail is necessary to give adequate notice to an adverse party and enable him to prepare a responsive pleading." *Fraunhofer, 594 P.2d at 329* (*citing* Wright & Miller, Federal Practice and Procedure: Civil 1298, p. 406-07, 410, 415). To accomplish this, a plaintiff must allege, with particularity, facts to support the nine elements of fraud. *C. Haydon Ltd. v. Montana Min. Properties, Inc., 262 Mont. 321, 864 P.2d 1253, 1256 (Mont. 1993)*.

Klinkenborg's fraud claim is sufficiently detailed to satisfy this heightened pleading standard. Although Klinkenborg did not [*44] use the phrase "right to rely," it alleged facts putting Defendants on notice that it was claiming a right to rely on the terms of their agreement and the Defendants' various representations. Defendants do not argue that Klinkenborg failed to adequately plead any of the eight remaining elements of its fraud claim. While Klinkenborg has thus pled its fraud claim with sufficient particularity, its request for punitive damages stemming from that fraud claim is problematic for another reason — Klinkenborg's complaint does not allege conduct justifying an award of punitive damages.

At the hearing on damages, Klinkenborg introduced evidence suggesting that Defendants may have knowingly concealed and painted over corrosion in the 992YC helicopter's main rotor blades, thereby putting the safety of Klinkenborg's employees and the general public at risk. The Arkansas company that inspected the 992YC's blades after it had seen only 87.3 hours of flight time with Klinkenborg concluded that the unrepairable blade had been "refinished without addressing corrosion-repair by dressing out corrosion." (Doc. 101-2). In other words, Berst testified, Defendants had simply painted over the corrosion, making [*45] it more difficult to detect. (Doc. 104, at 55). Berst explained that corrosion like that found on the 992's blades "reduces the integrity" of the blades and "can cause catastrophic failure." (Doc. 104, at 58).

The Court agrees that if Defendants fraudulently concealed the condition of the 992YC's blades, that conduct would provide a basis for awarding punitive damages. The problem for Klinkenborg is that its complaint does not allege that Defendants fraudulently concealed the condition of the blades, and so does not

allege this conduct as a basis for awarding punitive damages. While the Court must take the allegations in the complaint as true for purposes of entering default judgment, the default judgment may not "differ in kind from, or exceed in amount, what is demanded in the pleadings." *Fed. R.Civ. P. 54(c)*.

The theory behind *Rule 54(c)* "is that the defending party should be able to decide on the basis of the relief requested in the original pleading whether to expend the time, effort, and money necessary to defend the action." 10 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2663 (3d ed. 1998). This means that a default judgment is limited to the facts and causes of action that have been [*46] pled. *See e.g. Compton v. Alton Steamship Co., Inc., 608 F.2d 96, 1-4-05 (4th Cir. 1979)*; *Ioane v. Alter, 1997 U.S. Dist. LEXIS 24420, 1997 WL 767526, *3 (N.D. Cal. Nov. 21, 1997)* ("Any default judgment is limited to the claims asserted and the relief demanded in the pleadings served on the defendants."). A default judgment that goes "beyond the scope of the complaint" is a "nullity." *Pueblo Trading Co. v. El Camino Irrigation Distr., 169 F.2d 312, 313 (9th Cir. 1948)*.

As pled, Klinkenborg's fraud and punitive damages claims are directly related to its breach of contract claim and are based on the same wrongful conduct. As pointed out above, punitive damages are not recoverable for breach of contract. Klinkenborg's fraud claim alleges that Defendants made the following misrepresentations: (1) that the 993YC helicopter would be delivered on May 1, 2012; (2) that the 992YC helicopter would be delivered on May 31, 2012; (3) that the 992YC helicopter wold be delivered on September 11, 2012; (4) oral promises of delivery, inspection, and assurance of completion, delivery, and location of the helicopter or its parts; (5) that the purchase price listed in the contract was the full price that would be asked for completion and deliver of the helicopters; and (6) other representations and omissions that may become known. (Doc. 1, ¶47). Klinkenborg also alleges that Gary Fox, individually, represented that he would reimburse [*47] Klinkenborg for certain expenses that should have been covered by Defendant Rotorcraft and promised to pay for some of Klinkenborg's monetary losses with components or parts. (Doc. 1, ¶¶ 49-50).

Klinkenborg's fraud claim provided the basis for its punitive damages claim, wherein it alleges that Defendants acted with actual malice by deliberately: (1) delivering the 993 YC helicopter weeks after its contracted for delivery date without critical parts that it

was supposed to receive under the contract; (2) delivering the 992YC without an engine and other critical parts that it was supposed to receive under the contract; (c) withholding delivery of the 992YC engine and other critical helicopter parts ... knowing that failing to deliver would cause injury to Klinkenborg. (Doc. 1, ¶ 114). Klinkenborg additionally alleges that Defendants acted with actual fraud by: (1) representing to Klinkenborg that they would deliver the contracted for helicopters in a fully completed condition by specific dates or within certain time frames, knowing that the representations were false; (2) by fraudulently inducing Klinkenborg to sign an amended agreement under duress and with the intention of extorting [*48] additional uncontracted for consideration from Klinkenborg, who Defendants knew was in desperate need to receive its helicopter immediately; and (3) concealing material facts including but not limited to: the status of construction or overhaul of the aircrafts, the location of the aircraft, substantial foreseeable conditions that would delay delivery with the purpose of depriving Klinkenborg of property or legal rights or otherwise causing injury.

Noticeably missing from this long list of alleged wrongdoing is any mention of the helicopters' blades or any allegation that Defendants fraudulently concealed the condition of the blades by painting over corrosion. While Klinkenborg's fraud claim contains a catchall reference to "other representations and omissions that may become known," such vague language was not enough to put Defendants on notice that Klinkenborg was alleging they fraudulently concealed the condition of the helicopters' blades as a basis for punitive damages.[6]

One obvious explanation for this omission is that Klinkenborg did not yet have reason to believe that Defendants had concealed the condition of the helicopter blades when it filed its complaint in December 2012. Klinkenborg [*49] did not even receive the engine for the 992YC helicopter until January 29, 2013, and did not receive the Arkansas company's inspection indicating someone had "previously refinished" one of the blades "without addressing corrosion" until March 2013. (Doc. 101-2).

Klinkenborg was free to seek leave to amend its

complaint prior to seeking the entry of default for the purpose of elaborating upon its punitive damages claim. It did not do so, choosing instead to pursue a default judgment. While that is certainly Klinkenborg's prerogative, it means that "[a]ny default judgment is limited to the claims asserted and relief demanded in the pleadings served on the defendants." *Ioane, 1997 U.S. Dist. LEXIS 24420, 1197 WL 767526, *3. See e.g., Ioane, 1997 U.S. Dist. LEXIS 24420, 1997 WL 767526 *3* ("A plaintiff may seek leave to amend the pleadings to change the nature of the claims or relief sought, but any amendment nullifies the default and must be served on defendants.") Indeed, Klinkenborg has the option even at this juncture to stipulate to setting aside the default and to pursue its claims - including punitive damages - on the merits.

Kinkenborg's breach of contract, fraud, and punitive damages claims all stem from the same conduct. While Defendants cannot escape punitive damages simply because the same [*50] conduct is also a breach of contract, the conduct that has been alleged in the complaint simply does not justify an award of punitive damages. Because default judgment may not exceed the scope of the claims alleged in the Complaint, Klinkenborg is not entitled to punitive damages.

## 4. Attorneys Fees

Klinkenborg is seeking $135,425.49 in attorneys fees and costs as part of it request for default judgment. Each of the purchase agreements for the helicopters provides that "the prevailing party in any legal action to enforce this contract shall be entitled to an award of its legal costs and reasonable attorney's fees." (Doc. 78-1, at 3; Doc. 101-3, at 3). Klinkenborg included a request for attorney fees in its complaint. (Doc. 1, at 30).

Klinkenborg has submitted a supporting affidavit from its counsel, G. Trenton Hooper. Hooper states that as of March 27, 2014, his law firm had billed a total of $132,973.68 in attorneys fees and costs in pursuing this action. (Doc. 78-1, at 165). Hooper also explains that Klinkenborg incurred additional fees "though a firm in Iowa in the beginning of the case when the defendants refused to deliver the engine of the second helicopter." (Doc. 78-1, 167). Those [*51] fees amounted to $3,353.66. (Doc. 78-1, at 9).

The Court finds that Klinkenborg has adequately supported its request for attorneys fees and costs and that the amount sought is reasonable under the circumstances. Klinkenborg is thus entitled to a

---

[6] The same can be said of Klinkenborg's conversion claim, which simply alleges that Defendants wrongfully possessed the 992YC's helicopter engine and numerous parts to both helicopters. (Doc. 1, ¶¶ 93-96).

reasonable award of attorney fees and costs in the requested amount of $135,425.49.

## III. Conclusion

For the reasons set forth above,

IT IS RECOMMENDED that Defendants' motion to set aside the entry of default be DENIED, and Plaintiff's motion to dismiss Select Turbine be GRANTED.

IT IS FURTHER RECOMMENDED Plaintiff's motion for entry of default judgment be GRANTED. Default judgment should be entered in the total amount of $449,954.16, which represents the following: (1) $71,559.04 in direct contract damages; (2) $108,003.00 in consequential contract damages; (3) $123,220.13 in incidental damages; (4) $11,746.50 in warranty damages, and; (5) $135,425.49 in attorney's fees.

DATED this 18th day of August, 2014

/s/ Jeremiah C. Lynch

Jeremiah C. Lynch

United States Magistrate Judge

End of Document

# EXHIBIT E

⬥ Positive
As of: October 29, 2022 3:28 PM Z

## *In re Hamilton*

United States Bankruptcy Court for the Southern District of California

September 26, 2018, Decided; September 26, 2018, Entered

BANKRUPTCY NO. 14-03142-CL11

**Reporter**
2018 Bankr. LEXIS 4170 *

In re: CHRISTOPHER JOHN HAMILTON & ELIZABETH
LEIGH TESOLIN, Debtors.

**Subsequent History:** Affirmed by *Hamilton v. Elite of
L.A., Inc., 2019 U.S. Dist. LEXIS 45219 (S.D. Cal., Mar.
19, 2019)*

## Core Terms

automatic stay, aty, non-debtor, indemnify

## Case Summary

### Overview

HOLDINGS: [1]-The automatic stay under *11 U.S.C.S. §
362* did not apply to a state court action filed against the
debtor's employer as an indemnifier of debtor because
the employer's assets were not estate property. The
employer was a non-debtor who was being sued on the
debts of a debtor and, as such, the stay did not apply.

### Outcome

Automatic stay not applicable to state court action at
issue.

## LexisNexis® Headnotes

Bankruptcy Law > ... > Automatic Stay > Scope of
Stay > Claims Against Debtors

Bankruptcy Law > ... > Automatic Stay > Scope of
Stay > Claims Against Estate Property

*HN1*[⬇] **Scope of Stay, Claims Against Debtors**

As a general rule, the automatic stay protects only the
debtor, property of the debtor or property of the estate. It
does not protect non-debtor parties or their property.
The automatic stay, then, does not stay actions against
guarantors, sureties, corporate affiliates, or other non-
debtor parties liable on the debts of the debtor.

Bankruptcy Law > Administrative
Powers > Automatic Stay > Scope of Stay

*HN2*[⬇] **Automatic Stay, Scope of Stay**

Bankruptcy cases do not stay actions against non-
debtors liable on the debts of the debtor.

Civil Procedure > Judgments > Enforcement &
Execution > Writs of Execution

*HN3*[⬇] **Enforcement & Execution, Writs of
Execution**

The right to payment under *Cal. Code Civ. Proc. §
708.210* is independent of the action in which the
underlying judgment was obtained.

Bankruptcy Law > Administrative
Powers > Automatic Stay > Scope of Stay

*HN4*[⬇] **Automatic Stay, Scope of Stay**

Litigation involving a non-debtor may be stayed in
limited circumstances, such as when the debtor will be
forced to indemnify the non-debtor. But debtors would
likely need to bring an adversary proceeding to request
that relief. And, although referred to as an automatic
stay extension, it would take the form of an injunction

after a hearing establishing an unusual need to protect the bankruptcy estate's administration. So, even in a situation where bankruptcy estate funds would be used to indemnify a third-party non-debtor, the automatic stay does not apply to that third-party litigation.

**Counsel:**  [*1] For Sanford R. Climan, Creditor: Pepler, DLA Piper LLP US, San Francisco CA.

For Elite of Los Angeles, Inc., San Diego Testing Services, Creditor: Gi Nam Lee, Legacy Pro Law PC, Los Angeles CA; Gi Nam Lee, Lead Attorney, Legacy Pro Law PC, Los Angeles CA; Susan C. Stevenson, San Diego CA.

For Matthew Garrett, Summa Consulting, LLC, Creditor: William A. Bramley, III, Law Offices of William a. Bramley, APC,. San Diego CA; Frank Pepler, DLA Piper LLP US, San Francisco CA.

For Jamshid Jamshidian, Trustee of the Jamshid Jamshidian Irrevocable Trust Dated 12-6-2012, Creditor: Christine Relph, Kimball, Tirey & St. John LLP, San Diego CA.

For Porsche Financial Services, Inc., Creditor: Stacey Miller, Tharpe & Howell, Sherman Oaks CA.

For Ready Made Pictures, SVI Sorrento Investments, TGG Management Company, Inc., Lori M. Todd, Creditor: Frank Pepler, DLA Piper LLP US, San Francisco CA.

For Wells Fargo Bank., N.A., Creditor: Todd S. Garan, Aldridge Pite, LLP, San Diego CA.

For Christopher Rhodes, Sharon Rhodes, Creditor: K. Todd Curry, Curry Advisors, A Prof. Law Corp., San Diego CA.

For Internal Revenue Service Insolvency Unit, Creditor: Thomas Stahl, United States Attorneys Office, San Diego CA.

For [*2] Christopher John Hamilton, Elizabeth Leigh Tesolin, Debtor: Jeffrey D. Cawdrey, Kimberly D. Howatt, Gordon & Rees LLP, San Diego CA; Paul J Leeds, Lead Attorney, Maggie Schroedter, Higgs Fletcher & Mack, LLP, San Diego CA.

For Considine & Considine, Accountant: Paul J Leeds, Maggie Schroedter, Higgs Fletcher & Mack, LLP, San Diego CA.

**Judges:** Christopher B. Latham, United States Bankruptcy Judge.

**Opinion by:** Christopher B. Latham

# Opinion

### ORDER ON ELITE OF LOS ANGELES, INC. AND SAN DIEGO TESTING SERVICES, INC.'S EMERGENCY MOTION FOR RELIEF FROM THE AUTOMATIC STAY, RS #SCS-1

IT IS HEREBY ORDERED as set forth on the continuation page(s) attached, numbered two (2) through four (4).

DATED: September 26, 2018

/s/ Christopher B. Latham

Judge, United States Bankruptcy Court

The court has considered Elite of Los Angeles, Inc.'s and San Diego Testing Services, Inc.'s (collectively, "Elite") emergency motion for stay relief and Debtors' opposition. The court **finds** that the automatic stay does **not apply** to the action against Crystal Vision Enterprises, LLC d/b/a/ Hamilton College Consulting ("HCC"). Further, it will **deny** Elite's request for stay relief to: (1) renew their August 19, 2013 judgment in the 2011 Superior Court action; [*3] (2) renew their abstract of judgment and personal property lien; and (3) allow the completion, through judgment, of their request for attorney's fees and costs in the 2011 Superior Court action on the underlying state court judgment.

### Background

In 2011, Elite sued Debtors in state court for various intentional torts arising from Mr. Hamilton's fraught departure from Elite (Case No. 37-2011-00101324-CU-BT-CTL). That court entered judgment against Debtors and awarded $2,070,000 in damages against Mr. Hamilton (the "Judgment"). He is now the President and Head of Faculty and Curriculum for HCC, a competitor of Elite. *In re Hamilton, B.A.P. No. SC-17-1273-LSKu, 2018 Bankr. LEXIS 2269, at *5 (B.A.P. 9th Cir. July 21, 2018).* He has no ownership interest in HCC. *Id.* HCC's employment agreement with Mr. Hamilton provides,

> The Company shall defend and indemnify [Mr. Hamilton], to the fullest extent permitted by law, from and against any and all liability, loss, damages or expenses incurred as a result of, arising out of, or in any way related to, [Mr. Hamilton's] service as an employee, officer, director or agent of the Company . . . .

(ECF No. 700-2, p. 107). Further, HCC's operating agreement states that "[t]he Company expressly agrees to indemnify [Mr. Hamilton] [*4] for any Judgment, attorneys' fees, costs or other liabilities arising out of the Judgment obtained by [Elite] and including efforts by Elite to collect on the Judgment against [Mr. Hamilton]." *Id.* at p. 108.

In 2014, Debtors filed a voluntary Chapter 11 petition (ECF No. 1). This proceeding has been contentious and remains ongoing. At this juncture, there is no confirmed Chapter 11 plan and the automatic stay as to Debtors' property is in place.

In 2018, Elite brought suit against HCC in state court to collect on the Judgment ("State Court Action"). HCC is, Elite says, contractually liable as Mr. Hamilton's indemnitor. The State Court Action alleges two causes of action: (1) a creditor's suit under California Code of Civil Procedure ("CCP") *§ 708.210*; and (2) declaratory relief under *CCP § 1060* regarding whether HCC must indemnify Mr. Hamilton under the agreements (ECF No. 700-2, pp. 109-10).

In the State Court Action, HCC has asserted that Elite's discovery requests violate the automatic stay in Debtors' bankruptcy case. Elite responded with the present emergency motion (ECF No. 696), which Debtors have opposed (ECF No. 700).

**Legal Analysis and Discussion**

To resolve the question of whether Elite is entitled to relief, [*5] the court must first determine that the automatic stay applies to the State Court Action. As an initial matter, Debtors are not parties in the State Court Action. And, *HN1*[⬆] "[a]s a general rule, the automatic stay protects only the debtor, property of the debtor or property of the estate." *Boucher v. Shaw, 572 F.3d 1087, 1092 (9th Cir. 2009)* (citing *11 U.S.C. §§ 362(a) and 541(a)*). It does not "protect non-debtor parties or their property." *Id.* (quoting *In re Chugach Forest Prods., Inc., 23 F.3d 241, 246 (9th Cir. 1994)).* The automatic stay, then, does not "stay actions against guarantors, sureties, corporate affiliates, or other non-debtor parties liable on the debts of the debtor." *Chugach, 23 F.3d at 246* (internal quotation marks omitted) (citing cases).

Elite asserts that the automatic stay does not apply to the State Court Action because HCC's assets are not estate property. The court agrees. No one argues that HCC is a debtor in bankruptcy or that its property is part

of Debtors' estate. Indeed, Debtors admit that Mr. Hamilton has no ownership interest in HCC (ECF No. 545, p. 24). It follows, then, that the automatic stay does not cover HCC's property. *See Boucher, 572 F.3d at 1092.*

Debtors do not argue that the automatic stay applies to HCC's assets. Rather, they contend that it extends to the State Court Action because the latter involves Mr. Hamilton's indemnification [*6] rights. Not so. The Ninth Circuit is clear on this point: *HN2*[⬆] bankruptcy cases do not stay actions against non-debtors liable on the debts of the debtor. *See Chugach, 23 F.3d at 246.* Here, HCC is a non-debtor. Elite obtained a judgment against Mr. Hamilton (*i.e.*, the Judgment). According to Elite, HCC is contractually obligated on that debt per its agreements with Mr. Hamilton. And under *CCP § 708.210*, Elite has a statutory basis to seek recovery from HCC as Mr. Hamilton's indemnitor. HCC is thus a non-debtor who is being sued on the debts of a debtor. As such, the stay does not apply. *See Chugach, 23 F.3d at 246.*

Nor does Debtors' argument that the indemnification rights are estate property change this outcome. The State Court Action may involve HCC's obligations under its agreements with Mr. Hamilton, but that is not the same as implicating Mr. Hamilton's rights. Indeed, Debtors do not assert that any judgment in the State Court Action would alter Mr. Hamilton's indemnification rights. And, as noted above, Elite's theory of liability is under *CCP § 708.210*, which is an independent basis for recovery. *See Holstein v. Super. Ct. of San Diego Cty., 275 Cal. App. 2d 708, 710, 80 Cal. Rptr. 301 (1969)* (explaining that *HN3*[⬆] the right to payment under *CCP § 720* [superseded by *CCP § 708.210*] is independent of the action in which the underlying judgment was obtained).

Now, the Ninth [*7] Circuit has suggested that *HN4*[⬆] litigation involving a non-debtor may be stayed in limited circumstances, such as when the debtor will be forced to indemnify the non-debtor. *See Boucher, 572 F.3d at 1093.* But Debtors would likely need to bring an adversary proceeding to request that relief. *See In re Ripon Self Storage, LLC, B.A.P. No. EC-10-1325-HKiD, 2011 Bankr. LEXIS 1785, at *19 (B.A.P. 9th Cir. Apr. 1, 2011)*; 3 Collier on Bankruptcy ¶ 362.04[1] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.); *In re R & G Fin. Corp., 441 B.R. 401, 407-08 (Bankr. D.P.R. 2010).* And, although referred to as an automatic stay extension, it would take the form of an injunction after a hearing establishing an unusual need to protect the

bankruptcy estate's administration. *See* *Boucher, 572 F.3d at 1093 n.3* (citing *Chugach, 23 F.3d at 247 n.6*). So, even in a situation where bankruptcy estate funds would be used to indemnify a third-party non-debtor, the automatic stay does not apply to that third-party litigation. Naturally, if this situation would not trigger the automatic stay, then the obverse, where a third-party non-debtor is indemnifying a debtor — and funds are put into the estate to satisfy the debtor's debts — the automatic stay would also not apply. To be sure, the former situation plainly has a negative impact on the bankruptcy estate. Yet even then the Ninth Circuit says that the stay does not apply. [*8] *See id.* Accordingly, the court **finds** that the automatic stay does not extend to the State Court Action.

If a plan were in place, this motion's outcome might turn on whether the assets and cashflow that Elite is seeking from HCC (*e.g.*, Mr. Hamilton's salary and attorney's fees) were destined to fund the plan and thus impact the estate. But with no plan, the court need not reach the issue. And, as explained above, the proper procedure would likely be an adversary proceeding for an injunction. As the automatic stay does not extend to the State Court Action, it can go forward without restraint by this court.

Turning to the remainder of Elite's motion, the court finds that Elite did not adequately address their right to stay relief on the three additional matters. It therefore **denies** the motion as to them without prejudice.

### Conclusion

For the foregoing reasons, the court **finds** that the automatic stay in Debtors' bankruptcy case does **not apply** to Elite's action against HCC. Further, the court **denies** Elite's motion requesting relief to: (1) renew their August 19, 2013 judgment in the 2011 Superior Court Action against Debtors; (2) renew their abstract of judgment and personal property lien; and [*9] (3) allow the completion, through judgment, of their pursuit of attorney's fees and costs in the 2011 Superior Court action on the underlying state court judgment.

IT IS SO ORDERED.

### Notice Recipients

Date Created: 9/26/2018

Total: 30

User: Admin.

Form ID: pdfO1

District/Off: 0974-3

Case: 14-03142-CL11

**Recipients submitted to the BNC (Bankruptcy Noticing Center) without an address:**

sp Law Office of Anthony F. Pantoni APC

sp Law Office of Gregory P. Olson

sp Browning/Hocker

**Recipients of Notice of Electronic Filing:**

aty Christine Relph christine.relph@kts-law.com

aty Dan Lawton dan@lawtonlaw.com

aty Frank Pepler frank.pepler@dlapiper.com

aty Gerald N. Sims jerrys@psdslaw.com

aty Gi Nam Lee glee@lawlpl.com

aty Jeffrey D. Cawdrey jcawdrey@gordonrees.com

aty John W. Cutchin jcutchin@san.rr.com

aty K. Todd Curry tcurry@currylegal.com

aty Maggie Schroedter schroedterm@higgslaw.com

aty Paul J Leeds leedsp@higgslaw.com

aty Stacey Miller smiller@tharpe-howell.com

aty Susan C. Stevenson sstevenson@psdslaw.com

aty Thomas Stahl Thomas.Stahl@usdoj.gov

aty Todd S. Garan ch11ecf@aldridgepite.com

aty William A. Bramley, III william.bramley@bramleylaw.com

**Recipients submitted to the BNC (Bankruptcy Noticing Center):**

db Christopher [*10] John Hamilton 7979 Entrada Lazanja San Diego, CA 92127

jdb Elizabeth Leigh Tesolin 7979 Entrada Lazanja San Diego, CA 92127

cr Porsche Financial Services, Inc. c/o Tharpe & Howell,
LLP 15250 Ventura Blvd. 9th

Floor Sherman Oaks, CA 91403

cr TGG Management Company, Inc. 10188 Telesis Ct
#130 San Diego, CA 92121

cr Ready Made Pictures 5225 Wilshire Blvd. Ste. 777
Los Angeles, CA 90036

cr Matthew Garrett 10188 Telesis Ct #130 San Diego,
CA 92121

cr Sanford R. Climan 5225 Wilshire Blvd. Ste. 777 Los
Angeles, CA 90036

cr Lori M. Todd 392 Entrada St. Santa Monica, CA
90402

cr Wells Fargo Bank., N.A. C/O Pite Duncan, LLP 4375
Jutland Drive, Ste. 200 P.O. Box

17933 San Diego, CA 92117-0933

cr LVNV Funding LLC c/o Resurgent Capital Services
PO Box 10587 Greenville, SC 29603-0587

cr Internal Revenue Service Insolvency Unit Insolvency
Group 7 M/S 2277 333 W. Broadway San

Diego, CA 92101-3805

aty John W. Cutchin Law Office of John W. Cutchin
14720 Soprano Lane San Diego, CA 92127

End of Document

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

Hutkin Law Firm, APC, 1220 Marsh Street, San Luis Obispo, CA 93401

A true and correct copy of the foregoing document entitled (*specify*): REPLY TO OPPOSITION OF CREDITOR DONALD G. EZZELL TO MOTION FOR RELIEF FROM THE AUTOMATIC STAY; DECLARATION OF ALLEN K. HUTKIN IN SUPPORT THEREOF

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 10/31/2022_____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

ATTORNEY FOR DEBTOR, Todd C. Ringstad, Esq.: becky@ringstadlaw.com; arlene@ringstadlaw.com
TRUSTEE, Sandra McBeth (TR): jwalker@mcbethlegal.com; CA65@ecfcbis.com; ecf.alert+McBeth@titlexi.com
ATTORNEY FOR TRUSTEE, Timothy J. Yoo, Esq.: tjy@lnbyb.com
UNITED STATES TRUSTEE (ND): ustpregion16.nd.ecf@usdoj.gov

☑ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served)**: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) 10/31/2022_____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.
Via Overnight Mail Service:

PRESIDING BANKRUPTCY JUDGE, Honorable Ronald A. Clifford III, U.S. Bankruptcy Court, Northern Division, 1415 State Street, Suite 233, Santa Barbara, CA 93101

☑ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 10/31/2022 | Donald L. Mabry | /s/ Donald L. Mabry |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

· This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                        **F 9013-3.1.PROOF.SERVICE**

**Attachment** to F 9013-3.1.PROOF OF SERVICE

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:

Additional Persons Served Via NEF:

ATTORNEY FOR DEBTOR: Christopher Minier, Esq.: becky@ringstadlaw.com; arlene@ringstadlaw.com
ATTORNEY FOR DEBTOR: Thomas L. Vincent, Esq.: tlv@paynefears.com; ccason@paynefears.com

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for
each person or entity served):

Additional Persons Served Via Overnight Mail Service:

ATTORNEYS FOR DONALD G. EZZELL:

Donald G. Ezzell, Esq.
The General Counsel Group, P.C.
1144 Black Oak Drive
Paso Robles, California 93446

Benjamin A. Nix, Esq.
Andrew K. Haeffele, Esq.
Payne & Fears LLP
4 Park Plaza, Suite 1100
Irvine, California 92614