Allen K. Hutkin (SBN 143200)
*ahutkin@hutkinlaw.com*
Donald L. Mabry (SBN 187750)
*dmabry@hutkinlaw.com*
HUTKIN LAW FIRM, APC
1220 Marsh Street
San Luis Obispo, CA 93401
Tel: (805) 544-1500
Fax: (805) 544-1532

Attorneys for Creditors/Movants
DARCY VILLERS, WILLIAM E.
HOLMES AND KYLE KING

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – NORTHERN DIVISION

| | |
|---|---|
| In re | Case No.: 9:22-BK-10592 RC |
| PRCCC, INC., a California Corporation | **REPLY TO SUPPLEMENTAL BRIEFS IN OPPOSITION TO MOTION OF DARCY VILLERS, WILLIAM E. HOLMES AND KYLE KING FOR RELIEF FROM THE AUTOMATIC STAY REGARDING DONALD G. EZZELL** |
| Debtor and Debtor-in-Possession | Hearing:<br>Date:    February 21, 2023<br>Time:    10:00 a.m.<br>Place:   Courtroom 201<br>          1415 State Street<br>          Santa Barbara, CA 93101 |

**TO THE HONORABLE RONALD A. CLIFFORD III, UNITED STATES BANKRUPTCY JUDGE:**

Creditors/Movants, Darcy Villers, William E. Holmes, and Kyle King, hereby submit this Supplemental Brief in support of their Motion for Relief from the Automatic Stay, and respectfully state as follows.

**I.    SUMMARY**

Ezzell and Debtor's supplemental opposition briefs do not address the issues the Court asked the parties to brief - i.e., Debtor's response to the motion to bifurcate and how filing the

---

1

motion affects Debtor. The responses to these issues would not serve Debtor's and Ezzell's wish to delay Movants from pursuing their claims against Ezzell. Debtor filed a Chapter 7, sold off its assets, is no longer conducting business and has very limited declared assets, but substantial declared debts.  Under California law Ezzell is personally liable for wage and hour violations, and Movants need to proceed with their claims against Ezzell only, as the 5-year deadline for trying those claims is fast approaching.  They seek relief of stay for the sole purpose of serving Debtor with the Motion to Bifurcate so that they can proceed to trial against Ezzell only.  The state court will not hear the Motion to Bifurcate unless Debtor is served with the motion.

Debtor and Ezzell do not deny that their intent in filing bankruptcy was to delay and run out the clock on Movants' claims so that Movants are denied their day in State Court. This constitutes good cause for this court to grant relief from the automatic stay so that Movants can serve their motion to bifurcate. Debtor and Ezzell do not contest that the Chapter 7 Trustee is the sole person with authority to oppose the motion to bifurcate and the Trustee is not opposing this motion.

## II.    STATEMENT OF FACTS

On May 29, 2018, Movants Darcy Villers, Kyle King, and William Holmes (collectively "Movants") filed a wage and hour against Paso Robles Casino & Card Room Lounge, PRCCC, Inc. ("PRCCC") and Donald G. Ezzell ("Ezzell").

The complaint alleges nine causes of action, including seven causes of action under the California Labor Code, one cause of action under Business and Professions Code section 17200, et seq. (the "UCL"), and a representative cause of action for civil penalties under the Private Attorneys General Act, Labor Code section 2698, et seq. ("PAGA"). Movants allege that they were misclassified as independent contractors and are entitled to unpaid wages, meal and rest period violations, waiting time penalties, and for pay stub violations. All causes of action are alleged against both Debtor and Ezzell.

On August 3, 2022, the eve of the trial readiness conference in Movants' wage and hour action, Debtor filed Chapter 7 bankruptcy. According to Debtor's schedule A, Debtor

2

had $92,735.15 in the bank, after paying Chapter 7 counsel $20,000.00 in accordance with the disclosure of Compensation of Attorneys for Debtor; and making $358,395.55 in payments to select creditors within the ninety days prior to filing according to the statement of Financial Affairs which included $119,159.25 directly to Don Ezzell (the Petition's signatory for the Debtor and 100% owner of the Debtor) or his related insider entities. Debtor scheduled more than $850,000.00 of nonpriority unsecured debt, not counting Movants' proofs of claims which total $1,507,697.10. The total of these unsecured claims, not including the other proofs of claims which were filed, totals more than $2.3 million, which exceeded the money Debtor had in the bank by 25 times.

Ezzell's counsel filed a Notice of Automatic Stay of Case Due to Bankruptcy Filing in the Superior Court on August 3, 2022. See Hutkin Decl. ¶ 5, Ex. 1. The San Luis Obispo County Superior Court docket for that date states as follows: "BK STAY AS TO PRCCC DBA PASO ROBLES CASINO & CARD ROOM ONLY." See Hutkin Decl. ¶ 6, Ex. 2.

On August 26, 2022, Movants filed their first motion for relief from the automatic stay. See Docket No. 15. Debtor listed all the Movants' claims as being contingent, unliquidated and disputed. The bankruptcy estate would have been best served by allowing the claims to be liquidated in the pending state court action where the Court is very familiar with California labor law. Nonetheless, both Debtor and Ezzell opposed Movants' first motion for relief from the automatic stay. See Docket Nos. 17 and 20. After a hearing, the Court denied Movants' motion without prejudice by way of an Order entered on October 17, 2022. See Docket No. 34.

On October 17, 2022, Movants filed their second Motion for Stay Relief. See Docket No. 32. In their second Motion, Movants seek limited relief under § 362(d)(1) for "cause" to enable Movants to file and serve their motion to bifurcate on Debtor in the State Court action

**REPLY TO SUPPLEMENTAL BRIEFS IN OPPOSITION TO MOTION OF DARCY VILLERS,
WILLIAM E. HOLMES AND KYLE KING FOR RELIEF FROM THE AUTOMATIC STAY
REGARDING DONALD G. EZZELL**

without violating the automatic stay so Movants can proceed solely against, Ezzell. See Motion, Docket No. 32 at p. 5.[1]

On December 13, 2022, the Court issued a tentative ruling indicating that it was tentatively denying the motion for automatic stay because Movants had not shown good cause for lifting the stay. During oral argument Movants' counsel explained that Movants needed limited relief from the automatic stay so they could serve Debtor and Ezzell with the motion to bifurcate in the state court action so Movants' motion could be heard.

The Court then directed Movants to provide the court with the proposed Motion to Bifurcate and supplemental briefing on: [1] What the Debtor's response would need to be or could be to the Motion to Bifurcate; and 2) How filing of the Notice of Motion to Bifurcate would affect the Debtor's standing in the state court case itself.[2]. The proposed motion to bifurcate was attached as Exhibit "A" to Movants' supplemental brief filed on January 16, 2023 (Document Number 53).

### III.    MOVANTS HAVE SHOWN GOOD CAUSE TO LIFT THE AUTOMATIC STAY TO ALLOW MOVANTS TO SERVE THE NOTICE OF MOTION AND MOTION FOR BIFURCATION ON DEBTOR

Section 362(a) of the Bankruptcy Code provides an automatic stay against the following:

(1) the commencement or continuation, including the **issuance or employment of process**, of a judicial, administrative, **or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title**, or to recover a claim against the debtor that arose before the commencement of the case under this title. [emphasis added].

In *In re Wardrobe* (9th Cir. 2009) 559 F.3d 932, 933, the movant sued a building contractor, and his bonding companies, for breach of contract after a disappointing home repair job. The contractor filed for Chapter 13 bankruptcy, which was converted to Chapter 7,

---

[1]  Movants withdraw their request that this court (1) waive the 14-day stay provided by F.R.B.P. Rule 4001(a)(3); and (2) that any Order granting their motion be binding and effective in any bankruptcy case commenced by or against the Debtor for a period of 180 days.

[2]  "...you can augment the motion with a copy of what you intend on filing, and also briefing the Court on what the Debtor's response would need to be or could be. And lastly, how this, the filing of this notice would affect the Debtor's standing in the state court case itself." (Dec. 13th Hearing Tr. at 11:1-5.).

**REPLY TO SUPPLEMENTAL BRIEFS IN OPPOSITION TO MOTION OF DARCY VILLERS, WILLIAM E. HOLMES AND KYLE KING FOR RELIEF FROM THE AUTOMATIC STAY REGARDING DONALD G. EZZELL**

and obtained the statutory automatic stay of the litigation pending in state court. The movant

then filed a motion in the bankruptcy court for a limited lifting of the stay to permit her to

proceed against the bonding companies, using the defendant contractor as a witness. The

bankruptcy court granted the motion in an order stating that "the stay is lifted so that the

Creditor may seek to compel the debtor, [contractor], to participate in this trial as a witness

and obtain judgment. However, Creditor may not proceed to enforce that judgment against the

Debtor, or property of the estate without further order of this court."

Through no fault of their own Movants are stuck in a Catch-22 situation. Congress

intended the scope of the automatic stay to be broad and exceptions to its applicability

narrow. *In re Stringer*, 847 F.2d 549, 552 (9th Cir. 1988). Service of the motion to bifurcate

on Debtor is the "employment of process" against Debtor under 11 USC § 362(a).

Accordingly, Movants do not seek an advisory opinion or comfort order. A threshold question

on any motion for stay relief is whether the automatic stay applies in the first instance.

If Movant files a Motion to Bifurcate and serves Debtor, Debtor is likely to claim that

Movants violated the automatic stay. The State Court will not take any action unless the

Motion is served on both Debtor and Ezzell, and because Debtor filed the Notice of

Automatic Stay of Case Due to Bankruptcy Filing in the State court action the State court has

said it will not take any action unless the bankruptcy is dismissed or the court grants this

motion allowing Movants to serve the Notice of Motion and Motion free from the stay on

Debtor.

Movants' interest will be irreparably harmed by continuation of the automatic stay.

California Code of Civil Procedure § 583.310 provides that "An action shall be brought to

trial within five years after the action is commenced against the defendant." This action was

filed in state court on May 29, 2018. If this court does not grant relief, Movants risk dismissal

of their claims against Ezzell once the five-year anniversary of the filing of the complaint

passes on May 29, 2023.  Even if Ezzell is correct that Emergency Rule No. 9(a) [Tolling

statutes of limitations over 180 days] of the California Rules of Court, extends the limitations

**REPLY TO SUPPLEMENTAL BRIEFS IN OPPOSITION TO MOTION OF DARCY VILLERS,
WILLIAM E. HOLMES AND KYLE KING FOR RELIEF FROM THE AUTOMATIC STAY
REGARDING DONALD G. EZZELL**

period for bringing an action to trial by 6 months, time is rapidly running out on Movants to

bring this matter to trial against Ezzell as the San Luis Obispo County Superior Court docket

expressly states: "BK STAY AS TO PRCCC DBA PASO ROBLES CASINO & CARD

ROOM ONLY." Meanwhile, witnesses' memories continue to fade and witnesses move out

of the area and/or die which also means that Movants' interest is irreparably harmed by

continuation of the automatic stay.  Unless relief is granted, Ezzell gets the benefit of the

automatic stay to stop the wage hour litigation against him even though Ezzell never filed for

bankruptcy.  If Movants do not get relief, Ezzell can run out the clock on their state court

claims against him without Movants ever having their day in court.

## IV.     DEBTOR/EZZELL'S FALSE STATEMENT OF FACTS AND ARGUMENTS IN OPPOSITION TO THE MOTION TO BIFURCATE ARE NOT RELEVANT TO THE QUESTION OF WHETHER RELIEF FROM THE AUTOMATIC STAY SHOULD BE GRANTED

Debtor's and Ezzell's oppositions attempt to build sympathy for Ezzell by reciting

false facts about his involvement in the operation of Debtor's business, and about the sale

price of Debtor's assets. Whether true or false these claims are irrelevant to this motion.

Ezzell is free to argue he is not personally liable for labor law violations in defending the state

court claims, but the issue is not before this court.  This only issue is Movants' request that

they be allowed to serve Debtor with the state court motion to bifurcate and go to trial against

Ezzell.[3]

Ezzell's suggestion that the state court judge will somehow be improperly led to grant

bifurcation if this court allows relief is baseless and insulting to both courts. (See Ezzell Supp.

Opp. p.7:13-17, claiming that if this Court grants the requested relief that it will automatically

"lead the State Court to reverse its prior ruling denying bifurcation.")  The state court judge is

---

[3]  In fact, Ezzell was not an absentee owner. He created the policies which violated California law and managed the casino as he admitted at deposition. Ezzell did not sell the Debtor's assets for approximately $100,000 but $400,000 which was part of a unitary transaction to purchase Debtor, the restaurant, and land for $2,380,000.00. See Request for Judicial Notice Exhibit "1" [Cross-Complaint for Specific Performance, Breach of Contract, and Quasi-Contract/Restitution, Exhibit "C." Exhibit "C" is the contract that Ezzell signed to sell Debtor's assets for $400,000 not $100,000.]. See Hutkin Decl. ¶ 6, Ex. 3.

**REPLY TO SUPPLEMENTAL BRIEFS IN OPPOSITION TO MOTION OF DARCY VILLERS, WILLIAM E. HOLMES AND KYLE KING FOR RELIEF FROM THE AUTOMATIC STAY REGARDING DONALD G. EZZELL**

fully capable of applying the facts and law to determine whether to allow trial against Ezzell. If there is some valid basis for denying bifurcation, Ezzell will have the opportunity to make his case. Moreover, if this court is truly concerned that granting the motion could influence the state court judge, this court's order can expressly state this order is not meant as an endorsement of granting the motion to bifurcate.

Ezzell's argument that the "motion should be denied because Movants are estopped from taking a position here which is completely inconsistent with their position in the state court action" is likewise irrelevant and baseless. Estoppel is a defense for the state court to determine. The supposed inconsistency is not a basis for estoppels in any event. While Movants technically have claims against Debtor, Debtor's filing Chapter 7, closing business and having no assets are changed facts that allow Movants to pursue only Ezzell.

Finally, Ezzell and Debtor claim that this motion should be denied because the process should run its course, and proceeding in the state court action in the interim will run a severe risk of inconsistent results. This ignores the reality that the state court has ruled that the automatic stay applies only to Debtor. Time is running out on Movants' claims against Ezzell and Debtor, a corporation, filed a Chapter 7 and will not receive a discharge. The only entity or person who will ever appear in State Court to be held accountable to Movants is Ezzell. If Ezzell and Debtor are truly concerned about inconsistent results they can stipulate that all claims against both of them be liquidated in the pending state court action since Debtor listed all the Movants' claims as being contingent, unliquidated and disputed. When given the opportunity to do this, Debtor and Ezzell opposed the first motion for relief from automatic stay. They are now wrongly complaining about a situation they created.

/ / /

/ / /

/ / /

---

7

**REPLY TO SUPPLEMENTAL BRIEFS IN OPPOSITION TO MOTION OF DARCY VILLERS, WILLIAM E. HOLMES AND KYLE KING FOR RELIEF FROM THE AUTOMATIC STAY REGARDING DONALD G. EZZELL**

## V.    CONCLUSION

For the forgoing reasons, this court should grant Movants limited relief from the automatic stay to be able to serve their motion for bifurcation on Debtor and Ezzell.

Dated: February 14, 2023

HUTKIN LAW FIRM, APC

By: _____
Allen K. Hutkin
Donald L. Mabry
Attorneys for Creditors/Movants
DARCY VILLERS, WILLIAM E.
HOLMES AND KYLE KING

REPLY TO SUPPLEMENTAL BRIEFS IN OPPOSITION TO MOTION OF DARCY VILLERS,
WILLIAM E. HOLMES AND KYLE KING FOR RELIEF FROM THE AUTOMATIC STAY
REGARDING DONALD G. EZZELL

## DECLARATION OF ALLEN K. HUTKIN

1.      I am an attorney duly licensed and admitted to practice law before the courts of

the State of California and before the United States District Court for the Central District of

California.  I am one of the attorneys of record Darcy Villers, Kyle King, and William E.

Holmes, creditors of the Debtor, PRCCC, Inc., and Movants in the pending Motion for Relief

from the Automatic Stay.  I have personal knowledge of the information set forth herein and if

culled to do so, I could and would testify competently to the facts set forth below.

2.      On May 29, 2018, Movants, former employees of the Debtor, filed an action an

in the San Luis Obispo County Superior Court (the "State Court") against the Debtor and

Donald G. Ezzell in which Movants asserted various wage and hour violations under the

California Labor Code (the "State Court Action").  As Movants seeks relief against Mr. Ezzell

under California law, the State Court is well-versed in the legal issues raised in the State

Court Action.

3.      Shortly before the commencement of trial, the Debtor filed its voluntary

petition for relief under the United States Bankruptcy Code on August 3, 2022.

4.      The State Court Action remains ready for an expeditious trial tried quickly.

Discovery has been cut off since January 26, 2020.  Given the age of the case, it will have

trial priority over virtually all cases set for trial.

5.      Attached hereto as Exhibit "1" is a true and correct copy of the Notice of

Automatic Stay of Case Due to Bankruptcy Filing filed in San Luis Obispo County Superior

Court on August 3, 2022.

6.      Attached hereto as Exhibit "2" is a true and correct copy of the San Luis

Obispo County Superior Court docket for July 25, 2022, through August 4, 2022.  On August

3, 2022, the Docket states "BK STAY AS TO PRCCC DBA PASO ROBLES CASINO &

**REPLY TO SUPPLEMENTAL BRIEFS IN OPPOSITION TO MOTION OF DARCY VILLERS,
WILLIAM E. HOLMES AND KYLE KING FOR RELIEF FROM THE AUTOMATIC STAY
REGARDING DONALD G. EZZELL**

Case 9:22-bk-10592-RC   Doc 56   Filed 02/14/23   Entered 02/14/23 16:33:01   Desc
Main Document    Page 10 of 55

1 CARD ROOM ONLY."

2 7.     Attached hereto as Exhibit "3" is a true and correct copy of the cross-complaint filed

3 *OVSEP AYRAPETIAN, RVD INVESTMENTS, LLC, vs. PR HOSPITALITY, LLC,*

4

5 *PRCCC, Inc., 1144 Black Oak Associates, LLC,* San Luis Obispo Superior Court Case No. 22

6 CVP-058 filed on November 28, 2022.

7      I declare under penalty of perjury under the laws of the State of California and the

8 United States that the foregoing is true and correct. Executed this 14th day of February in San

9

10 Luis Obispo, California.

11

12

13                                        Allen K. Hutkin

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**REPLY TO SUPPLEMENTAL BRIEFS IN OPPOSITION TO MOTION OF DARCY VILLERS,
WILLIAM E. HOLMES AND KYLE KING FOR RELIEF FROM THE AUTOMATIC STAY
REGARDING DONALD G. EZZELL**

Exhibit 1

View Document - 18CVP-0175 - Automatic Stay PRCCC DBA PR CASINO

Pages: 6

| | |
|---|---|
| 1 | Donald G. Ezzell, Bar No. 147253 |
| | The General Counsel Group P.C. |
| 2 | 1144 Black Oak Drive |
| | Paso Robles, California 93446 |
| 3 | Telephone (805) 674-3118 |
| | don.ezzell@gencounselgroup.com |
| 4 | |
| | Benjamin A. Nix, Bar No. 138258 |
| 5 | ban@paynefears.com |
| | Andrew K. Haeffele, Bar No. 258992 |
| 6 | akh@paynefears.com |
| | PAYNE & FEARS LLP |
| 7 | Attorneys at Law |
| | 4 Park Plaza, Suite 1100 |
| 8 | Irvine, California 92614 |
| | Telephone: (949) 851-1100 |
| 9 | Facsimile: (949) 851-1212 |

**ELECTRONICALLY
FILED**
8/3/2022 5:26 PM

SAN LUIS OBISPO SUPERIOR COURT
By *Carol L. McGuire*
Carol L. McGuire, Deputy Clerk

10    Attorneys for Defendants PRCCC, INC. and DONALD G.
      EZZELL

11

12              SUPERIOR COURT OF THE STATE OF CALIFORNIA

13              COUNTY OF SAN LUIS OBISPO, PASO ROBLES

14

| | | |
|---|---|---|
| 15 | DARCY VILLERS, an individual; KYLE | Case No. 18CVP-0175 |
| 16 | KING an individual; WILIAM E. HOLMES | |
| | an individual; JEREMY CANCIO, an | **Assigned For All Purposes To** |
| 17 | individual, | **Honorable Tana Coates** |
| 18 | Plaintiffs, | **NOTICE OF AUTOMATIC STAY OF** |
| | | **CASE DUE TO BANKRUPTCY FILING** |
| 19 | v. | |
| | | Date:   August 15, 2022 |
| 20 | PRCCC, Inc., a California corporation; | Time:   1:30 p.m. |
| | DONALD G. EZZELL, an individual; and | Dept.:   9 |
| 21 | DOES 1 through 70, inclusive,, | |
| | | Action Filed:    May 29, 2018 |
| 22 | Defendants. | Trial Date:      August 15, 2022 |

23

24

25

26

27

28

-1-
NOTICE OF AUTOMATIC STAY OF CASE DUE TO BANKRUPTCY FILING

Pages: 6

Download Document

1  Donald G. Ezzell, Bar No. 147253
   The General Counsel Group P.C.
2  1144 Black Oak Drive
   Paso Robles, California 93446
3  Telephone (805) 674-3118
   don.ezzell@gencounselgroup.com
4
   Benjamin A. Nix, Bar No. 138258
5  ban@paynefears.com
   Andrew K. Haeffele, Bar No. 258992
6  akh@paynefears.com
   PAYNE & FEARS LLP
7  Attorneys at Law
   4 Park Plaza, Suite 1100
8  Irvine, California 92614
   Telephone: (949) 851-1100
9  Facsimile:  (949) 851-1212

10 Attorneys for Defendants PRCCC, INC. and DONALD G.
   EZZELL
11

12              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

13              **COUNTY OF SAN LUIS OBISPO, PASO ROBLES**

14

15
   DARCY VILLERS, an individual; KYLE        Case No. 18CVP-0175
16 KING an individual; WILIAM E. HOLMES
   an individual; JEREMY CANCIO, an          **Assigned For All Purposes To**
17 individual,                               **Honorable Tana Coates**

18              Plaintiffs,                   **NOTICE OF AUTOMATIC STAY OF**
                                             **CASE DUE TO BANKRUPTCY FILING**
19       v.
                                             Date:   August 15, 2022
20 PRCCC, Inc., a California corporation;    Time:   1:30 p.m.
   DONALD G. EZZELL, an individual; and     Dept.:  9
21 DOES 1 through 70, inclusive,,
                                             Action Filed:    May 29, 2018
22              Defendants.                   Trial Date:      August 15, 2022

23

24

25

26

27

28

                                    -1-
   NOTICE OF AUTOMATIC STAY OF CASE DUE TO BANKRUPTCY FILING

1    **TO THE COURT AND ALL PARTIES AND COUNSEL OF RECORD:**

2

3    **PLEASE TAKE NOTICE** that a bankruptcy case has been filed under Chapter 7 of the

4    United States Bankruptcy Code on August 3, 2021, and an automatic stay is in place due to the

5    filing.  A copy of the Notice of Bankruptcy is attached hereto as Exhibit "A."

6

7    DATED:  August 3, 2022          PAYNE & FEARS LLP
                                     Attorneys at Law
8

9

10                                  By:  _____/s/ Benjamin A. Nix_____
                                            BENJAMIN A. NIX
11
                                    Attorneys for Defendants PRCCC, INC. and
12                                  DONALD G. EZZELL

13

14    4831-6984-7283.4

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-2-
NOTICE OF AUTOMATIC STAY OF CASE DUE TO BANKRUPTCY FILING

# EXHIBIT A

8/3/22, 3:59 PM                              CM/ECF - U.S. Bankruptcy Court (NG 1.6.3 - LIVE)

United States Bankruptcy Court
Central District of California

# Notice of Bankruptcy Case Filing

A bankruptcy case concerning the debtor(s) listed below was filed under
Chapter 7 of the United States Bankruptcy Code, entered on 08/03/2022 at
3:42 PM and filed on 08/03/2022.

**FILED**

08/03/2022

3:42 PM

**PRCCC, Inc.**
1144 Black Oak Drive
Paso Robles, CA 93446
Tax ID / EIN: 45-3726954
*dba* **Paso Robles Central Coast Cardroom**
*dba* **Paso Robles Casino**

The case was filed by the debtor's attorney:

Todd C. Ringstad
Ringstad & Sanders LLP
4910 Birch Street
Suite 120
Newport Beach, CA 92660
949-851-7450

The case was assigned case number 9:22-bk-10592-RC to Judge Ronald A Clifford.

In most instances, the filing of the bankruptcy case automatically stays certain collection and other actions against
the debtor and the debtor's property. Under certain circumstances, the stay may be limited to 30 days or not exist at
all, although the debtor can request the court to extend or impose a stay. If you attempt to collect a debt or take
other action in violation of the Bankruptcy Code, you may be penalized. Consult a lawyer to determine your rights
in this case.

If you would like to view the bankruptcy petition and other documents filed by the debtor, they are available at our
*Internet* home page www.cacb.uscourts.gov or at the Clerk's Office, 1415 State Street,, Santa Barbara, CA 93101-
2511.

You may be a creditor of the debtor. If so, you will receive an additional notice from the court setting forth
important deadlines.

Kathleen J. Campbell
Clerk, U.S. Bankruptcy Court

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 08/03/2022 16:03:13 | | |
| **PACER Login:** | ATTY97345 | **Client Code:** | PRCCC |
| **Description:** | Notice of Filing | **Search Criteria:** | 9:22-bk-10592-RC |
| **Billable Pages:** | 1 | **Cost:** | 0.10 |

CM/ECF - U.S. Bankruptcy Court (NG 1.6.3 - LIVE)

**PROOF OF SERVICE**

**Darcy Villers, et al. v. PRCCC, Inc. et al.**
**Case No. 18CVP-0175**
**Superior Court of the State of California County of San Luis Obispo**

**STATE OF CALIFORNIA, COUNTY OF ORANGE**

      At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Orange, State of California. My business address is 4 Park Plaza, Suite 1100, Irvine, CA 92614.

      On August 3, 2022, I served true copies of the following document(s) described as **NOTICE OF AUTOMATIC STAY OF CASE DUE TO BANKRUPTCY FILING** on the interested parties in this action as follows:

| | |
|---|---|
| Allen K. Hutkin, SB #143200<br>Donald L. Mabry, SB #187750<br>HUTKIN LAW FIRM, APC<br>1220 Marsh Street<br>San Luis Obispo, CA 93401<br>Telephone: (805) 544-1500<br>Facsimile: (805) 544-1532<br>Emails: ahutkin@hutkinlaw.com<br>        dmabry@hutkinlaw.com | Attorneys for Plaintiffs<br>DARCY VILLERS, KYLE KING and<br>WILLIAM E. HOLMES |
| James H. Cordes, SBN 175398<br>Angelica J. Caro, SBN 318821<br>James H. Cordes and Associates<br>831 State Street, Suite 205<br>Santa Barbara, CA 93101<br>Telephone: (805) 965-6800<br>Facsimile: (805) 965-5556<br>Emails: jim@jamescordes.com<br>        ajc@jamescordes.com | Attorneys for Plaintiffs<br>DARCY VILLERS, KYLE KING and<br>WILLIAM E. HOLMES |

      **BY E-MAIL OR ELECTRONIC TRANSMISSION:** I caused a copy of the document(s) to be sent from e-mail address erobinson@paynefears.com to the persons at the e-mail addresses listed in the Service List.

      I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

      Executed on August 3, 2022, at Irvine, California.

                                /s/ *Elsa M. Robinson*

4889-1162-3213.1

NOTICE OF AUTOMATIC STAY OF CASE DUE TO BANKRUPTCY FILING

Exhibit 2

Comment
trial readiness and the potential of trailing a priority trial.

07/25/2022 Time estimate for trial is ▾

Comment
confirmed as 7-10 days.

07/25/2022 The Court ▾

Comment
directs Counsel to contact Ray Mattison to schedule a Mandatory Settlement Conference.

07/29/2022 Trial Brief Filed ▾

Trial Brief Filed

07/29/2022 Trial Brief Filed ▾

61128Plaintif003a68a

08/03/2022 Notice of Stay of Proceedings ▾

Automatic Stay PRCCC DBA PR CASINO

Comment
BK STAY AS TO PRCCC DBA PASO ROBLES CASINO & CARD ROOM ONLY

08/04/2022 Readiness Conference ▾

Original Type
Readiness Conference

Judicial Officer
Judge Coates, Tana L.

Hearing Time
10:00 AM

Result
Held

Comment
*to be called at 10:30*

Parties Present ▴
Plaintiff

Attorney: Hutkin, Allen K.

Attorney: Cordes, James H

Plaintiff

Attorney: Hutkin, Allen K.

Attorney: Cordes, James H

Plaintiff

    Attorney: Hutkin, Allen K.

    Attorney: Cordes, James H

Defendant

    Attorney: Nix, Benjamin Avery

    Attorney: Nix, Benjamin Avery

Defendant

    Attorney: Nix, Benjamin Avery

08/04/2022 Party makes a video appearance. ▾

    Comment
    Angelica Caro and Lauren Petersen are also present on behalf of the Plaintiffs.

08/04/2022 The Court and counsel discuss ▾

    Comment
    the Notice of Bankruptcy Stay filed 8/4/2022.

08/04/2022 The Court and counsel discuss ▾

    Comment
    trial readiness and potential trial continuance.

08/04/2022 Matter continued at request of ▾

    Comment
    Counsel to meet and confer regarding the pending bankruptcy.

08/04/2022 Meet and Confer. Parties ▾

    Comment
    shall meet and confer regarding the bankruptcy stay and the projected time estimates for trial.

08/04/2022 The Court ▾

    Comment
    directs Counsel to file a Status Update prior to the hearing.

08/10/2022 Brief Filed ▾

Brief Filed- re BK stay

08/10/2022 Declaration Filed ▾

Declaration Filed- DONALD G. EZZELL

Exhibit 3

ELECTRONICALLY
FILED

11/28/2022 2:43 PM

SAN LUIS OBISPO SUPERIOR COURT
BY:_____
H. Landrum, Deputy Clerk

**ACTIUM LLP**
Michael A. Gatto, State Bar No. 232674
5419 Hollywood Blvd, Suite C-356
Los Angeles, CA 90027
Telephone: 323-819-0300
Email: mike@actiumllp.com

**LAW OFFICES OF JONATHON D. NICOL**
Jonathon D. Nicol, State Bar No. 238944
1801 Century Park East, 24th Floor
Los Angeles, CA 90067
Telephone: 816-514-1178
Facsimile: 816-327-2752
Email: jdn@nicolmediation.com

*Attorneys for Defendant and Cross-Complainant*
*Ovsep Ayrapetian and Cross-Complainant*
*RVD Investments, LLC*

### SUPERIOR COURT OF THE STATE OF CALIFORNIA

### COUNTY OF SAN LUIS OBISPO

| | |
|---|---|
| **PR HOSPITALITY, LLC,** | **Case No.: 22CVP-0258** |
| **Plaintiff,** | **Assigned to: Hon. Rite Federman**<br>**Department: 2** |
| **vs.** | **CROSS-COMPLAINT FOR:** |
| **OVSEP AYRAPETIAN, an individual.** | 1. **SPECIFIC PERFORMANCE**<br>2. **BREACH OF CONTRACT**<br>3. **QUASI-CONTRACT/RESTITUTION** |
| **Defendant.** | |
| | **Action Filed: September 19, 2022**<br>**Trial Date:    Not Set** |
| **OVSEP AYRAPETIAN, an individual;**<br>**RVD INVESTMENTS, LLC, a**<br>**California Limited Liability Company,** | |
| **Cross-Complainant,** | |
| **vs.** | |
| **PR HOSPITALITY, LLC, a California**<br>**Limited Liability Company; PRCCC,**<br>**Inc., a California Corporation; 1144**<br>**Black Oak Associates, LLC, a California**<br>**Limited Liability Company; and ROES**<br>**1 – 50, inclusive.** | |
| **Cross-Defendants.** | |

1

COMES NOW defendant and cross-complainant Ovsep Ayrapetian ("Ayrapetian") and cross-complainant RVD Investment, LLC ("RVD") (collectively "Cross-Complainants") and allege as follows:

## **THE PARTIES**

1.    Ayrapetian is an individual who is now, and at all relevant times herein was, a resident of the County of Los Angeles.

2.    RVD is now, and at all times relevant herein was, a limited liability company duly organized and existing under the laws of the State of California, authorized to transact business in California.

3.    Plaintiff and cross-defendant PR Hospitality, LLC ("PR Hospitality") is now, and at all times relevant herein was, a limited liability company duly organized and existing under the laws of the State of California, authorized to transact business in California.

4.    Cross-defendant PRCCC, Inc. ("PRCCC") is now, and at all relevant times herein was, a corporation duly organized and existing under the laws of the State of California, authorized to transact business in California.

5.    Cross-defendant 1144 Black Oak Associates, LLC ("1144") is now, and at all times relevant herein was, a limited liability company duly organized and existing under the laws of the State of California, authorized to transact business in California.

6.    PR Hospitality, PRCCC, and 1144 shall collectively be referred to herein as "Cross-Defendants."

7.    The true names, identities and capacities, whether individual, associate, corporate or otherwise, of cross-defendants Roes 1 through 50, inclusive, and each Roe in between, are unknown to Cross-Complainant at this time, who therefore sue said cross-defendants by such fictitious names. When the true names and capacities or participation of such fictitiously designated cross-defendants are ascertained, Cross-Complainants will petition the Court for leave to amend this cross-complaint to insert said true names, identities and capacities, together with the proper charging allegations.    Cross-Complainant is informed and believes, and thereon alleges, that each of the cross-defendants sued herein were, at all times mentioned herein, and are now, residents of the County of San Luis Obispo.    At all

times mentioned herein, each of the cross-defendants sued herein was the agent, alter ego, servant and employee of each other and of said cross-defendants and was acting within the time, place, purpose and scope of the said agency and service of each of the cross-defendants.

## **FACTUAL ALLEGATIONS**

8. This action involves a unitary and comprehensive purchase of the following assets:

a. Real property commonly known as 1144 Black Oak Drive, Paso Robles, California 93446 (the "Real Estate");

b. A restaurant and bar commonly known as Craft Paso Restaurant and Bar (the "Restaurant"); and

c. A card room commonly known as Paso Robles Central Coast Casino (the "Casino").

9. The Real Estate, Restaurant, and Casino shall collectively be referred to herein as the "Assets."

10. In or about the end of 2020 and the beginning of 2021, Cross-Complainants and Cross-Defendants entered into discussions for Cross-Complainants' purchase of the Assets.

11. Cross-Complainants offered Cross-Defendants the sum total of $2,380,000.00 for the Assets and for their associated operational licenses (gambling, alcohol, etc.) (the "Licenses").

12. Cross-Defendants accepted Cross-Complainants' $2,380,000.00 purchase offer.

13. Because this comprehensive, unitary transaction nevertheless involved a gaming license as one component, the Cross-Complainants needed to separate the purchases of the Assets and the Licenses.

14. On or about January 30, 2021, RVD and 1144 entered into a Purchase Agreement and Joint Escrow Instructions for RVD's purchase of the Real Estate for $1,500,000.00. A true and correct copy of the Real Estate Purchase Agreement is attached hereto as Exhibit A and is incorporated herein by reference.

15. On or about the same day and at the same time, Ayrapetian and PR Hospitality entered into a Purchase Agreement and Joint Escrow Instructions for Ayrapetian's purchase of the Restaurant for $480,000.00. A true and correct copy of the Restaurant Purchase Agreement is attached hereto as

3

1 | Exhibit B and is incorporated herein by reference.

2 |     16.    On or about the same day and at the same time, Ayrapetian and PRCCC entered into a
3 | Purchase Agreement and Joint Escrow Instructions for Ayrapetian's purchase of the Casino for
4 | $400,000.00. A true and correct copy of the Casino Purchase Agreement is attached hereto as Exhibit C
5 | and is incorporated herein by reference.

6 |     17.    The Purchase Agreements and Joint Escrow Instructions shall collectively be referred to
7 | herein as the "Agreements."

8 |     18.    Accordingly, with mutual agreement between Cross-Complainants and Cross-
9 | Defendants, three escrows were opened via Glen Oaks Escrow to facilitate the purchases:

10 |     a.    A $1,500,000.00 escrow for the Real Estate with a $75,0000.00 deposit;

11 |     b.    A $480,000.00 escrow for the Restaurant with a $20,000.00 deposit; and

12 |     c.    A $400,000.00 escrow for the Casino with a $20,000.00 deposit.

13 |     19.    As is typical, Cross-Complainants' lender had agreed to lend only against the Real Estate
14 | as collateral, and accordingly requested that the $75,000.00 deposit to the Real Estate escrow be labeled
15 | as being for the Real Estate.

16 |     20.    However, the $20,000.00 deposit to the Casino escrow was mislabeled as being for the
17 | Real Estate.

18 |     21.    Cross-Complainants are informed and believe, and based thereon allege, that Cross-
19 | Defendants intentionally misled Glen Oaks Escrow as to which escrow the deposits should go, and how
20 | they should be labeled.

21 |     22.    After opening the escrows, Cross-Defendants requested that Cross-Complainants fully
22 | fund the Casino escrow prior to submitting an application to the California Attorney General Bureau of
23 | Gambling Control.

24 |     23.    Cross-Complainants fully funded the Casino escrow with a total of $400,000.00.

25 |     24.    Thereafter, Cross-Complainants submitted an application to the California Attorney
26 | General Bureau of Gambling Control for approval and transfer of the Licenses to Ayrapetian.

27 |     25.    After Cross-Complainants submitted the gambling license application, Cross-Defendants
28 | demanded that Glen Oaks Escrow release $500,000.00 to Cross-Defendants, purportedly because none

CROSS-COMPLAINT

1 │ of the escrows could be closed until the Licenses were approved and transferred to Ayrapetian.

2 │       26.    Glen Oaks Escrow rejected Cross-Defendants' request to release $500,000.00 on the

3 │ grounds that the funds could not be released until the Licenses were approved and transferred to

4 │ Ayrapetian.

5 │       27.    Then, Cross-Defendants suggested that the $400,000.00 in the Casino escrow be

6 │ transferred to the Real Estate escrow, so that sum could be released to them.

7 │       28.    Glen Oaks Escrow, at the direction of Cross-Defendants, then released over $500,000.00

8 │ from the escrow accounts to Cross-Defendants.

9 │       29.    Due to delays in the Bureau of Gambling Control approving the Licenses' transfers, the

10 │ parties mutually agreed to several escrow-closing extensions. The parties' repeated, written accords to

11 │ extend the transaction constituted amendments to their initial Agreements.

12 │       30.    On or about March 10, 2022 the Bureau of Gambling Control approved transfer of the

13 │ Licenses and/or provisional licensing for Ayrapetian.

14 │       31.    Cross-Complainants secured insurance policies for all of the Assets.

15 │       32.    Despite Cross-Complainants' attempts over several months to persuade Cross-Defendants

16 │ to close the purchase of the Assets, Cross-Defendants have refused to close the transactions.

17 │       33.    Cross-Complainants are informed and believe and based thereon allege, that Cross-

18 │ Defendants are seeking to sell the Casino for a sum greater than the $400,000.00 agreed to with Cross-

19 │ Complainants in the parties' Purchase Agreement and Joint Escrow Instructions.

20 │       34.    Cross-Defendants have disingenuously suggested Cross-Complainants buy the real estate

21 │ and the brewpub, but forgo on the purchase of the Casino, ignoring (a) the unitary/integrated nature of

22 │ the transaction; (b) that this does not represent the meeting of the minds; and (c) that this not the benefit

23 │ of the bargain that Cross-Complainants sought and approved.

24 │       35.    Cross-Defendants continue to refuse to close the purchase of the Assets.

25 │       36.    Cross-Complainants are and remain ready, willing, and able to close the purchase of all

26 │ the Assets.

27 │       37.    Cross-Defendants have operated each of the Assets for months under Cross-

28 │ Complainants' name and under Cross-Complainants' insurance policy.

38.    Cross-Defendants have since closed the Casino.

39.    Cross-Defendants have wrongfully retained over $500,000.00 of Cross-Complainants' escrow deposits.

## FIRST CAUSE OF ACTION

### SPECIFIC PERFORMANCE

### (Against All Cross-Defendants)

40.    Cross-Complainants incorporate by reference the foregoing paragraphs of this Cross-Complaint as though fully set forth herein.

41.    The Agreements are sufficiently definite and certain in their terms to be enforced.

42.    The Agreements were just and reasonable.

43.    The Agreements were supported by adequate consideration.

44.    Cross-Complainants have performed all of the conditions of the Agreements that are required to be performed by Cross-Complainants.

45.    Cross-Complainants are and remain ready, willing, and able to perform all terms of the Agreements applicable to Cross-Complainants.

46.    Cross-Defendants have failed to perform their obligations under the Agreements, namely, their refusal to close any of the transactions governed by the Agreements.

47.    Cross-Complainants' remedy in damages or in an action at law for this breach of Cross-Defendants' duties under the Agreements will be inadequate to protect Cross-Defendants' rights.

48.    Cross-Complainants have no adequate remedy at law because the Assets are unique, and Cross-Defendants' continued and wrongful retention of the Assets will produce great or irreparable injury to Cross-Complainants, and makes any purely monetary judgment in this action ineffectual.

49.    Furthermore, Cross-Defendants' continued and wrongful retention of over $500,000.00 of Cross-Complainants' escrow deposits would constitute unjust enrichment.

//

//

//

//

6

## SECOND CAUSE OF ACTION

### BREACH OF CONTRACT

### (Against All Cross-Defendants)

50.     Cross-Complainants incorporate by reference the foregoing paragraphs of this Cross-Complaint as though fully set forth herein.

51.     The parties entered into the Agreements.

52.     Cross-Complainants have performed all of the conditions of the Agreements that are required to be performed by Cross-Complainants.

53.     Cross-Defendants breached the Agreements by failing to perform their obligations under the Agreements, namely, their refusal to close any of the transactions governed by the Agreements.

54.     Cross-Complainants were damaged by Cross-Defendants' breach of the Agreements in an amount to be proven at trial, but in excess of this Court's jurisdictional minimum.

## THIRD CAUSE OF ACTION

### QUASI-CONTRACT/RESTITUTION

### (Against All Cross-Defendants)

55.     Cross-Complainants incorporate by reference the foregoing paragraphs of this Cross-Complaint as though fully set forth herein.

56.     Cross-Complainants have conferred a benefit upon Cross-Defendants as Cross-Defendants have retained monies paid to them by Cross-Complainants.

57.     The monies received were obtained under circumstances that were at the expense of Cross-Complainants – i.e., Cross-Complainants did not receive the full value of the benefit conferred upon Cross-Defendants because Cross-Defendants did not follow through with closing the purchase of the Assets.

58.     Therefore, it is inequitable and unjust for Cross-Defendants to retain the profit, benefit, or compensation conferred upon them without paying to Cross-Complainants the difference of the full value of the benefit compared to the value actually received.

59.     Due Cross-Defendants' refusal to complete the closings, Cross-Defendants' intentional misleading of Glen Oaks Escrow as to which escrow the deposits should go, and misleading about how

the deposits should be labelled, the Agreements may be unenforceable or invalid.

60.    As a direct and proximate result of Cross-Defendants' unjust enrichment, Cross-Complainants are entitled to restitution, disgorgement, and/or the imposition of a constructive trust upon all profits, benefits, and other compensation obtained by Cross-Defendants from their unlawful conduct as alleged herein.

61.    Monetary damages are an inadequate remedy at law because injunctive relief is necessary to deter Cross-Defendants from continuing their unlawful conduct.

WHEREFORE, Cross-Complainant prays for judgment in this action on all causes of action in the Cross-Complaint, as follows:

1.    For an order compelling Cross-Defendants to specifically perform under the Agreements;

2.    For an order of restitution and all other forms of equitable relief;

3.    Compensatory and general damages in a sum in excess of the jurisdictional minimum of this Court according to proof;

4.    Interest upon any judgment entered as provided by law;

5.    For reasonable costs and attorneys' fees according to proof;

6.    For costs of suit herein; and

7.    For such other and further relief as this Court may deem just and appropriate.

DATED: November 28, 2022                **LAW OFFICES OF JONATHON D. NICOL**

By: _____
Jonathon D. Nicol
*Attorneys for Defendant and Cross-Complainant*
*Ovsep Ayrapetian and Cross-Complainant RVD*
*Investments, LLC*

1

**PROOF OF SERVICE**

2

    At the time of service, I was over 18 years of age and not a party to this action.  I am employed

3

in the County of Los Angeles, State of California.  My business address is 1801 Century Park East, 24th

4

Floor, Los Angeles, CA 90067.

5

    On November 28, 2022, I served a true copy of **CROSS-COMPLAINT** on the interested parties

6

in this action as follows:

7

8

9

| Donald G. Ezzell<br>THE GENERAL COUNSEL GROUP, P.C.<br>P.O. Box 1830<br>Paso Robles, California 93446 | Tel:  805-674-3118<br>Don.Ezzell@gencounselgroup.com<br>Attorneys for Plaintiff and Cross-Defendant<br>PR HOSPITALITY, LLC |
|---|---|

10

11

    **BY E-MAIL OR ELECTRONIC TRANSMISSION:** I caused a copy of the document(s) to be

12

sent from e-mail address jdn@nicolmediation.com to the persons at the e-mail addresses listed in the

13

Service List.  I did not receive, within a reasonable time after the transmission, any electronic message

or other indication that the transmission was unsuccessful.

14

    I declare under penalty of perjury under the laws of the State of California that the foregoing is

15

true and correct.  Executed on November 28, 2022, at Los Angeles, California.

16

17

18

_____

Jonathon D. Nicol

19

20

21

22

23

24

25

26

27

28

CROSS-COMPLAINT

# EXHIBIT A

**ESCROW # 28872 (Real Property)**

Instructions Set One, 1-12
Cynthia Moller/Justine Kerrick
GLENOAKS ESCROW
24018 Lyons Avenue
Santa Clarita, CA 91321

Re:    Purchase Agreement and Joint Escrow Instructions, Set One
*re 1144 Black Oak Drive, APN 008 051 023 (the "Property")*

When signed by both parties and delivered to Glenoaks Escrow as the Escrow Agent this shall serve as the Purchase Agreement and Joint Escrow Instructions for the purchase and sale of the Property ("Purchase Agreement") under the following terms and conditions:

1.    Seller: 1144 Black Oak Associates, LLC.

2.    Buyer: RVD Investments, LLC.

3.    Property & Title Documents: The Property is 1144 Black Oak Drive, Paso Robles, California 93446 (APN No. 008051023). As customary, together with the real property Buyer will purchase Seller's rights, interests, and materials in all fixtures, improvements, reports, plans, and other rights respecting the Property including all land use entitlements, easements, signage, parking, government permits and agency approvals as may exist concerning the Property. Escrow Agent shall prepare a Grant Deed, and Buyer shall pay all transfer, recording, and document fees.

4.    Purchase Price: One Million Five Hundred Thousand Dollars ($1,500,000.00).

5.    Terms of Purchase: $1,500,000 cash to Seller at Closing; earnest money deposit of $75,000; full balance of $1,500,000 to Seller at Closing.

6.    Broker's Commission; Other Closing Costs: Seller to pay Broker's Commission at Closing. Seller to advise Escrow Agent of details of outbound wire transfer to Broker by separate instruction instrument. Buyer shall pay the full cost of title insurance and title reports. Buyer and Seller to split equally all other closing costs, if any, not related to the Grant Deed documents above, or title insurance and title reports.

7.    Opening of Escrow and Timetable: Escrow ("the Purchase Escrow") shall be opened at Glenoaks Escrow and Title Company c/o Cynthia Moller/Justine Kerrick (herein "Title Company" and "Escrow Agent").

8.    Earnest Money Deposit Toward Purchase Price: Buyer to deliver to escrow Seventy-Five Thousand Dollars ($75,000.00) as a deposit toward and applicable to the Purchase Price ("the Initial Deposit"). Escrow Holder shall deposit such sum in an interest-bearing, federally insured account with interest accruing for the benefit of Buyer. Escrow Holder shall credit this Initial Deposit to Buyer at Closing. The $75,000 earnest money deposit is governed by the parties' written Term Sheet Agreement dated 12/31/2020 which is incorporated herein and joined by RVD Investments, LLC.

1

9.    Access; Feasibility & Inspection Period; Condition of Property at Closing: Escrow Agent may prepare, and Seller will deliver, property disclosures to Buyer on or before January 15, 2021. Buyer was previously provided access to the Property to perform all feasibility studies, appraisal, inspections, and due diligence for the Property ("Feasibility & Inspection Period"). The Property will be transferred "AS-IS."

10.    Buyer's Conditions Precedent to Closing: Buyer's obligation to close escrow shall be subject only to the following conditions:

A.    Escrow Agent and Title Company shall prepare, sell, and issue an ALTA policy of title insurance to Buyer showing clear, good and marketable title vested in Buyer subject only to such exceptions to title as have been approved by Buyer during the Feasibility & Inspection Period.

B.    Satisfactory valuation appraisal, surveys, and no debilitating defects or material changes to the intended use and operation of the Property, or mutually agreed work around solutions thereto. The Property will be transferred "AS-IS."

C.    All transferable governmental permits and approvals for the use and operation of the Property, and the non-existence of any physical, environmental or soils defects, or the presence of any development, building, construction, flood, or moratoria affecting the Property.

11.    Closing:  Close of escrow and the Closing Date shall be on or before January 31, 2021), unless extended by mutual agreement of the parties.

12.    Buyer and Seller advise and instruct Escrow Agent that the existence of the parties' transaction and all information and documents deposited with Escrow Agent are confidential and proprietary. As such, Escrow Agent is asked and instructed not to collect, circulate, distribute, deliver, or disclose any information or document contents to any person, agency, governmental body, third party, or non-party outside the escrow until the parties have agreed to so (or not to do so), and provided specific separate written instructions and authorization to do so for any release or distribution.

13.    Further and future instructions, if any, shall begin with #13.

BUYER: RVD Investments, LLC

By: ~~Viek Babloyan~~, Manager                        Dated: 1/30/21
David Hayrapetian

SELLER: 1144 Black Oak Associates, LLC

By: Donald G. Ezzell, Manager                        Dated: 01/13/2021

2

# EXHIBIT B

<u>AGREEMENT</u>

**(Asset Purchase Agreement and Sale—Short Form)**

This Agreement is dated and effective June 30, 2021, by and between PR Hospitality, LLC, a California limited liability company ("Seller"), and Ovsep Ayrapetian, an individual ("Buyer"). In consideration of the premises and subject to the terms and conditions herein stated, Buyer and Seller agree:

*1.  Sale and Purchase of Assets.*

(a) *Sale of Assets.* At the Closing described in Section 4, Seller shall sell and Buyer shall buy all of the assets and the business of Seller operated as PR Hospitality, LLC dba Craft Paso Restaurant and Bar (the "Business") owned by it at the closing date, except excluded assets listed as such on the attached Bill of Sale. The Business is sold as a turnkey operation and the assets will be sold "as-is" and include, without limitation, all tangible and intangible assets of the Business of Seller, except excluded assets, present at the Business at closing, plus any assets acquired by Seller after the closing and less any assets disposed of by Seller in the ordinary course of its business after the closing and during the post-closing transition, and less any assets excluded from sale in the Bill of Sale. The assets to be sold are called the "Assets."

(b) *Consideration for Assets.* At the closing Buyer shall pay Seller as consideration for the transfer of the Assets the cash sum of $480,000.  As additional consideration for transfer of the Assets, Buyer agrees to assume all liabilities of Seller at the closing date of any amount, character, or description, accrued, contingent, or otherwise, except excluded liabilities set forth in the Bill of Sale. The cash purchase price payable by Buyer shall be allocated among the Assets by mutual agreement. Buyer and Seller agree to report the transactions set forth herein for tax purposes in accordance with the agreed allocation, including filing IRS Form 8594, if applicable.

*2.  Representations and Warranties of Seller.* Seller represents and warrants to Buyer:

(a) *Title to Assets.* At the closing, Seller will have good and marketable title to all the Assets subject to no lien, charge, or encumbrance and will have free and complete right to sell the Assets to Buyer pursuant to this Agreement. Upon sale to Buyer, Buyer will acquire good and marketable title to all the Assets, subject to the any exceptions stated herein or in the Bill of Sale.

(b) *Approval of Sale.* This agreement and sale of the Assets pursuant to this agreement have been duly approved by Seller and its member interest owners. No other approval, authorization, or consent is required for the sale. No litigation or other proceeding is pending, or to Seller's knowledge threatened, contesting, or which would affect, Seller's right to make the sale.

(c) *Financial, Policy, & Operating Statements.* Seller has delivered and made available to Buyer, the Seller's financial, policy, and operating statements in advance of closing. Buyer has conducted its diligence, review, and inspection of all aspects of the Business (including all financial & operations information and the physical condition of assets and property), and Buyer is completely satisfied concerning fair value and the Purchase Price. Buyer agrees there will be no price adjustments, warranties, representations, conditions, or delays because of its diligence, review, and preparation. The parties agree the Assets are fairly priced, fairly valued, and fairly bargained for at $480,000 and that the Business has significant prospects and is being sold for a purchase price that is forward looking and reflecting the future

opportunity and targeted success of the Business and operating prospects. The financial, policy, and operating statements are correct in all material respects and fairly present the financial condition, the assets and liabilities, the policies, and the results of operations of Seller at the closing in accordance with sound accounting and operating principles, consistently applied. Seller has no material liabilities, contingent or otherwise, not reflected in the financial, policy and operating statements, except those, if any, set forth in the Bill of Sale.

(d) *Survival*. These representations and warranties of Seller survive the closing and conclude at the end of the post-closing transition period.

3. *Representations and Warranties of Buyer*. Buyer represents and warrants to Seller:

(a) *Authorization of Agreement*. Execution, delivery, and performance of this Agreement by Buyer have been duly authorized by all necessary personal and corporate action.

(b) *Organization*. Buyer is an individual.

(c) *Source of Funds*. Buyer has delivered to Seller its source of funds for the purchase, and Buyer will make those funds deliverable at closing.

(d) *Survival*. These representations and warranties of Buyer survive the closing and conclude at the end of the post-closing transition period.

4. *Closing of Sale*.

(a) *Time and Place*. The closing of the sale of the Assets (the "Closing") shall take place via overnight delivery of documents and payments to the offices of Buyer's counsel at 11 o'clock a.m. on June 30, 2021 or at such other place or on such other date as Seller and Buyer may mutually agree, provided, however, that the closing shall not be postponed more than 7 calendar days after the originally scheduled closing date.

(b) *Action at the Closing*. At the closing, Seller shall deliver to Buyer all deeds and other instruments that are necessary and appropriate to vest in Buyer good and marketable title, subject to any exceptions or exclusions specifically mentioned above, to the Assets, together with the Bill of Sale. Buyer shall deliver to Seller cash funds immediately available by wire transfer in the amount of the cash purchase price for the Assets and Buyer's countersigned Bill of Sale together with any duly executed assumption of the liabilities of Seller, if applicable, to be assumed by Buyer pursuant hereto.

(c) *Effect of Closing*. Upon delivery of the Bill of Sale, deeds and other instruments by Seller and payment by Buyer of the cash purchase price and delivery of its assumption of liabilities, title to the Assets shall pass to Buyer, Buyer's assumption of liabilities shall be effective, and Buyer shall have full right of possession of the Assets.

(d) *Further Assurance & Post-Closing Transition*. At any time after the closing, and for the agreed post-closing transition period, at the request of Buyer, Seller shall execute and deliver, at Buyer's expense, all additional and further deeds, conveyances, assignments, and instruments, and shall take all action, as

Buyer requests in order fully to effectuate transfer of Assets to Buyer pursuant to this Agreement; provided, however, that Seller shall not be required (i) to execute and deliver any instrument or take any act which in the opinion of its counsel would be unlawful, would expose it to liability which it has not agreed to undertake under this Agreement, or (ii) to clear Buyer's title to any asset of any lien, encumbrance, or charge to which title is permitted to be subject pursuant to this Agreement.

### 5. *UCC Bulk Transfer Waived; Prorations.*

Any excise or transfer tax, if applicable and due as a result of this Agreement, shall be paid by Buyer. Buyer waives compliance with the requirements of the UCC and bulk sales and transfer laws of California, if applicable, but retains all rights and defenses. All personal property taxes or assessments paid or payable by Seller with respect to the Assets shall be prorated between Buyer and Seller as of midnight on the date immediately preceding the Closing, and any pro rata sum shall remain the obligation of said respective party after the Closing date.

### 6. *Miscellaneous Provisions.*

(a) *Sales Tax.* Buyer shall bear any sales or other transfer, registration, or recordation tax, fee, or charge, if applicable, levied by any taxing authority or entity upon the sale to Buyer of the Assets.

(b) *Materiality and Survival of Warranties.* Buyer and Seller agree that their respective warranties are material and are being relied upon by the other, shall be true as of the date of this Agreement, shall also be true as of the closing date with the same effect as though made on that date, and shall survive the closing date but conclude at the end of the post-closing transition period.

(c) *Notices.* Any notice under this Agreement shall be in writing and shall be deemed to have been duly given if personally delivered or if deposited in the United States mail, first class postage prepaid, or sent by email, to the most recent address of the other party, or to such other address as Seller or Buyer may furnish the other in writing.

(d) *Brokers & Fees.* Seller and Buyer may or may not enter various arrangements with third parties for finders' fees or broker fees, and if so, each shall be exclusively responsible for same without expectations or liability to the other.

(e) *Attorneys' Fees.* In any action or arbitration proceeding involving the interpretation or enforcement of, or defense against, any provision of this Agreement, the prevailing party in such action or proceeding shall be entitled to reasonable attorneys' fees and all costs and expenses incurred in connection with such action or proceeding. In addition, the non-prevailing party shall pay all costs and expenses incurred in enforcing any arbitration award or judgment or in connection with any appeal, and this obligation shall be severable from the other provisions of this paragraph and shall survive any judgment, order or award and shall not be deemed to be merged therewith.

(f) *Confidentiality; No Announcements.* The parties agree that all aspects and issues concerning this

Agreement are strictly confidential and shall not be shared with anyone until the conclusion of the post-closing transition. Further, the parties agree there shall be no announcement of any kind to any person or party until there is mutual agreement to do so, and both Buyer and Seller have agreed on the text of such

an announcement. Buyer, Seller, and their respective representatives, agents, counsel, and employees will hold in strict confidence any such data and information obtained from the other.

(h) *Drafting & Documentation.* Seller and Buyer may retain counsel and/or other advisors to progress the transactions toward Closing, and if so, each shall be exclusively responsible for same without expectations or liability to the other. Since Seller and Buyer have counsel and/or other advisors, all documents shall be considered prepared and approved by both Seller and Buyer, and no conclusion, advantage, or objection is made concerning the drafting of documents.

(i) *Governing Law.* This Agreement shall be governed by and construed in accordance with the laws of the State of California applicable to contracts made and to be performed in California.

In Witness Whereof, Seller and Buyer have executed this instrument effective as of June 30, 2021.

SELLER:

By: _____
PR-HOSPITALITY, LLC, a California limited liability company, Donald G. Ezzell, Manager

BUYER:

By: _____
Ovsep Ayrapetian, an individual

PR Hospitality Group LLC

4.

<u>BILL OF SALE</u>
(Asset Purchase Agreement and Sale)

For and in consideration of Four Hundred Eighty Thousand Dollars ($480,000.00) and other good and valuable consideration the receipt and sufficiency of which are hereby acknowledged, PR Hospitality, LLC, a California limited liability company dba Craft Paso, and its sole member interest owner Donald G. Ezzell (collectively "Seller"), do hereby sell, assign, transfer, convey and deliver as-is and free and clear unto Ovsep Araypetian ("Buyer") all of Seller's interest in the assets and business of Seller (the "Assets") together with all rights, title, assets, privileges, and liabilities thereto, except cash and other excluded assets and liabilities listed in Attachment A.

Seller represents and warrants to Buyer that on the date herein, other than agreed excluded items, there are no liabilities, liens or encumbrances respecting the Assets. Seller is the lawful owner with full legal authority. Seller is selling and transferring the Assets as-is, where is, and Buyer is buying and accepting the Assets as-is, where is, with all faults, and without any warranties, whether express or implied.

After the date herein, Buyer hereby assumes and agrees to indemnify, protect, and defend and hold Seller harmless from and against all liabilities and obligations of every kind and nature in connection with or related to operation of the business and ownership of the Assets.

In Witness Whereof, Seller and Buyer execute this instrument effective as of June 30, 2021.

<u>SOLD & TRANSFERRED BY SELLER</u>:

By: 

       PR HOSPITALITY, LLC, a California limited
       liability company, Donald G. Ezzell, Manager

<u>ACCEPTED & PAID BY BUYER</u>:

By: 

    Ovsep Araypetian, an individual

                PR Hospitality Group, LLC

ATTACHMENT A - Excluded items, assets, fixtures, personal property

Cash is excluded.

Three (3) exterior building signs and two (2) pylon pole signs are excluded (as these are fixtures attached to the real property/building).

Third party litigation, claims, or grievances perfected before the closing before any court or administrative agency, if any, and open and active at closing, are excluded.

All records, books, accounts, bookkeeping materials, ledgers, minute books, tax returns, reports, and other documents relating to the business operations, licensing, and organizational existence of the corporation, or the Seller are excluded.

Any of Seller's assets or properties not specifically related to the business or the Assets are excluded.

Other

**ESCROW # 28874 (Restaurant & Bar)**

Instructions Set One, 1-8

Cynthia Moller/Justine Kerrick
GLENOAKS ESCROW
24018 Lyons Avenue
Santa Clarita, CA 91321

Buyer and Seller provide this first set of instructions, as follows:

1. Buyer and Seller advise and instruct Escrow Agent that the $20,000 earnest money deposited by Buyer is governed by the parties' written Term Sheet Agreement dated 06/07/2021, which is incorporated and joined by Ovsap Ayrapetien.
2. Buyer and Seller advise and instruct Escrow Agent that the existence of the parties' transaction and all information and documents deposited with Escrow Agent are confidential and proprietary. As such, Escrow Agent is asked and instructed not to collect, circulate, distribute, deliver, or disclose any information or document contents to any person, agency, governmental body, third party, or non-party outside the escrow until the parties have agreed to so (or not to do so), and provided specific separate written instructions and authorization to do so for any release or distribution.
3. Buyer and Seller request and instruct Escrow Agent to collect and confirm receipt of the parties' "Purchase Agreement and Sale-Short Form" and "Bill of Sale," dated effective June 30, 2021, to obtain all indicated original signatures thereto, and advise the parties of receipt by email.
4. Section 4(a) of the Purchase Agreement provides for postponement of the Closing no later than 14 days. Therefore, Escrow Agent to collect from Buyer and deposit into escrow, or alternatively confirm same to the trust account of The General Counsel Group, P.C., a wire transfer or other good cash funds for the balance of purchase consideration of $480,000 and advise the parties of receipt by email.
5. After confirming receipt and deposit into escrow or trust account of $480,000, Escrow Agent may request Seller's signature and delivery of the Bill of Sale, obtain Buyer's countersignature, and advise the parties of receipt by email.
6. Thereafter, Escrow Agent may initiate the Closing of the Asset Purchase Agreement under Sections 4(b) and 4(c) of the parties Purchase Agreement, and as indicated i) deliver to Seller cash funds by wire transfer in the amount of the cash purchase price of $480,000, and ii) deliver to Buyer the Bill of Sale, and iii) advise the parties of the effect of closing being transfer of title and full right of possession.
7. Thereafter, Escrow Agent may advise that it is proceeding under Section 4(d) of the parties Purchase Agreement to post closing assistance, collect from the parties' their countersigned applicable alcohol license transfer forms, and initiate escrow & transfer of the ABC License through the local ABC office in the County of San Luis Obispo.
8. Concurrently, Escrow Agent may prepare and deliver to the parties any settlement statements deemed appropriate and collect and seek authorization for any further document filings or notices to or with government agencies, if applicable, as authorized.
9. Further and future instructions, if any, will begin with #9.

**SELLER:**

By: _____
PR HOSPITALITY, LLC, a California limited liability company,
        Donald G. Ezzell, Manager


**BUYER:**

By: _____
        Ovsap Ayrapetien, an individual

        PR Hospitality Group, LLC

ESCROW # 28874 (Restaurant, Bar)

Instructions Set Two, 9-14

Cynthia Moller/Justine Kerrick
GLENOAKS ESCROW
24018 Lyons Avenue
Santa Clarita, CA 91321

Buyer and Seller provide this second and supplemental set of instructions, as follows:

9.  On or before 11:00 a.m. on June 29, 2021, Buyer will deposit by wire transfer into escrow, or in the alternative to trust account of The General Counsel Group, P.C., good cash funds for the balance of purchase consideration of $480,000, to be held with interest bearing for the benefit of Seller, and Escrow Agent will advise all parties of receipt by email.

10. The Parties will proceed to closing on June 30, 2021, and coordinate the Closing of #28872 (Real Estate) on the same timetable.

11. On or before March 18, 2021, Buyer will file all licensing application materials with government authorities and work continuously and with extreme best efforts seek approval on or before July 30, 2021, but in no event later than August 30, 2021, unless extended by mutual agreement.

12. Buyer will pay all expenses, fees, and costs of Escrow and Seller's settlement statement will show net to Seller $400,000, plus interest, deliverable to Seller at Closing by wire transfer.

13. The Parties will maintain and reserve all rights, privileges, and responsibilities respecting their Purchase & Sale Agreement.

14. Further and future instructions, if any, will begin with #14.

SELLER:

By: _____

PR Hospitality, LLC., Donald G. Ezzell, Manager

BUYER:

By: _____

Ovsep Ayrapetian, an individual

*PR Hospitality Group, LLC*

# EXHIBIT C

## AGREEMENT

### (Asset Purchase Agreement and Sale—Short Form)

This Agreement is dated and effective June 30, 2021 by and between PRCCC, Inc. dba Paso Robles Central Coast Casino, a California corporation ("Seller"), and Ovsep Ayrapetian, an individual ("Buyer"). In consideration of the premises and subject to the terms and conditions herein stated, Buyer and Seller agree:

*1. Sale and Purchase of Assets.*

(a) *Sale of Assets.* At the Closing described in Section 4, Seller shall sell, and Buyer shall buy all of the assets and the business of Seller operated as PRCCC, Inc., dba Paso Robles Central Coast Casino (the "Business") owned by it at the closing date, except excluded assets listed as such on the attached Bill of Sale. The Business is sold as a turnkey operation and the assets will be sold "as-is" and include, without limitation, all tangible and intangible assets of the Business of Seller, except excluded assets, present at the Business at closing, plus any assets acquired by Seller and less any assets disposed of by Seller in the ordinary course of its business, and less any assets excluded from sale in the Bill of Sale. The assets to be sold are called the "Assets."

(b) *Consideration for Assets.* At the closing Buyer shall pay Seller as consideration for the transfer of the Assets the cash sum of $400,000. As additional consideration for transfer of the Assets, Buyer agrees to assume all liabilities of Seller at the closing date of any amount, character, or description, accrued, contingent, or otherwise, except excluded liabilities set forth in the Bill of Sale. The cash purchase price payable by Buyer shall be allocated among the Assets by mutual agreement. Buyer and Seller agree to report the transactions set forth herein for tax purposes in accordance with the agreed allocation, including filing IRS Form 8594, if applicable.

*2. Representations and Warranties of Seller.* Seller represents and warrants to Buyer:

(a) *Title to Assets.* At the closing, Seller will have good and marketable title to all the Assets subject to no lien, charge, or encumbrance and will have free and complete right to sell the Assets to Buyer pursuant to this Agreement. Upon sale to Buyer, Buyer will acquire good and marketable title to all the Assets, subject to the any exceptions stated herein or in the Bill of Sale.

(b) *Approval of Sale.* This agreement and sale of the Assets pursuant to this agreement have been duly approved by Seller and its member interest owners. No other approval, authorization, or consent is required for the sale. No litigation or other proceeding is pending, or to Seller's knowledge threatened, contesting, or which would affect, Seller's right to make the sale, except as listed in the Bill of Sale.

(c) *Financial, Policy, & Operating Statements.* Seller has delivered and made available to Buyer, Seller's financial, policy, and operating statements in advance of closing. Buyer has conducted its diligence, review, and inspection of all aspects of the Business (including all financial & operations information and the physical condition of assets and property), and Buyer is completely satisfied concerning fair value and the Purchase Price. Buyer agrees there will be no price adjustments, warranties, representations, conditions, or delays because of its diligence, review, and preparation. The parties agree the Assets are fairly priced, fairly valued, and fairly bargained for at $650,000 and that the Business has

significant prospects and is being sold for a purchase price that is forward looking and reflecting the future opportunity and targeted success of the Business and operating prospects. The financial, policy, and operating statements are correct in all material respects and fairly present the financial condition, the assets and liabilities, the policies, and the results of operations of Seller at the closing in accordance with sound accounting and operating principles, consistently applied. Seller has no material liabilities, contingent or otherwise, not reflected in the financial, policy and operating statements, except those, if any, set forth in the Bill of Sale.

(d) *Survival*. These representations and warranties of Seller survive the closing and conclude at the end of the post-closing transition period.

3. *Representations and Warranties of Buyer*. Buyer represents and warrants to Seller:

(a) *Authorization of Agreement*. Execution, delivery, and performance of this Agreement by Buyer have been duly authorized by all necessary corporate action.

(b) *Organization & Current Licenses*. Buyer is an individual.

(c) *Source of Funds*. Buyer has delivered to Seller its source of funds for the purchase, and Buyer will make those funds deliverable at closing.

(d) *Survival*. These representations and warranties of Buyer survive the closing and conclude at the end of the post-closing transition period.

4. *Closing of Sale.*

(a) *Time and Place*. The closing of the sale of the Assets (the "Closing") shall take place via overnight delivery of documents and payments to the offices of Buyer's counsel at 11 o'clock a.m. on June 30, 2021, or at such other place or on such other date as Seller and Buyer may mutually agree, provided, however, that the closing shall not be postponed more than 7 calendar days after the originally scheduled closing date.

(b) *Action at the Closing*. At the closing, Seller shall deliver to Buyer all deeds and other instruments that are necessary and appropriate to vest in Buyer good and marketable title, subject to any exceptions or exclusions specifically mentioned above, to the Assets, together with the Bill of Sale. Buyer shall deliver to Seller cash funds immediately available by wire transfer in the amount of the cash purchase price for the Assets and Buyer's countersigned Bill of Sale together with any duly executed assumption of the liabilities of Seller, if applicable, to be assumed by Buyer pursuant hereto.

(c) *Effect of Closing*. Upon delivery of the Bill of Sale, deeds, and other instruments by Seller and payment by Buyer of the cash purchase price and delivery of its assumption of liabilities, title to the Assets shall pass to Buyer, Buyer's assumption of liabilities shall be effective, and Buyer shall have full right of possession of the Assets.

(d) *Further Assurance & Post-Closing Transition*. At any time after the closing, and for the agreed

2.

post-closing transition period, at the request of Buyer, Seller shall execute and deliver, at Buyer's expense, all additional and further deeds, conveyances, assignments, and instruments, and shall take all action, as Buyer requests in order fully to effectuate transfer of Assets to Buyer pursuant to this Agreement; provided, however, that Seller shall not be required (i) to execute and deliver any instrument or take any act which in the opinion of its counsel would be unlawful, would expose it to liability which it has not agreed to undertake under this Agreement, or (ii) to clear Buyer's title to any asset of any lien, encumbrance, or charge to which title is permitted to be subject pursuant to this Agreement.

### 5. *UCC Bulk Transfer Waived; Prorations.*

Any excise or transfer tax, if applicable and due because of this Agreement, shall be paid by Buyer. Buyer waives compliance with the requirements of the UCC bulk sales and transfer laws of California, if applicable, but retains all rights and defenses. All personal property taxes or assessments paid or payable by Seller with respect to the Assets shall be prorated between Buyer and Seller as of midnight on the date immediately preceding the Closing, and any pro rata sum shall remain the obligation of said respective party after the Closing date.

### 6. *Miscellaneous Provisions.*

(a) *Sales Tax.* Buyer shall bear any sales or other transfer, registration, or recordation tax, fee, or charge, if applicable, levied by any taxing authority or entity upon the sale to Buyer of the Assets.

(b) *Materiality and Survival of Warranties.* Buyer and Seller agree that their respective warranties are material and are being relied upon by the other, shall be true as of the date of this Agreement, shall also be true as of the closing date with the same effect as though made on that date, and shall survive the closing date but conclude at the end of the post-closing transition period.

(c) *Notices.* Any notice under this Agreement shall be in writing and shall be deemed to have been duly given if personally delivered or if deposited in the United States mail, first class postage prepaid, or sent by email, to the most recent address of the other party, or to such other address as Seller or Buyer may furnish the other in writing.

(d) *Brokers & Fees.* Seller and Buyer may or may not enter various arrangements with third parties for finders' fees or broker fees, and if so, each shall be exclusively responsible for same without expectations or liability to the other.

(e) *Attorneys' Fees.* In any action or arbitration proceeding involving the interpretation or enforcement of, or defense against, any provision of this Agreement, the prevailing party in such action or proceeding shall be entitled to reasonable attorneys' fees and all costs and expenses incurred in connection with such action or proceeding. In addition, the non-prevailing party shall pay all costs and expenses incurred in enforcing any arbitration award or judgment or in connection with any appeal, and this obligation shall be severable from the other provisions of this paragraph and shall survive any judgment, order or award and shall not be deemed to be merged therewith.

(f) *Confidentiality; No Announcements.* The parties agree that all aspects and issues concerning this

Agreement are strictly confidential and shall not be shared with anyone until the conclusion of the post-closing transition. Further, the parties agree there shall be no announcement of any kind to any person or party until there is mutual agreement to do so, and both Buyer and Seller have agreed on the text of such an announcement. Buyer, Seller, and their respective representatives, agents, counsel, and employees will hold in strict confidence any such data and information obtained from the other.

(h) *Drafting & Documentation.* Seller and Buyer may retain counsel and/or other advisors to progress the transactions toward Closing, and if so, each shall be exclusively responsible for same without expectations or liability to the other. Since Seller and Buyer have counsel and/or other advisors, all documents shall be considered prepared and approved by both Seller and Buyer, and no adverse interpretation, conclusion, advantage, or objection is made concerning the drafting of documents.

(i) *Governing Law.* This Agreement shall be governed by and construed in accordance with the laws of the State of California applicable to contracts made and to be performed in California.

In Witness Whereof, Seller and Buyer have executed this instrument effective as of June 30, 2021.

**SELLER:**

By:

PRCCC, Inc. dba Paso Robles Central Coast
Casino, a California corporation, and Donald G.
Ezzell, President/Sole Shareholder

**BUYER:**

By:

Ovsep Ayrapetian, an individual

4.

/5.

## BILL OF SALE
### (Asset Purchase Agreement and Sale)

For and in consideration of Four Hundred Thousand Dollars ($400,000.00) and other good and valuable consideration the receipt and sufficiency of which are acknowledged, PRCCC, Inc., a California corporation dba Paso Robles Central Coast Casino, and its sole shareholder Donald G. Ezzell (collectively "Seller"), do hereby sell, assign, transfer, convey and deliver as-is and free and clear unto Ovsep Ayrapetian ("Buyer") all of Seller's interest in the assets and business of Seller (the "Assets") together with all rights, title, assets, privileges, and liabilities thereto, except cash and other excluded assets and liabilities listed in Attachment A.

Seller represents and warrants to Buyer that on the date herein, other than agreed excluded items, there are no liabilities, liens or encumbrances respecting the Assets. Seller is the lawful owner with full legal authority. Seller is selling and transferring the Assets as-is, where is, and Buyer is buying and accepting the Assets as-is, where is, with all faults, and without any warranties, whether express or implied.

After the date herein, Buyer hereby assumes and agrees to indemnify, protect, and defend and hold Seller harmless from and against all liabilities and obligations of every kind and nature in connection with or related to operation of the business and ownership of the Assets.

This Bill of Sale is governed by the laws of the State of California. Rules and regulations of the California Gambling Control Commission and Bureau of Gambling Control, including California Business and Professions Code sections 19824(c), 19850, 19851, and 19752; and CCR, Title 4 sections 12054, 12220.15, 12342, and 12349, et seq., also apply. Each party will pay its own expenses concerning transfer and licensing including fees, permits, payments, charges, or liens due to the California Gambling Control Commission and Bureau of Gambling Control.

In Witness Whereof, Seller and Buyer have executed this instrument effective as of _____, 2021.

SOLD & TRANSFERRED BY SELLER:

By: _____
PRCCC, INC., a California corporation, and
Donald G. Ezzell, President & Sole Shareholder

ACCEPTED & PAID BY BUYER:

By: _____
Ovsep Ayrapetian, an individual

16.

## ATTACHMENT A – Excluded items, assets, fixtures, personal property

Cash is excluded.

Three (3) exterior building signs and two (2) pylon pole signs are excluded (as these are fixtures attached to the real property/building).

Third party litigation, claims, or grievances perfected prior to the closing before any court or administrative agency, if any, and open and active at closing, listed in the attachment, are excluded.

All records, books, accounts, bookkeeping materials, ledgers, minute books, tax returns, reports, and other documents relating to the business operations, licensing, and organizational existence of the corporation, or the Seller are excluded.

Any of Seller's assets or properties not specifically related to the business or the Assets are excluded.

Other

Attachment to Bill of Sale

Excluded third party litigation: *Villers adv PRCCC  Inc.* San Luis Obispo County Superior Court Case No. 18CVP0175, and related case *PRCCC, Inc v Villers et al.*

## ESCROW #28873 (Casino)

Instructions Set One 1-8

Cynthia Moller/Justine Kerrick
GLENOAKS ESCROW
24018 Lyons Avenue
Santa Clarita, CA 91321

Buyer and Seller provide this first set of instructions, as follows:

1. Buyer and Seller advise and instruct Escrow Agent that the $446,000 earnest money deposited by Buyer is governed by the parties' written Term Sheet Agreement dated 06/07/2021, which is incorporated and joined by Ovsap Ayrapetien.
2. Buyer and Seller advise and instruct Escrow Agent that the existence of the parties' transaction and all information and documents deposited with Escrow Agent are confidential and proprietary. As such, Escrow Agent is asked and instructed not to collect, circulate, distribute, deliver, or disclose any information or document contents to any person, agency, governmental body, third party, or non-party outside the escrow until the parties have agreed to so (or not to do so), and provided specific separate written instructions and authorization to do so for any release or distribution.
3. Buyer and Seller request and instruct Escrow Agent to collect and confirm receipt of the parties' "Purchase Agreement and Sale-Short Form" and "Bill of Sale," dated effective June 30, 2021, to obtain all indicated original signatures thereto, and advise the parties of receipt by email.
4. Section 4(a) of the Purchase Agreement provides for postponement of the Closing no later than August 30, 2021, unless mutually agreed. Therefore, Escrow Agent to collect from Buyer and ally all deposit funds for the purchase consideration and advise the parties of receipt by email.
5. After confirming receipt and deposit into escrow all funds for the Purchase Price, Escrow Agent may request Seller's signature and delivery of the Bill of Sale, obtain Buyer's countersignature, and advise the parties of receipt by email.
6. Thereafter, Escrow Agent may initiate the Closing of the Asset Purchase Agreement under Sections 4(b) and 4(c) of the parties Purchase Agreement, and as indicated i) deliver to Seller cash funds by wire transfer in the amount of the cash purchase price no less than $400,000, and ii) deliver to Buyer the Bill of Sale, and iii) advise the parties of the effect of closing being transfer of title and full right of possession.
7. Thereafter, Escrow Agent may advise that it is standing by to assist any proceedings under Section 4(d) of the parties Purchase Agreement concerning post- closing assistance.
8. Concurrently, Escrow Agent may prepare and deliver to the parties any settlement statements deemed appropriate and collect and seek authorization for any further document filings or notices to or with government agencies, if applicable, as authorized.
9. Further and future instructions, if any, will begin with #9.

SELLER:

By: _____
PRCCC, Inc., dba Paso Robles Central Coast Casino, a
California corporation, Donald G. Ezzell, President

BUYER:

By: _____
Ovsap Ayrapetian, an individual

ESCROW # 28873 (Casino)

Instructions Set Two, 9-13

Cynthia Moller/Justine Kerrick
GLENOAKS ESCROW
24018 Lyons Avenue
Santa Clarita, CA 91321

Buyer and Seller provide this second and supplemental set of instructions, as follows:

9. On or before 11:00 a.m. on June 30, 2021, Buyer will confirm deposit into escrow of good cash funds for the purchase consideration of $400,000, to be held with interest bearing for the benefit of Seller, and Escrow Agent will advise all parties of receipt by email.

10. The Parties will proceed continuously and with extreme best efforts toward closing on July 30, 2021, but in no event later than August 30, 2021, unless extended by mutual agreement, all under the terms and conditions of the parties' agreement dated June 7, 2021.

11. Buyer will pay all expenses, fees, and costs of Escrow and Seller's settlement statement will show net to Seller $400,000, plus interest, deliverable to Seller at Closing by wire transfer.

12. The Parties will maintain and reserve all rights, privileges, and responsibilities respecting their Purchase & Sale Agreement.

13. Further and future instructions, if any, will begin with #13.

**SELLER:**

By: _____

PRCCC, Inc. Donald G. Ezzell, President

**BUYER:**

By: _____

Ovsep Ayrapetian

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

Hutkin Law Firm, APC, 1220 Marsh Street, San Luis Obispo, CA 93401

A true and correct copy of the foregoing document entitled (*specify*): REPLY TO SUPPLEMENTAL BRIEFS IN OPPOSITION TO MOTION OF DARCY VILLERS, WILLIAM E. HOLMES AND KYLE KING FOR RELIEF FROM THE AUTOMATIC STAY REGARDING DONALD G. EZZELL

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 02/14/2023 , I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

ATTORNEY FOR DEBTOR, Todd C. Ringstad, Esq.: becky@ringstadlaw.com; arlene@ringstadlaw.com
TRUSTEE, Sandra McBeth (TR): jwalker@mcbethlegal.com; CA65@ecfcbis.com; ecf.alert+McBeth@titlexi.com
ATTORNEY FOR TRUSTEE, Timothy J. Yoo, Esq.: tjy@lnbyb.com
UNITED STATES TRUSTEE (ND): ustpregion16.nd.ecf@usdoj.gov

☑ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) 02/14/2023 , I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.
Via Overnight Mail Service:

PRESIDING BANKRUPTCY JUDGE, Honorable Ronald A. Clifford III, U.S. Bankruptcy Court, Northern Division, 1415 State Street, Suite 233, Santa Barbara, CA 93101

☑ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 02/14/2023 | Donald L. Mabry | /s/ Donald L. Mabry |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                          **F 9013-3.1.PROOF.SERVICE**

**Attachment** to F 9013-3.1.PROOF OF SERVICE

1. <u>**TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**</u>:

Additional Persons Served Via NEF:

ATTORNEY FOR DEBTOR: Christopher Minier, Esq.: becky@ringstadlaw.com; arlene@ringstadlaw.com
ATTORNEY FOR DEBTOR: Thomas L. Vincent, Esq.: tlv@paynefears.com; ccason@paynefears.com

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):

Additional Persons Served Via Overnight Mail Service:

ATTORNEYS FOR DONALD G. EZZELL:

Donald G. Ezzell, Esq.
The General Counsel Group, P.C.
1144 Black Oak Drive
Paso Robles, California 93446

Benjamin A. Nix, Esq.
Andrew K. Haeffele, Esq.
Payne & Fears LLP
4 Park Plaza, Suite 1100
Irvine, California 92614